UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**08 CV 01949**

------------------------------------------------- x

1-800 CONTACTS, INC.,

     Plaintiff,

vs.

VISION DIRECT, INC.,

     Defendant.

------------------------------------------------- x

Case No.
(ECF Case)

COMPLAINT

JURY TRIAL DEMANDED

RECEIVED
FEB 27 2008
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff 1-800 Contacts, Inc. ("1-800 Contacts" or "Plaintiff"), by and through its undersigned attorneys, for its Complaint against Defendant Vision Direct, Inc. ("Vision Direct" or "Defendant"), alleges as follows:

## NATURE OF THE ACTION

1.    This is a civil action for damages, injunctive relief and specific performance, arising out of Vision Direct's breach of contract and breach of warranty, specifically, breach of an agreement dated June 24, 2004 (the "Settlement Agreement") settling an action (the "Prior Action") that was pending in this District, and breach of a guaranty and warranty contained within such agreement. The Prior Action, *1-800 Contacts, Inc. v. WhenU.com, Inc. & Vision Direct, Inc.*, No. 02 CV 8043, was filed October 9, 2002 and was dismissed on July

22, 2004. A true and correct copy of the Settlement Agreement is attached hereto as Exhibit D.

## THE PARTIES

2.    Plaintiff 1-800 Contacts, Inc. is a Delaware corporation with a principal place of business at 66 East Wadsworth Park Drive, Draper, Utah 84020.

3.    Plaintiff is informed and believes, and thereon alleges that Defendant Vision Direct, Inc. is a Texas corporation with a principal place of business at 411 108th Avenue NE, Suite 1400, Bellevue, Washington 98004.

## JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. Sections 1332(a)(1), as the amount in controversy exceeds $75,000 and there is diversity of citizenship between Plaintiff and Defendant.

5.    This Court may exercise personal jurisdiction over the Defendant because the Defendant has consented and waived objection to such jurisdiction in this District.

6.    Venue is appropriate because the Plaintiff and Defendant have each consented and waived objection to venue in this District.

## PLAINTIFF'S AND DEFENDANT'S BUSINESSES

7.    Plaintiff 1-800 Contacts has been and is now engaged in the business of selling and distributing contact lenses and eye care products via the Internet, mail, telephone and fax.

8.    Plaintiff is recognized as the leading distributor of contact lenses, with sales growing from $3.6 million in 1996 to $169 million in 2001 to in excess of $200 million in 2007.

9.    Plaintiff is the owner of United States service mark registration No. 2,675,866 for the word mark 1800CONTACTS, for use with "mail order and telephone order services in the field of contact lenses and related products, and electronic retailing services via computer featuring contact lenses and related products." This registration is valid and existing on the Principal Register of the United States Patent and Trademark Office ("USPTO"), and has become incontestable. A true and correct copy of the USPTO record of this registration is attached hereto as Exhibit A.

10.    Plaintiff is the owner of United States service mark registration No. 1,462,371 for the word mark LENS EXPRESS, for use with "retail store and mail order services in the field of contact lenses." This registration is valid and existing on the Principal Register of the United States Patent and Trademark Office

("USPTO"), and has become incontestable. A true and correct copy of the USPTO record of this registration is attached hereto as Exhibit B.

11.    Plaintiff is the owner of United States service mark registration No. 2,731,114 for the mark 1800 CONTACTS and design (collectively with the mark in the two immediately foregoing paragraphs, the "Registered Marks"), for use with "mail order and telephone order services in the field of contact lenses and related products, and electronic retailing services via computer featuring contact lenses and related products." This registration is valid and existing on the Principal Register of the USPTO. A true and correct copy of the USPTO record of this registration is attached hereto as Exhibit C.

12.    As part of its business, Plaintiff has established and operates a website at *www.1800contacts.com* for purposes of advertising and selling contact lenses and related products. Plaintiff prominently displays the Registered Marks on its website.

13.    Plaintiff derives a substantial portion of its sales from Internet sales. As a result of extensive website design and marketing efforts, millions of customers have developed strong relationships with Plaintiff and return to the *www.1800contacts.com* website repeatedly to purchase their contact lenses and related products.

14.    Defendant Vision Direct has been and is now engaged in the business of selling and distributing contact lenses and eye care products via the Internet, mail, telephone and fax, including in this District, and is a competitor of Plaintiff.

## INTERNET SEARCHING AND KEYWORD ADVERTISING

15.    An Internet user desiring to find information on the Internet, including information on potential vendors of products that the user may desire, may use the services of one or more Internet "search engine" providers, such as Google, MSN, or Yahoo. Upon the user entering into a search engine provider's webpage certain words or phrases, known as "search terms," representing the information that the user desires to search for, the search engine offered by any of these providers will return a list of "links" to other websites corresponding to the words or phrases entered. This list of websites returned on the basis of similarity or correspondence to the search terms are commonly referred to as the "organic search results."

16.    Beyond the organic search results, however, many Internet search engine providers also simultaneously present to the user paid advertisements which are also keyed to the search terms the user entered. The Google search engine, for instance, returns these paid advertisements in a section of the webpage entitled "Sponsored Links," located above or to the right of the organic search results.

17.    When purchasing advertisements with a search engine provider, an advertiser generally identifies one or more "keywords," which are words or phrases that, if entered by a user as a search term, will cause that advertiser's paid advertisement to be returned to that user. For example, either of the parties here might specify that one of its advertisements should be presented to a user if the user has entered as a search term the phrase, "contact lens."

18.    An advertiser can specify its trademark as a search engine advertising keyword. Unfortunately, many search engine providers allow a *competitor's* trademark to be specified as a keyword, thus presenting a company's advertisement to a user who may have been seeking a competitor's product.

19.    When purchasing advertisements with a search engine provider, an advertiser may further specify so-called "negative keywords," which are words or phrases that, if entered by a user as a search term, will cause that advertiser's advertisement *not* to be presented to that user.

20.    Defendant Vision Direct, by itself or through its parent company, Drugstore.com, Inc. ("Drugstore.com") has purchased and currently purchases advertisements with various Internet search engine providers, and when purchasing such advertisements has specified and does specify keywords and, at least for some period of time, also has specified negative keywords. Drugstore.com is not a party to this Action.

## THE PRIOR ACTION AND THE SETTLEMENT AGREEMENT

21.     On October 9, 2002, 1-800 Contacts filed an action (the "Prior Action") in the Federal District Court for the Southern District of New York, Case No. 02 CV 8043, naming two defendants, including Vision Direct. The Prior Action included causes of action against Vision Direct for federal trademark infringement, unfair competition under the Lanham Act, common law unfair competition, false designation of origin, dilution under the Lanham Act, dilution under New York state law, cybersquatting in violation of the Lanham Act, copyright infringement, contributory copyright infringement, and tortious interference with prospective economic advantage, with allegations that Vision Direct participated in a scheme to profit from and damage 1-800 Contact's trademarks and copyrights through bad faith use of Internet domain names and Internet advertising.

22.     On June 24, 2004, 1-800 Contacts and Vision Direct entered into the Settlement Agreement, which led to dismissal of the Prior Action with prejudice on July 22, 2004. A true and correct copy of the Settlement Agreement is attached hereto as Exhibit D.

23.    In entering into the Settlement Agreement, Vision Direct agreed to refrain from committing any of certain acts defined as "Prohibited Acts" by the agreement. Section 4 of the agreement includes as Prohibited Acts:

> d.    causing a Party's website or Internet advertisement to appear in response to any Internet search for the other Party's brand name, trademarks or URLs;
>
> e.    causing a Party's brand name, or link to the Party's Restricted Websites to appear as a listing in the search results page of an Internet search engine, when a user specifically searches for the other Party's brand name, trademarks, or URLs;
>
> * * *
>
> i.    using the other Party's trademark or brand name to redirect users from the other Party's Restricted Websites . . . .

24.    In entering into the Settlement Agreement, Vision Direct further promised and guaranteed to bring about the result that its parent, which by the time of the Settlement Agreement was Drugstore.com, would similarly refrain from the listed "Prohibited Acts," which guaranty was phrased in the form of a promise on behalf of the non-party parent; to this end, the beginning portion of Section 4 of the Settlement Agreement provides as follows, with emphasis added:

> From the Effective Date of this Agreement, each Party, *its parent*, subsidiaries, agents, servants, employees, officers and other entities controlled by such Party mutually agree to refrain from and not to cause in the future any other entity to [engage in certain acts] . . . (collectively the "Prohibited Acts"). . . .

25.    Vision Direct further warranted in Section 7 of the Settlement Agreement that it was "duly authorized to execute this Agreement."

## BREACH OF THE SETTLEMENT AGREEMENT, AND DEMAND

26.    While the Settlement Agreement allows its parties to specify as Internet search engine keywords generic words such as "contacts," it expressly prohibits Vision Direct from causing advertisements for Vision Direct to appear when an Internet search user searches for Plaintiff's brand names or trademarks, such as the phrases constituting the Registered Marks, 1800CONTACTS and 1800 CONTACTS, or Plaintiff's trade name of 1-800 CONTACTS.

27.    For a period of time following execution of the Settlement Agreement, paid advertisements for Vision Direct did not appear in Internet search engine results when phrases constituting the Registered Marks were entered as search terms. Plaintiff is informed and believes, and thereon alleges that during this period Defendant Vision Direct, by itself or through Drugstore.com, achieved this outcome by specifying negative keywords when purchasing Internet search engine advertising, and was thus able to comply with the prohibitions of the Settlement Agreement.

28.    Without cause or justification, and in spite of the previous course of conduct, Defendant Vision Direct, by itself or through Drugstore.com, began to

cause paid advertisements for Vision Direct to appear in Internet search engine results when phrases constituting the Registered Marks were entered as search terms. Plaintiff is informed and believes, and thereon alleges that Defendant Vision Direct, by itself or through Drugstore.com, caused this outcome by ceasing to specify negative keywords when purchasing Internet search engine advertising.

29.    Section 5 of the Settlement Agreement requires a party to give the other, breaching party written notice of a breach and allow ten calendar days for response to or cure of such breach. That Section further provides that if such response to or cure of such breach is not forthcoming within that ten-day period, "the enforcing Party shall be entitled to enforce this Agreement in accordance with its terms and to seek, without limitation, all available remedies at law or equity."

30.    On July 27, 2007, Plaintiff sent to Defendant and Drugstore.com a written notice of the breach of the Settlement Agreement and demand to cure. Defendant failed within the prescribed period to cure its breach. On October 12, 2007, Plaintiff's attorneys sent another notice of breach and demand to cure to Drugstore.com. A true and copy of Plaintiff's October 12, 2007 written demand, which attaches Plaintiff's prior July 27, 2007 written demand, is attached hereto as Exhibit E. Defendant again failed to cure its breach, and Defendant and Drugstore.com again have instead affirmatively and explicitly refused to cure this breach.

31.    Defendant Vision Direct, by itself or through Drugstore.com, has placed and is placing with search engine providers paid advertisements for Vision Direct that appear in Internet search engine results when phrases constituting the Registered Marks are entered as search terms, in violation of Vision Direct's obligations under the Settlement Agreement. Exhibit F attached hereto comprises true and correct printouts of the results of searches performed on the Google search engine on February 23, 2008, using the Registered Marks or variants thereof as search terms, which, as indicated by the portions circled in red, each returned a paid advertisement for Vision Direct, indicating a breach of the Settlement Agreement.

## FIRST CLAIM FOR RELIEF
### Breach of Contract

32.    Plaintiff hereby repeats and realleges paragraphs 1 through 31 hereinabove as though fully set forth herein.

33.    The Settlement Agreement is a duly executed, valid, enforceable contract binding on Plaintiff and Defendant.

34.    Plaintiff has performed or been excused from performing each of Plaintiff's obligations under the Settlement Agreement.

35.    By the acts complained of herein, Defendant has breached and is continuing to breach the Settlement Agreement.

36.    Plaintiff has given Defendant written notice of breach and demand to cure, and Defendant refuses to cure its continuing breach of the Settlement Agreement.

37.    Defendant's breach of the Settlement Agreement has caused and is causing Plaintiff to suffer monetary and other harm, including without limitation damage to Plaintiff's trademarks and service marks, that is irreparable and for which Plaintiff has no adequate remedy at law, which harm Plaintiff will continue to suffer unless and until Defendant's conduct is permanently enjoined.

38.    Defendant has unfairly profited from the breach alleged herein and will be unjustly enriched in the future unless and until such breach is permanently enjoined.

## SECOND CLAIM FOR RELIEF
### Breach of Guaranty/Warranty

39.    Plaintiff hereby repeats and realleges paragraphs 1 through 31 hereinabove as though fully set forth herein.

40.    The Settlement Agreement is a duly executed, valid, enforceable contract binding on Plaintiff and Defendant.

41.    Plaintiff has performed or been excused from performing each of Plaintiff's obligations under the Settlement Agreement.

42.    Defendant's failure to procure the promised result that its parent, Drugstore.com, would refrain from the Prohibited Acts listed in the Settlement Agreement constitutes a breach of Defendant's guaranty given in Section 4 of the Settlement Agreement to procure such result.

43.    Plaintiff is informed and believes, and thereon alleges that Defendant entered into the Settlement Agreement while lacking authorization from its parent to make the aforementioned guaranty, and Defendant thus breached the warranty it in Section 7 of the Settlement Agreement that Defendant was duly authorized to execute the Settlement Agreement.

44.    Defendant has unfairly profited from its breach of guaranty and breach of warranty alleged herein and has caused Plaintiff to suffer monetary and other harm as a result.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

1.    For a preliminary and permanent injunction prohibiting Defendant, its officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with them, from placing or maintaining with any search engine provider any advertisement that appears in Internet search engine results when any words or phrases identical or substantially similar to any of Plaintiff's

trademarks or service marks are entered as search terms, or causing any other entity to do so, or otherwise breaching the Settlement Agreement.

2.     For an order directing Defendant to file with this Court and serve on Plaintiff within thirty (30) days after service of the injunction, a report in writing and under oath describing in detail the manner and form in which Defendant has complied with the orders of this Court.

3.     For an order directing Defendant's specific performance of the Settlement Agreement.

4.     For an award of all actual damages sustained by Plaintiff and all profits realized by Defendant as a result of the breaches alleged herein, and that such damages and/or profits be enhanced to the maximum amount provided by law.

5.     For an award of an amount sufficient to conduct a corrective advertising campaign to dispel the effects of Defendant's breaches and confusing and misleading advertising.

6.     For prejudgment interest.

7.     For all of Plaintiff's costs of this Action, including attorneys' fees.

8.     For such other or further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff 1-800 Contacts, pursuant to Federal Rule of Civil Procedure 38, hereby demands a trial by jury of all issues so triable.

DATED: February 27, 2008

Respectfully submitted,

WINDELS MARX LANE & MITTENDORF, LLP

By: _____
Robert J. Luddy (RJL-6970)
Delton Vandever (DLV-8062)
156 West 56th Street
New York, NY 10019
(212) 237-1000

CHRISTIE, PARKER & HALE, LLP
3501 Jamboree Road, Suite 6000
Newport Beach, CA 92660-2960
Tel: (949) 476-0757
David J. Steele
Howard A. Kroll
Gary Dukarich
(*pro hac vice* admission being sought)

*Attorneys for Plaintiff 1-800 Contacts, Inc.*

1-800 CONTACTS, INC.,

                Plaintiff,

    -against-

VISION DIRECT, INC.,

                Defendant.

---

**COMPLAINT**

**JURY TRIAL DEMANDED**

---

**WINDELS MARX LANE & MITTENDORF, LLP**
*Attorneys for Plaintiff*

**156 WEST 56TH STREET
NEW YORK, NEW YORK 10019
212.237.1000**

---

To:                           Signature (Rule 130-1.1-a)

                              Printed name beneath Robert J. Luddy

Attorney(s) for

Service of a copy of the within                 is hereby admitted.

Dated,

                        Attorney(s) for

---

Please take notice
☐ NOTICE OF ENTRY
that the within is a (certified) true copy of a
duly entered in the office of the clerk of the within court on
☐ NOTICE OF SETTLEMENT
that an order               of which the within is a true copy will be presented for
settlement to the HON.                     one of the judges
of the within court, at
on                   at          M

Dated,                         Yours, etc.

                **WINDELS MARX LANE & MITTENDORF, LLP**
                         *Attorneys for*

                    **156 WEST 56TH STREET
NEW YORK, NEW YORK 10019
212.237.1000**

To

Attorney(s) for

# EXHIBIT A

Exhibit: _A_

Page: _____

Int. Cl.: 35

Prior U.S. Cls.: 100, 101 and 102

## United States Patent and Trademark Office

Reg. No. 2,675,866

Registered Jan. 21, 2003

## SERVICE MARK
### PRINCIPAL REGISTER

# 1800CONTACTS

1-800 CONTACTS, INC (DELAWARE CORPORA-
TION)
66 EAST WADSWORTH PARK DRIVE, 3RD FLOOR
DRAPER, UT 84020

    FOR: MAIL ORDER AND TELEPHONE ORDER
SERVICES IN THE FIELD OF CONTACT LENSES
AND RELATED PRODUCTS, AND ELECTRONIC
RETAILING SERVICES VIA COMPUTER FEATUR-
ING CONTACT LENSES AND RELATED PRO-
DUCTS, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 7-0-1995; IN COMMERCE 7-0-1995.

SEC. 2(F).

SER. NO. 75-746,706, FILED 7-8-1999.

RONALD MCMORROW, EXAMINING ATTORNEY

Exhibit: _A_

Page: _____

# EXHIBIT B

Int. Cl.: 42

Prior U.S. Cl.: 101

**United States Patent and Trademark Office**

Reg. No. 1,462,371
Registered Oct. 20, 1987

## SERVICE MARK
### PRINCIPAL REGISTER

## LENS EXPRESS

LENS EXPRESS, INC. (FLORIDA CORPORA-
  TION)
SUITE 203
2400 EAST COMMERCIAL BOULEVARD
FORT LAUDERDALE, FL 33308

  FOR: RETAIL STORE AND MAIL ORDER
SERVICES IN THE FIELD OF CONTACT
LENSES, IN CLASS 42 (U.S. CL. 101).

  FIRST USE 7-16-1986; IN COMMERCE
11-23-1986.
  NO CLAIM IS MADE TO THE EXCLUSIVE
RIGHT TO USE "LENS", APART FROM THE
MARK AS SHOWN.

  SER. NO. 643,519, FILED 2-9-1987.

IRA J. GOODSAID, EXAMINING ATTORNEY

Exhibit: B

Page: _____

# EXHIBIT C

Int. Cl.: 35

Prior U.S. Cls.: 100, 101 and 102

**United States Patent and Trademark Office**

Reg. No. 2,731,114
Registered July 1, 2003

## SERVICE MARK
### PRINCIPAL REGISTER



1-800 CONTACTS, INC. (DELAWARE CORPORA-
TION)
66 EAST WADSWORTH PARK DRIVE
3RD FLOOR
DRAPER, UT 84020

FOR: MAIL ORDER AND TELEPHONE ORDER
SERVICES IN THE FIELD OF CONTACT LENSES
AND RELATED PRODUCTS, AND ELECTRONIC
RETAILING SERVICES VIA COMPUTER FEATUR-
ING CONTACT LENSES AND RELATED PRO-
DUCTS, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 7-13-1998; IN COMMERCE 7-13-1998.

APPLICANT CLAIMS THE COLORS YELLOW,
BLUE AND WHITE AS PART OF THE MARK. THE
BOX BEHIND THE WORD "CONTACTS" IS YEL-
LOW. THE BORDER AROUND THE YELLOW BOX
BEHIND THE WORD "CONTACTS" IS BLUE. THE
BOX BEHIND THE TERM "800" IS BLUE. THE
NUMBER ONE AND THE WORD "CONTACTS"
ARE WRITTEN IN BLUE. THE TERM "800" IS
WRITTEN IN WHITE.

SEC. 2(F) AS TO 1800 CONTACTS .

SER. NO. 76-138,625, FILED 10-2-2000.

RONALD MCMORROW, EXAMINING ATTORNEY

Exhibit: C

Page:

# EXHIBIT D

Exhibit: D

Page: _____

# SETTLEMENT AGREEMENT

This SETTLEMENT AGREEMENT ("Agreement") is made and entered into as of June 24, 2004 (the "Effective Date") by and between 1-800 Contacts, Inc. ("1-800 Contacts" or "Plaintiff") and Vision Direct, Inc. ("Vision Direct" or "Defendant") (collectively with Plaintiff, the "Parties").

WHEREAS, on or about October 9, 2002, Plaintiff filed a lawsuit in the United States District Court for the Southern District of New York (the "Court") captioned: *1-800 Contacts, Inc. v. WhenU.com, Inc. and Vision Direct, Inc.*, Civil Action No. 02-CV-8049 and Vision Direct has taken an appeal to the United States Court of Appeals for the Second Circuit relating to the issuance of a preliminary injunction against Vision Direct (the "Action");

WHEREAS, the Parties have determined that, in order to avoid the expense, inconvenience, and disruption of pursuing and defending the Action, it is desirable and in their respective best interests to terminate the Action and settle any claims related thereto, all without admitting any liability for the claims alleged in the Action;

NOW, THEREFORE, in consideration of the mutual promises hereinafter set forth and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.    **RELEASE:** Other than with respect to the obligations contained in this Agreement, and in consideration of the mutual releases and covenants contained herein, the Parties, on behalf of themselves and their officers, directors, agents, shareholders, employees, attorneys, affiliates, subsidiaries, parent entities, successors, heirs and assigns, hereby release and discharge each other and their respective officers, directors, agents, shareholders, employees, attorneys, affiliates, subsidiaries, parent entities, successors, heirs and assigns, from any and all

Exhibit: D

Page: _____

2    NOTE: PAGE 1 HAS BEEN INTENTIONALLY OMITTED

liability, claims, counterclaims, demands, debts, charges, liens and causes of action of every kind

and character, known or unknown, accrued or unaccrued, whether arising out of contract, tort or

otherwise, in law or in equity, arising from, or relating to the claims and defenses in this Action.

2.    **DISMISSAL OF CLAIMS / COSTS:**  Within five (5) business days of

the Effective Date, Plaintiff 1-800 Contacts agrees to execute and cause to be filed with the

Court a stipulation in substantially the form attached hereto (i) vacating and dissolving the

preliminary injunction entered in this Action against Vision Direct on December 22, 2003, (ii)

dismissing the Action with prejudice as against Vision Direct; and (iii) if the above (i) and (ii) do

not have the effect of dismissing with prejudice Vision Direct's appeal of the preliminary

injunction, Vision Direct will thereafter dismiss the appeal with prejudice.  The Parties shall

cooperate in taking all other necessary action to affect this Section.  Each Party agrees to bear its

own costs and attorneys' fees in connection with the Action and this Agreement.  Neither Party

shall seek to recover from the other Party the attorneys' fees and expenses that they incurred in

this Action or in the negotiation and drafting of this Agreement.

3.    **CONSIDERATION:**  Defendant agrees to pay to Plaintiff the amount of

One Dollar ($1.00).  Within five (5) business days of the Effective Date of this Agreement,

Defendant shall deliver to counsel for Plaintiff a check in the amount of One Dollar ($1.00),

made payable to "1-800 Contacts, Inc."  In addition, Vision Direct agrees to remove and keep

absent (and shall cause its parent drugstore.com, inc. to remove and keep absent) (Vision Direct

and drugstore.com, inc collectively the "Combined Entity") the phrase "World's Largest

Selection" from the website located at the URL www.visiondirect.com and from any other

website the Combined Entity owns or controls, but only on those portions of such websites that

relate directly to the sale of vision care products.   In connection with the immediately preceding

3

Exhibit: D

Page: _____

sentence, the Combined Entity shall remove the phrase as soon as administratively practicable following the Effective Date of this Agreement.

4.    **PROHIBITED ACTS:** (A.) From the Effective Date of this Agreement, each Party, its parent, subsidiaries, agents, servants, employees, officers and other entities controlled by such Party mutually agree to refrain from and not to cause in the future any other entity to engage in Internet advertising that causes advertisements to appear on top of, over, underneath or behind the other Party's websites, as listed on Exhibit 1 hereto (the "Restricted Websites"), to display Pop-Up Advertisements in connection with any portion of the other Party's Restricted Websites, or to modify or alter the other Party's Restricted Websites as described more fully below (collectively the "Prohibited Acts"). The Parties agree that any third-party participating in an associate or affiliate program or similar program of a Party's Restricted Websites (an "Affiliate") is not controlled by such Party. However, if a Party ("Party A") is made aware that an Affiliate is using the trademark of the other Party ("Party B") as a result of Party A's associate or affiliate relationship with such Affiliate, Party A shall within ten days request in writing that the Affiliate cease using the trademark with a copy of such notice being simultaneously sent to Party B. If the Affiliate fails to cease using the trademark within three business days, Party A will as soon as practicable  terminate the Affiliate's associate or affiliate relationship with Party A. Neither Party shall have an affirmative duty to police Affiliate advertising for potential violations of the other Party's intellectual property rights.

The Prohibited Acts include

a.    displaying Pop-Up Advertisements or other content that are programmed to appear on top of, over, underneath or behind the other Party's Restricted Websites or to obstruct the on-screen view of any portion of the other Party's Restricted Websites;

4

Exhibit: D

Page: _____

b.    altering or modifying any copy of the other Party's Restricted Websites, including without limitation, altering or modifying the appearance of the other Party's Restricted Websites or the manner in which the Restricted Websites are displayed to an Internet user, whether or not the alteration or modification of the appearance of the Restricted Websites in any way interacts with or changes the underlying code for the display of that Restricted Website;

c.    using the other Party's URLs, trademarks, or brand name to target or trigger the appearance or delivery of Pop-Up Advertisements on top of, over, underneath, behind, or in any way that obstructs the on-screen view of the other Party's Restricted Websites;

d.    causing a Party's website or Internet advertisement to appear in response to any Internet search for the other Party's brand name, trademarks or URLs;

e.    causing a Party's brand name, or link to the Party's Restricted Websites to appear as a listing in the search results page of an Internet search engine, when a user specifically searches for the other Party's brand name, trademarks, or URLs;

f.    embedding or otherwise causing hypertext links to appear by highlighting, underscoring, or otherwise marking or identifying text on the other Party's Restricted Websites such that a promotional message or other type of advertisement will appear either when the user scrolls over the hypertext or other link, or when the user clicks on the hypertext or other link and is transported to a different webpage;

g.    replacing existing hypertext links on or in the other Party's Restricted Websites with a link to the Party's website;

h.    replacing promotional or advertising content on, above, below or behind the other Party's Restricted Website with promotional or advertising content of the Party;

i.    using the other Party's trademark or brand name to redirect users from the other Party's Restricted Websites or to change the appearance of the other Party's Restricted Websites.

(B.)    Prohibited Acts shall not include (i) use of the other Party's Trademarks on the Internet in a manner that would not constitute an infringing use in an non-Internet context, e.g., the use on the Internet of comparative advertising, parodies, and similar non-Infringing, uses; and (ii) the purchase by either Party of the key words that are generic words such as "contacts, "

5

Exhibit: D

Page: _____

"contact lens, " and "lens" (and both Parties acknowledge that any advertisements triggered by such key words are not prohibited under this agreement.)

(C.)    The Parties understand and appreciate that new Internet advertising techniques and technologies that are unknown as of the Effective Date of this Agreement likely will be developed and employed in the future. It is the intent of the Parties to construe this Section 4 in good faith to include as Prohibited Acts all future Internet advertising techniques and advertisement delivery technologies that are substantially similar to the Prohibited Acts.

(D.)    The Parties (which includes the Combined Entity for purposes of this section) may supplement Exhibit 1 (and as a result, the list of "Restricted Websites") hereto as necessary in the future by adding websites relating to the business of each respective party as it is conducted as of the date hereof, provided that the Party supplementing Exhibit 1 provides due notice in writing that additional websites are owned by that Party, its successors, or affiliates of that Party or its affiliates. The other Party shall have fifteen (15) days thereafter to comply with this Agreement with respect to any additional websites or object to their inclusion in Exhibit 1; provided that the only basis for objecting to the addition of a website to Exhibit 1 is that the website (i) is not owned by the supplementing Party, its successors, or affiliates of that Party or its affiliates or (ii) does not relate to the conduct of the supplementing Party's business as of the date hereof. The Party's acknowledge that "as of the dates hereof" their businesses shall be defined for the purposes of this agreement as follows: (x) for the Combined Entity -- beauty, wellness, personal care, vision and pharmacy – related product offerings; and for 1 - 800 Contacts any vision-related product offerings.

5.    **NOTICE OF BREACH:** In the event that a Party believes the Agreement has been breached through the commission of one or more of the Prohibited Acts set forth above in

6

Exhibit: D

Page: _____

Section 4 of this Agreement, that Party shall provide written notice of such alleged breach promptly to the other Party, who shall have 10 calendar days from receipt of such notice to respond or remedy the breach.  In the event the other Party does not respond to or remedy the alleged breach within 10 calendar days, the enforcing Party shall be entitled to enforce this Agreement in accordance with its terms and to seek, without limitation, all available remedies at law or equity.  Any notice provided for in this Agreement shall be in writing and shall be either personally delivered, or mailed by first class mail, return receipt requested, to the recipient at the address below indicated:

> Notices to Vision Direct:
> Attn: General Counsel of drugstore.com, inc.
> drugstore.com, inc.
> 13920 SE Eastgate Way, Suite 300
> Bellevue, WA 98005
>
> Notices to 1-800 CONTACTS:
> 1-800 CONTACTS, INC.
> 66 East Wadsworth Park Drive
> Draper, Utah  84020
> Attn:  Joe Zeidner

Any notice under this Agreement shall be deemed to have been given when so delivered or mailed.

6.    **LITIGATION:**  Any litigation in connection with this Agreement, including but not limited to any breach of this Agreement or the interpretation or construction of the terms of this Agreement shall only be brought in the United States District Court for the Southern District of New York.  The Parties hereby waive any objection to venue or jurisdiction in the United States District Court for the Southern District of New York.

7.    **WARRANTY AND CAPACITY TO EXECUTE:**  The Parties represent and warrant that they have read and understand this Agreement, that they are duly authorized to

Exhibit: D

Page: _____

execute this Agreement, and that they have executed this Agreement in consultation with their respective attorneys.

8.    **NEUTRAL CONSTRUCTION:**  This Agreement shall be construed and enforced without regard to which Party is the drafter of the Agreement.

9.    **WAIVER:**  The waiver of any breach of any term or provision of this Agreement shall not be construed and shall not be a waiver of any other breach of this Agreement.

10.    **NEW YORK LAW:**  This Agreement and matters relating to the performance thereof shall be construed, interpreted and enforced in accordance with the laws of the State of New York, without giving effect to its choice of law principles.

11.    **ENTIRE AGREEMENT:**  This Agreement constitutes the entire understanding between the Parties with respect to the subject matter herein and merges all prior discussions and communications between them with respect to this Agreement.  This Agreement supersedes and replaces all prior representations, statements, promises, commitments, and agreements between the Parties whether oral or written, expressed or implied, and related to any subject matter.

12.    **ASSIGNMENT:**  No Party may assign its rights, duties or obligations under this Agreement, directly or indirectly, in whole or in part, without the prior written consent of the other Party, except in connection with a merger, reorganization or change in control, or a sale of all or substantially all of a Party's business, equity and/or assets.  Any such permitted assignee must agree in writing to assume all of the assigning Party's obligations hereunder, and the assigning Party must guarantee such assignee's performance hereunder.  Any purported assignment in contravention of this Section 12 shall be void ab initio and of no force or effect.  In the event of a permitted assignment, this Agreement shall be binding upon such Party's permitted successors and assigns.

8

13.    **SEVERABILITY:**  If for any reason a competent authority finds any provision of this Agreement, or portion thereof, to be unenforceable, that provision or portion shall be enforced to the maximum extent permissible to effect the intent of the Parties, and the remainder of this Agreement shall continue in full force and effect.

14.    **COUNTERPARTS:**  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one single agreement among the Parties.

15.    **NON DISCLOSURE:**  The Parties will mutually agree on press releases and/or public statements regarding this Agreement ("the mutually agreed PR").  Neither Party will deviate from the mutually agreed PR without the prior written consent of the other Party, which consent will not be unreasonably withheld.  **IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be signed below by their respective duly authorized officers.

1-800 CONTACTS, INC.                    VISION DIRECT INC.

By: _____          By: _____

Title: _____          Title: V. P. AND GENERAL COUNSEL

Date: 6/24/04                           Date: 6/24/04

9

Exhibit: D

Page: _____

# EXHIBIT E

Exhibit: $\mathcal{E}$

Page: _____



**RADER,**
**FISHMAN**
**& GRAUER**
PLLC

*River Park Corporate Center One*
*10653 S. River Front Pkwy., Ste. 150*
*South Jordan, UT 84095*
*Tel: (801) 572-0185*
*Fax: (801) 572-7666*

**Bryan G. Pratt**
**(801) 572-0185**
**BGP@raderfishman.com**

Via email: ymorikubo@drugstore.com;
ngarnett@drugstore.com
Confirmation via FedEx

October 12, 2007

Attn: General Counsel of drugstore.com, Inc.
Yukio Morikubo, General Counsel
Nathan Garnett, Associate General Counsel
drugstore.com, inc.
13920 SE Eastgate Way, Suite 300
Bellevue, Washington
98005

Re:    Compliance with Settlement Agreement between 1-800 Contacts, Inc. and
Vision Direct, Inc.

Gentlemen:

As you may know, we represented 1-800 Contacts, Inc., with whom Vision Direct, Inc. entered into a Settlement Agreement, dated June 24, 2004 (the "Settlement Agreement"). That Agreement, among other things, governs the use of the parties' trademarked keywords in internet advertising by the other party. A copy of the Settlement Agreement is attached for clarity.

Among a number of "Prohibited Acts" enumerated in that Agreement, the parties agreed to prohibit "causing a Party's website or Internet advertisement to appear in response to any Internet search for the other Party's brand name, trademarks or URLs; [and] causing a Party's brand name, or link to the Party's Restricted Websites to appear as a listing in the search results page of an Internet search engine, when a user specifically searches for the other Party's brand name, trademarks, or URLs." (Settlement Agreement, paragraph 4(A)(d) and (e)). The Settlement Agreement goes on to state that: "It is the intention of the Parties to construe this Section 4 in good faith to include as Prohibited Acts all future Internet advertising techniques and advertisement display technologies that are substantially similar to the Prohibited Acts." (Settlement Agreement, paragraph 4(C).

At least as early as July 27, 2007, Brandon Dansie of 1-800 Contacts notified Colin Veach at Vision Direct of several instances in which Vision Direct's internet ads were triggered

*Worldwide Intellectual Property Matters • Patents • Trademarks • Litigation • Copyrights • U.S. and Foreign Portfolio Management*
*Computer and Internet Law • Trade Secrets • Unfair Competition*
Bloomfield Hills    Washington, D.C.    Salt Lake City    Tokyo

Exhibit: C
Page:



by searches using variations of 1-800's trademarks.  A copy of this email is also appended to this letter.

Clearly, this is a breach of the terms of the Settlement Agreement that prohibit causing a Party's brand name or link to appear as a listing in the search results of an Internet search engine when a user is searching for the other Party's trademarks and "substantially similar" acts.  In the past, such issues have been amicably resolved by cooperation between the parties.

Specifically, in the more than three years since the Settlement Agreement was executed, the parties have taken care to avoid these particular "Prohibited Acts" by, for example, using negative keywords that prevented the listing or advertising of one party from appearing in response to a search conducted using the trademarks and trademark variations of the other party. Our client has provided us with email records dating back to 2004, just after the Settlement Agreement was signed, that demonstrate this established practice between the parties.

This longstanding course of conduct establishes the level of care required to comply with the provisions of the Settlement Agreement that prohibit one party from causing their listing or advertisements to appear in response to a search using a trademark or trademark variation of the other party.

Given the lack of adequate response to the email from Mr. Dansie, mentioned above, 1-800 Contacts is concerned that Vision Direct has decided to abandon this established practice of using negative keywords to avoid the Prohibited Acts indicated.  Please be advised that any such change in the established course of conduct under the Settlement Agreement is totally unacceptable and clearly a violation of Paragraphs (4)(A)(d) and (e) and (4)(C) of the Settlement Agreement.  <u>This letter serves as official notice of breach of the Settlement Agreement pursuant to paragraph 5 of the Agreement.</u>

I must therefore insist that Vision Direct cease and desist violating the Settlement Agreement as outlined above.  Vision Direct must continue to use negative keywords and other reasonable measures to avoid the Prohibited Acts of the Settlement Agreement, particularly paragraphs (4)(A)(d) and (e).

Exhibit: ___𝓔___

Page: _____

**RADER,**
**FISHMAN**
**& GRAUER**
PLLC

Page 3
Vision Direct
Breach of Settlement Agreement

 

Your prompt written assurance that no further violations of the Settlement Agreement will occur is required including an express promise to continue using negative keywords to avoid the Prohibited Acts of the Settlement Agreement. If Vision Direct fails to respond to this Notice or repudiates its obligations under the long-standing Settlement Agreement, 1-800 Contacts has instructed us to pursue all available legal remedies immediately following the ten calendar day period provided in paragraph 5 of the Settlement Agreement.

Sincerely,

**RADER, FISHMAN & GRAUER PLLC**

Bryan G. Pratt, Esq.

Exhibit: _E_

Page: _____



From: Brandon Dansie
Sent: Friday, July 27, 2007 4:55 PM
To: 'Colin Veach'
Subject: VisionDirect Ads on 1800 CONTACTS' Trademarked Keywords
07/27/07

Hi Colin,

I've attached screenshots showing several examples of VisionDirect's ads being triggered for searches on variations of our trademarked name. As you know, this is a violation of the settlement agreement between our two companies. Can you please address this as soon as possible?


Thanks,

Brandon


Brandon Dansie

1-800 CONTACTS

www.1800contacts.com <http://www.1800contacts.com/>

bdansie@1800contacts.com <mailto:bdansie@1800contacts.com>

(801) 316-5632

Exhibit: C

Page: _____

# EXHIBIT F

Exhibit: F

Page:



1800 contacts - Google Search - Microsoft Internet Explorer

File  Edit  View  Favorites  Tools  Help

Back ▾ ▾  Search  ★ Favorites

Address  http://www.google.com/search?hl=en&q=1800+contacts&btnG=Search

Web  Images  Maps  News  Shopping  Gmail  more ▾

Google  1800 contacts

Search    Advanced Search
         Preferences

Web                                                          Results 1 - 10 of about 254,000 for 1800 contacts. (0.14 seconds)    Sign in

1800CONTACTS.com
www.1800contacts.com    World's largest contact lens store. We make it simple.

Contact Lenses at 1-800 CONTACTS | World's Largest Contact Lens Store®
It's easy to order from you guys. You ship promptly and price is unbeatable…Keep up the
good work!" —Eugene, California.
www.1800contacts.com/ - 49k - Cached - Similar pages

Acuvue Rebates      Most Popular
How to Order         Bausch and Lomb
Acuvue               FreshLook Rebates
Full Product List     Color Lenses

More results from 1800contacts.com »

Contact Lens Specials at 1-800 CONTACTS | World's Largest Contact …
Contact Lens Specials at 1-800 CONTACTS - get free shipping, easy online ordering, and
guaranteed customer service at the World's Largest Contact Lens …
www.1800contacts.com/lenses/specials.htm - 67k - Cached - Similar pages

1800Contacts Discount Coupon
1800Contacts is one of the largest online contact lens store. 1800Contacts is dedicated to
providing you with a simple, hassle-free way to replace your …
www.samlian.com/lenses/ - 5k - Cached - Similar pages

Wal-Mart Facts - Wal-Mart Teams with 1-800 CONTACTS to Expand …
Jan 17 2008 …. Wal-Mart, Sam's Club and 1-800 CONTACTS will create efficiencies across
their call centers, websites, purchasing, and distribution efforts ….
www.walmartfacts.com/articles/5598.aspx - 80k - Cached - Similar pages

Sponsored Links

Sponsored Link

Buy Contact Lenses Online
Free Shipping – No Minimum. Lowest
Prices and Satisfaction Guaranteed
www.VisionDirect.com/Contact_Lenses

1-800 # Unlimited Plan
Custom numbers. Month to month.
Activate today. 7 day no-risk trial
www.phonepeople.com/UNLIMITED-PLAN

LensWorld.com 75% Off
Up to 75% off Retail Price!
Free Shipping on Orders Over $89
www.LensWorld.com

Exhibit: F
Page:

Done                                                          Internet



Exhibit: F

Page:

lens direct - Google Search - Microsoft Internet Explorer

File  Edit  View  Favorites  Tools  Help

Back  •  Address  http://www.google.com/search?hl=en&q=lens+direct

Web  Images  Maps  News  Shopping  Gmail  more ▾

Sign in

Google

[ lens direct ]   Search
Advanced Search
Preferences

Web    Results 1 - 10 of about 501,000 for lens direct. (0.12 seconds)

**Sponsored Link**

**Lens Direct**
www.VisionDirect.com/Contact_Lenses
Lenses Are FSA-Eligible & Ship Free Low Price Guarantee & Bill Me Later

LensDirect
www.lensdirect.com/ - 22k - Cached - Similar pages
DISCOUNT CONTACT LENSES | Save 70% on Contact Lenses | Free Shipping on orders over $89. Contact lenses by Acuvue, Focus, Optima FW, & Freshlook. ...

Acuvue 2
Acuvue Contact Lenses
Ciba Vision
Focus Night & Day
Biomedics 55
Focus Dailies
More results from lensdirect.com »

Eyeglasses | designer eye glasses, prescription eyeglass lenses ...
Eyeglasses: Prescription eyeglasses from Frames Direct, rimless eyeglasses, reading, round glasses, sunglasses and lenses by brand name eyeglass designers ...
www.framesdirect.com/ - 185k - Cached - Similar pages

Buy Contact Lenses - Order Contacts Online from Vision Direct ...
Order your contact lenses online at Vision Direct. Buying contacts from Vision Direct guarantees you the lowest price on Acuvue, Focus, Freshlook, O2OPTIX, ...
www.visiondirect.com/ - 61k - Cached - Similar pages

Sports Optical :::: Exclusive 'Direct Lens Technology' for ....
After years of research and development we are proud to offer the following glasses in prescription using our proprietary Direct Lens Technology. ...
www.sportsoptical.com/direct_lens_tech.htm - 12k - Cached - Similar pages



**Sponsored Links**

**Lens.com Official Site**
We guarantee low prices. Visit us before shopping elsewhere. 70% Off.
www.Lens.com

**Lens Direct**
Save Big on Brand-Name Lenses.
110% Lowest Price Guarantee.
www.CoastalContacts.com

**1-877-LENS-347 Contacts**
Save 70% or more on your Contacts!
We'll beat all 1800 and web prices.
www.LensDiscounters.com

**Lens Direct**
10,000+ Choices for the Outdoors.
Deals on Lens Direct!
BizRate.com/Binoculars

**Discount Contact Lens**
Up to $80 Off Brand Name Contacts.
Free Shipping on Orders Over $50.
www.1800contacts.com

**Discount Contact Lenses**
We sell for less - compare and save

Exhibit: G
Page:

Internet



Exhibit: E

Page: