Glenn C. Colton
gcolton@wsgr.com
Jessica L. Margolis
jmargolis@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION
1301 Avenue of the Americas, 40th Floor
New York, New York  10019
Tel: 212.999.5800

*Attorneys for Defendant/Counterclaim-Plaintiff*
*Vision Direct Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 1-800 CONTACTS, INC. | Case No. 08 CV 1949 (GBD) |
| Plaintiff/Counterclaim-Defendant, | **ANSWER AND COUNTERCLAIMS** |
| - against - | JURY TRIAL DEMANDED |
| VISION DIRECT INC. | ECF CASE |
| Defendant/Counterclaim-Plaintiff. | |

Defendant Vision Direct Inc. ("Defendant"), by its attorneys, Wilson Sonsini Goodrich &

Rosati, Professional Corporation, hereby answers the Complaint of Plaintiff 1-800 Contacts, Inc.

("Plaintiff") as follows:

### NATURE OF THE ACTION

1.    Defendant denies the allegations in the first sentence of paragraph 1 of the

Complaint.  Defendant denies the allegations in the second sentence of paragraph 1, except

admits that (a) an action titled *1-800 Contacts, Inc. v. WhenU.com, Inc. & Vision Direct Inc.*,

No. 02 CV 8043, was filed on October 9, 2002 ("Prior Action"), and (b) pursuant to a settlement

agreement dated June 24, 2004 ("Settlement Agreement"), the Prior Action was dismissed as against Vision Direct only on July 22, 2004. Defendant admits the allegation in the third sentence of paragraph 1.

## THE PARTIES

2.    Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2, and on this basis denies the allegations.

3.    Defendant admits the allegations in paragraph 3 of the Complaint.

## JURISDICTION AND VENUE

4.    The allegations in paragraph 4 of the Complaint constitute conclusions of law to which no response is required.

5.    Defendant admits the allegations in paragraph 5 of the Complaint.

6.    Defendant admits the allegations in paragraph 6 of the Complaint.

## PLAINTIFF'S AND DEFENDANT'S BUSINESSES

7.    Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7, and on this basis denies the allegations.

8.    Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8, and on this basis denies the allegations.

9.      Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9, and on this basis denies the allegations.

10.     Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10, and on this basis denies the allegations.

11.     Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11, and on this basis denies the allegations.

12.     Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12, and on this basis denies the allegations.

13.     Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13, and on this basis denies the allegations.

14.     Defendant denies the allegations in paragraph 14 of the Complaint, except admits that Defendant has been and is now engaged in the business of selling contact lenses and related products through its website, www.visiondirect.com, as well as through telephone and fax, and that Defendant has sold products to customers located in this District.  Defendant further avers, upon information and belief, that Plaintiff is also in the business of selling contact lenses and related products through the Internet, telephone and fax.

## INTERNET SEARCHING AND KEYWORD ADVERTISING

15.     Defendant admits the allegations in the first sentence of paragraph 15 of the Complaint.  Defendant denies the remaining allegations in paragraph 15, except admits that (a)

a user seeking information on the Internet through use of a search engine may input into the search engine (via the search engine provider's webpage) certain words or phrases of the user's own choosing, often referred to as "search terms," (b) in response, the search engine generally will return a list of "links" to other websites that the search engine provider has determined, based on its own criteria, may correspond or be related to the words or phrases entered by the user or to that user's interests, and (c) these "links" are commonly referred to as the "organic search results."

16.    Defendant denies the allegations in the first sentence of paragraph 16 of the Complaint, except admits that (a) in addition to "organic search results," some search engine providers return paid advertisements to users who perform searches, and (b) these search engine providers generally represent that the particular advertisements that are returned in any given search are based on the search term(s) that the user enters.  Defendant admits the allegations in the last sentence of paragraph 16.

17.    Defendant denies the allegations in paragraph 17 of the Complaint, except admits that (a) in purchasing advertising through a search engine provider, the advertiser generally can identify to the search engine provider "keywords," which the search engine provider generally represents may cause the advertiser's paid advertisement to be returned to a user who enters the identified keywords, and (b) either of the parties in this case might, for example, identify the phrase "contact lens" as a keyword.

18.     Defendant denies the allegations in paragraph 18, except admits that certain search engines may permit an advertiser to specify as keywords its own claimed trademarks and/or trademarks claimed by third parties.

19.     Defendant denies the allegations in paragraph 19 of the Complaint, except that admits that (a) in purchasing advertisements with a search engine provider, an advertiser sometimes can specify "negative keywords," and (b) search engine providers permitting negative keywords generally represent to the advertiser that, when negative keywords are identified, the provider will undertake steps to try to prevent the advertiser's paid advertisement from returning to a user who enters the specified negative keywords.

20.     With respect to first sentence of paragraph 20, Defendant denies the allegations stated therein and avers that (a) Defendant has in the past purchased and continues to purchase advertising with various search engine providers, (b) in so doing, Defendant generally utilizes "keywords" and sometimes utilizes "negative keywords." Defendant admits the allegations in the second sentence of paragraph 20.

## THE PRIOR ACTION AND THE SETTLEMENT AGREEMENT

21.     Defendant denies the allegations in paragraph 21, except admits that Plaintiff filed an action against Vision Direct and WhenU.com, Inc. in the United States District Court for the Southern District of New York on October 9, 2002, Case No. 02 CV 8043 ("Prior Action"), and respectfully refers the Court to the complaint in the Prior Action for a complete and accurate recitation of its contents.

22.    Defendant denies the allegations in the first sentence of paragraph 22, except admits that, on June 24, 2004, Vision Direct and 1-800 Contacts entered into a Settlement Agreement with respect to the Prior Action and that the Prior Action subsequently was dismissed with prejudice as to Vision Direct only.  Defendant admits the allegations in the second sentence of paragraph 22.

23.    Defendant denies the allegations in paragraph 23 of the Complaint, except admits that the parties entered into the Settlement Agreement and respectfully refers the Court to the Settlement Agreement for a complete and accurate recitation of its contents.

24.    Defendant denies the allegations in paragraph 24 of the Complaint, except admits that the parties entered into the Settlement Agreement and respectfully refers the Court to the Settlement Agreement for a complete and accurate recitation of its contents.

25.    Defendant denies the allegations in paragraph 24 of the Complaint and respectfully refers the Court to the Settlement Agreement for a complete and accurate recitation of its contents.

## BREACH OF THE SETTLEMENT AGREEMENT, AND DEMAND

26.    Defendant denies the allegations in paragraph 26 of the Complaint and respectfully refers the Court to the Settlement Agreement for a complete and accurate recitation of its contents.

27.    Defendant denies information or knowledge sufficient to form a belief as to the allegations in the first sentence of paragraph 27.  Defendant denies the allegations in the second sentence of paragraph 27, except admits that Defendant sometimes utilizes negative keywords when purchasing Internet search engine advertising.

28.    Defendant denies the allegations in paragraph 28 of the Complaint.

29.    Defendant denies the allegations in paragraph 29 of the Complaint, except admits that the parties entered into the Settlement Agreement and respectfully refers the Court to the Settlement Agreement for a complete and accurate recitation of its contents.

30.    Defendant denies the allegations in the first four sentences of paragraph 30 of the Complaint, except (a) admits that, on July 27, 2007 and October 12, 2007, Plaintiff sent letters to Defendant and its parent, drugstore.com, copies of which are attached to the Complaint, and (b) respectfully refers the Court to these letters for a complete and accurate recitation of their contents.  Defendant denies the allegations in the last sentence of paragraph 30 of the Complaint.

31.    Defendant denies the allegations in paragraph 31 of the Complaint.

## FIRST CLAIM FOR RELIEF

32.    Defendant repeats and realleges its responses to paragraphs 1 through 31 of the Complaint as if fully set forth herein.

33.    The allegations in paragraph 33 constitute conclusions of law, to which no responsive pleading is required.

34.    Defendant denies the allegations in paragraph 34 of the Complaint.

35.    Defendant denies the allegations in paragraph 35 of the Complaint.

36.    Defendant denies the allegations in paragraph 36 of the Complaint.

37.    Defendant denies the allegations in paragraph 37 of the Complaint.

38.    Defendant denies the allegations in paragraph 38 of the Complaint.

## SECOND CLAIM FOR RELIEF

39.    Defendant repeats and realleges its responses to paragraphs 1 through 38 of the Complaint as if fully set forth herein.

40.    The allegations in paragraph 33 constitute conclusions of law, to which no responsive pleading is required.

41.    Defendant denies the allegations in paragraph 41 of the Complaint.

42.    Defendant denies the allegations in paragraph 42 of the Complaint.

43.    Defendant denies the allegations in paragraph 43 of the Complaint.

44.    Defendant denies the allegations in paragraph 44 of the Complaint.

### ANSWER TO REQUEST FOR RELIEF

Defendant denies that Plaintiff is entitled to the judgment and relief requested or to any relief.

### GENERAL DEFENSES

Unless otherwise specifically admitted herein, each and every allegation contained in the Complaint is hereby denied.

### DEFENSES

### First Defense

The Complaint fails to state a claim upon which relief can be granted.

### Second Defense

Defendant did not breach the Settlement Agreement.

### Third Defense

Plaintiff breached the Settlement Agreement.

### Fourth Defense

Plaintiff failed to mitigate any alleged damages.

### Fifth Defense

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

## Sixth Defense

Plaintiff's claims are barred, in whole or in part, by the doctrines of estoppel, waiver and laches.

## Seventh Defense

Plaintiff's claims are barred, in whole or in part, because Plaintiff's asserted injuries are too remote, attenuated and/or speculative to allow recovery or other relief.

## Eighth Defense

Plaintiff's claims for injunctive and other equitable relief are barred because Plaintiff has an adequate remedy at law.

## Ninth Defense

While Defendant maintains that the Settlement Agreement does not require the specification of negative keywords, in the event that the Court accepts Plaintiff's contrary interpretation of the Settlement Agreement, any damages proven by and awarded to Plaintiff must be off-set by damages incurred by Defendant and/or profits unjustly realized by Plaintiff as a result of Plaintiff's own failure to utilize negative keywords.

## Tenth Defense

Defendant currently has insufficient knowledge and information on which to form a belief as to whether it may have additional defenses available.  Defendant reserves the right to assert additional defenses or affirmative defenses in the event that Defendant determines such defenses would be appropriate.

## COUNTERCLAIMS

Defendant/Counterclaim-Plaintiff Vision Direct Inc. ("Vision Direct"), in support of its Counterclaims against Plaintiff/Counterclaim-Defendant 1-800 Contacts Inc. ("1-800 Contacts"), alleges as follows:

## PARTIES

1.      Vision Direct is a Texas corporation with a principal place of business at 411 108th Avenue NE, Suite 1400, Bellevue, Washington 98004.

2.      Upon information and belief, 1-800 Contacts is a Delaware corporation with a principal place of business at 66 East Wadsworth Park Drive, Draper, Utah 84020.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1367.  This Court also has subject matter jurisdiction pursuant to 28 U.S.C. 1332, as the amount in controversy exceeds $75,000 and there is diversity of citizenship between the parties.

4.      This Court may exercise personal jurisdiction over 1-800 Contacts because it has consented and waived objection to such jurisdiction in this District.

5.      Venue is appropriate because the parties have each consented and waived objection to venue in this District.

## GENERAL ALLEGATIONS

6.      On or about October 9, 2002, 1-800 Contacts filed an action in the United States District Court for the Southern District of New York titled *1-800 Contacts, Inc. v. WhenU.com & Vision Direct, Inc.*, Case No. 02 CV 8043 ("Prior Action").  In the Prior Action, 1-800 Contact asserted claims against Vision Direct for, among other things, trademark infringement and unfair competition based on Vision Direct's alleged conduct with respect to Internet advertising.  On or about June 24, 2004, Vision Direct and 1-800 Contacts entered into a settlement agreement resolving the Prior Action as between themselves ("Settlement Agreement"), and the Prior Action was dismissed as against Vision Direct on July 22, 2004.  A true and correct copy of the Settlement Agreement is attached hereto as Exhibit A.

7.      Paragraph 6 of the Settlement Agreement states:  "Any litigation in connection with this Agreement, including but not limited to any breach of this Agreement or the interpretation or construction of the terms of the Agreement shall only be brought in the United States District Court for the Southern District of New York."

8.      On December 28, 2007, 1-800 Contracts filed an action in Utah State court against Vision Direct and its parent company, drugstore.com, inc. ("Utah State Action"), in which 1-800 Contacts alleged that defendants breached the Settlement Agreement.  A copy of the complaint in the Utah State Action (without exhibits) is attached hereto as Exhibit B.

9.      1-800 Contacts' filing of the Utah State Action constituted a clear violation of the Settlement Agreement's forum selection clause, which requires that any litigation in

connection with the Settlement Agreement be brought exclusively in the United States District Court for the Southern District of New York.

10.    On January 24, 2008, Vision Direct (through its counsel) sent 1-800 Contacts written notice of 1-800 Contacts' breach of the Settlement Agreement.  Discussions between the parties ensued, during which Vision Direct reiterated its position that the Utah State Action constituted a violation of the Settlement Agreement's forum-selection clause, entitling Vision Direct to relief, including monetary damages.

11.    By stipulation dated February 20, 2008, 1-800 Contacts agreed to dismiss the Utah State Action against Vision Direct and drugstore.com without prejudice and with each party bearing its own costs and attorneys fees.  An order effecting this dismissal was issued by the Utah State court on March 17, 2008.  True and correct copies of the Notice & Stipulation and subsequent Order of Dismissal are attached hereto as Exhibit C.

12.    Less than one week after 1-800 Contacts agreed to voluntarily dismiss the Utah State Action, 1-800 Contacts filed another complaint in Utah against Vision Direct and drugstore.com – this time in federal court ("Utah Federal Action").  A copy of the complaint in the Utah Federal Action (without exhibits) is attached as hereto Exhibit D.  A day later, on February 27, 2008, 1-800 Contacts filed the instant Complaint in this Court.

13.    The factual allegations underlying the causes of action in the Utah Federal Action are the same as those that had been asserted by 1-800 Contacts in the Utah State Action and that are currently asserted by 1-800 Contacts in the instant Complaint.  That is, in all three

actions, 1-800 Contacts alleges that Vision Direct and its parent company, drugstore.com, inc., have failed to specify negative keywords when purchasing advertising from Internet search engine providers, and that this failure allegedly violates the Settlement Agreement.  However, whereas both the instant Complaint and the Utah State Action assert claims for breach of contract, in the Utah Federal Action Plaintiff attempts to reframe its causes of action to sound in tort.

14.     On March 5, 2008, Vision Direct (through its counsel) sent 1-800 Contacts written notice that the Utah Federal Action, like the Utah State Action, constitutes a violation of the Settlement Agreement's forum selection provision.  On March 11, 2008, Vision Direct (again through its counsel) sent 1-800 Contacts a second written notice reiterating 1-800 Contact's breach.  To date, 1-800 Contacts has failed to respond to these notices or otherwise cure its breach.

## FIRST CLAIM FOR RELIEF:  BREACH OF CONTRACT

15.     Vision Direct incorporates by reference all previous paragraphs of this Counterclaim.

16.     On or about June 22, 2004, Vision Direct and 1-800 Contacts entered into a Settlement Agreement.  The Settlement Agreement was supported by consideration, and constitutes a valid and enforceable contract.

17.     Vision Direct has fully performed under the Settlement Agreement and all conditions precedent have been performed or have occurred.

18.     1-800 Contacts' filing and prosecution of the Utah Federal Action constitutes a breach of the Settlement Agreement.

19.     Although Vision Direct has twice provided 1-800 Contacts with written notice of the breach, 1-800 Contacts has refused to cure.

20.     1-800 Contacts' breach of the Settlement Agreement has caused and continues to cause Vision Direct to suffer harm, including but not limited to monetary and other harm.

## SECOND CLAIM FOR RELIEF:  OFF-SET OF DAMAGES

21.     Vision Direct incorporates by reference all previous paragraphs of this Counterclaim.

22.     Upon information and belief, from time to time since the execution of the Settlement Agreement on June 24, 2004, 1-800 Contacts has failed to identify negative keywords with respect to Vision Direct when purchasing advertising from Internet search engine providers.

23.     While Vision Direct asserts that such identification is not required by the Settlement Agreement, to extent this Court holds otherwise, any damages proven by and awarded to 1-800 Contacts should be offset by damages incurred by Vision Direct and/or profits unjustly realized by 1-800 Contacts as a result of 1-800 Contacts' failure to utilize negative keywords.

## **PRAYER FOR RELIEF**

WHEREFORE, Vision Direct respectfully requests that this Court:

A.    Dismiss 1-800 Contacts' Complaint in its entirety;

B.    Award Vision Direct damages in an amount to be determined;

C.    Issue an order directing 1-800 Contacts' specific performance of the Settlement Agreement and enjoining 1-800 Contacts from filing or pursuing litigation in connection with the Settlement Agreement in any forum other than in the United States District Court for the Southern District of New York;

D.    Award Vision Direct pre-judgment interest as provided by law;

E.    Award Vision Direct post-judgment interest as provided by law;

F.    Award Vision Direct its costs and attorneys' fees incurred as a result of its prosecution of this matter; and

G.    Award Vision Direct such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Defendant/Counterclaim-Plaintiff Vision Direct, pursuant to Federal Rule of Civil Procedure 38, hereby demands a trial by jury of all issues so triable.

Date: April 14, 2008

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION

By: _____/s/_____
    Glenn C. Colton
    gcolton@wsgr.com
    Jessica L. Margolis
    jmargolis@wsgr.com
    WILSON SONSINI GOODRICH & ROSATI
    PROFESSIONAL CORPORATION
    1301 Avenue of the Americas, 40th Floor
    New York, New York  10019
    Tel: 212.999.5800

    *Attorneys for Defendant/Counterclaim-Plaintiff*
    *Vision Direct Inc.*

# EXHIBIT A

## SETTLEMENT AGREEMENT

This SETTLEMENT AGREEMENT ("Agreement") is made and entered into as of June 24, 2004 (the "Effective Date") by and between 1-800 Contacts, Inc. ("1-800 Contacts" or "Plaintiff") and Vision Direct, Inc. ("Vision Direct" or "Defendant") (collectively with Plaintiff, the "Parties").

WHEREAS, on or about October 9, 2002, Plaintiff filed a lawsuit in the United States District Court for the Southern District of New York (the "Court") captioned: *1-800 Contacts, Inc. v. WhenU.com, Inc. and Vision Direct, Inc.*, Civil Action No. 02-CV-8049 and Vision Direct has taken an appeal to the United States Court of Appeals for the Second Circuit relating to the issuance of a preliminary injunction against Vision Direct (the "Action");

WHEREAS, the Parties have determined that, in order to avoid the expense, inconvenience, and disruption of pursuing and defending the Action, it is desirable and in their respective best interests to terminate the Action and settle any claims related thereto, all without admitting any liability for the claims alleged in the Action;

NOW, THEREFORE, in consideration of the mutual promises hereinafter set forth and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.    **RELEASE**: Other than with respect to the obligations contained in this Agreement, and in consideration of the mutual releases and covenants contained herein, the Parties, on behalf of themselves and their officers, directors, agents, shareholders, employees, attorneys, affiliates, subsidiaries, parent entities, successors, heirs and assigns, hereby release and discharge each other and their respective officers, directors, agents, shareholders, employees, attorneys, affiliates, subsidiaries, parent entities, successors, heirs and assigns, from any and all

2    NOTE: PAGE 1 HAS BEEN INTENTIONALLY OMITTED.

liability, claims, counterclaims, demands, debts, charges, liens and causes of action of every kind

and character, known or unknown, accrued or unaccrued, whether arising out of contract, tort or

otherwise, in law or in equity, arising from, or relating to the claims and defenses in this Action.

2.  **DISMISSAL OF CLAIMS / COSTS:**  Within five (5) business days of

the Effective Date, Plaintiff 1-800 Contacts agrees to execute and cause to be filed with the

Court a stipulation in substantially the form attached hereto (i) vacating and dissolving the

preliminary injunction entered in this Action against Vision Direct on December 22, 2003, (ii)

dismissing the Action with prejudice as against Vision Direct; and (iii) if the above (i) and (ii) do

not have the effect of dismissing with prejudice Vision Direct's appeal of the preliminary

injunction, Vision Direct will thereafter dismiss the appeal with prejudice.  The Parties shall

cooperate in taking all other necessary action to affect this Section.  Each Party agrees to bear its

own costs and attorneys' fees in connection with the Action and this Agreement.  Neither Party

shall seek to recover from the other Party the attorneys' fees and expenses that they incurred in

this Action or in the negotiation and drafting of this Agreement.

3.  **CONSIDERATION:**  Defendant agrees to pay to Plaintiff the amount of

One Dollar ($1.00).  Within five (5) business days of the Effective Date of this Agreement,

Defendant shall deliver to counsel for Plaintiff a check in the amount of One Dollar ($1.00),

made payable to "1-800 Contacts, Inc."  In addition, Vision Direct agrees to remove and keep

absent (and shall cause its parent drugstore.com, inc. to remove and keep absent) (Vision Direct

and drugstore.com, inc collectively the "Combined Entity") the phrase "World's Largest

Selection" from the website located at the URL www.visiondirect.com and from any other

website the Combined Entity owns or controls, but only on those portions of such websites that

relate directly to the sale of vision care products.   In connection with the immediately preceding

sentence, the Combined Entity shall remove the phrase as soon as administratively practicable following the Effective Date of this Agreement.

4.    **PROHIBITED ACTS:** (A.) From the Effective Date of this Agreement, each Party, its parent, subsidiaries, agents, servants, employees, officers and other entities controlled by such Party mutually agree to refrain from and not to cause in the future any other entity to engage in Internet advertising that causes advertisements to appear on top of, over, underneath or behind the other Party's websites, as listed on Exhibit 1 hereto (the "Restricted Websites"), to display Pop-Up Advertisements in connection with any portion of the other Party's Restricted Websites, or to modify or alter the other Party's Restricted Websites as described more fully below (collectively the "Prohibited Acts"). The Parties agree that any third-party participating in an associate or affiliate program or similar program of a Party's Restricted Websites (an "Affiliate") is not controlled by such Party. However, if a Party ("Party A") is made aware that an Affiliate is using the trademark of the other Party ("Party B") as a result of Party A's associate or affiliate relationship with such Affiliate, Party A shall within ten days request in writing that the Affiliate cease using the trademark with a copy of such notice being simultaneously sent to Party B. If the Affiliate fails to cease using the trademark within three business days, Party A will as soon as practicable  terminate the Affiliate's associate or affiliate relationship with Party A. Neither Party shall have an affirmative duty to police Affiliate advertising for potential violations of the other Party's intellectual property rights.

The Prohibited Acts include

a.    displaying Pop-Up Advertisements or other content that are programmed to appear on top of, over, underneath or behind the other Party's Restricted Websites or to obstruct the on-screen view of any portion of the other Party's Restricted Websites;

b.    altering or modifying any copy of the other Party's Restricted Websites, including without limitation, altering or modifying the appearance of the other Party's Restricted Websites or the manner in which the Restricted Websites are displayed to an Internet user, whether or not the alteration or modification of the appearance of the Restricted Websites in any way interacts with or changes the underlying code for the display of that Restricted Website;

c.    using the other Party's URLs, trademarks, or brand name to target or trigger the appearance or delivery of Pop-Up Advertisements on top of, over, underneath, behind, or in any way that obstructs the on-screen view of the other Party's Restricted Websites;

d.    causing a Party's website or Internet advertisement to appear in response to any Internet search for the other Party's brand name, trademarks or URLs;

e.    causing a Party's brand name, or link to the Party's Restricted Websites to appear as a listing in the search results page of an Internet search engine, when a user specifically searches for the other Party's brand name, trademarks, or URLs;

f.    embedding or otherwise causing hypertext links to appear by highlighting, underscoring, or otherwise marking or identifying text on the other Party's Restricted Websites such that a promotional message or other type of advertisement will appear either when the user scrolls over the hypertext or other link, or when the user clicks on the hypertext or other link and is transported to a different webpage;

g.    replacing existing hypertext links on or in the other Party's Restricted Websites with a link to the Party's website;

h.    replacing promotional or advertising content on, above, below or behind the other Party's Restricted Website with promotional or advertising content of the Party;

i.    using the other Party's trademark or brand name to redirect users from the other Party's Restricted Websites or to change the appearance of the other Party's Restricted Websites.

(B.)    Prohibited Acts shall not include (i) use of the other Party's Trademarks on the

Internet in a manner that would not constitute an infringing use in an non-Internet context, e.g.,

the use on the Internet of comparative advertising, parodies, and similar non-Infringing, uses;

and (ii) the purchase by either Party of the key words that are generic words such as "contacts, "

"contact lens, " and "lens" (and both Parties acknowledge that any advertisements triggered by such key words are not prohibited under this agreement.)

(C.)  The Parties understand and appreciate that new Internet advertising techniques and technologies that are unknown as of the Effective Date of this Agreement likely will be developed and employed in the future. It is the intent of the Parties to construe this Section 4 in good faith to include as Prohibited Acts all future Internet advertising techniques and advertisement delivery technologies that are substantially similar to the Prohibited Acts.

(D.)  The Parties (which includes the Combined Entity for purposes of this section) may supplement Exhibit 1 (and as a result, the list of "Restricted Websites") hereto as necessary in the future by adding websites relating to the business of each respective party as it is conducted as of the date hereof, provided that the Party supplementing Exhibit 1 provides due notice in writing that additional websites are owned by that Party, its successors, or affiliates of that Party or its affiliates. The other Party shall have fifteen (15) days thereafter to comply with this Agreement with respect to any additional websites or object to their inclusion in Exhibit 1; provided that the only basis for objecting to the addition of a website to Exhibit 1 is that the website (i) is not owned by the supplementing Party, its successors, or affiliates of that Party or its affiliates or (ii) does not relate to the conduct of the supplementing Party's business as of the date hereof. The Party's acknowledge that "as of the dates hereof" their businesses shall be defined for the purposes of this agreement as follows: (x) for the Combined Entity -- beauty, wellness, personal care, vision and pharmacy – related product offerings; and for 1 - 800 Contacts any vision-related product offerings.

5.   **NOTICE OF BREACH**: In the event that a Party believes the Agreement has been breached through the commission of one or more of the Prohibited Acts set forth above in

Section 4 of this Agreement, that Party shall provide written notice of such alleged breach promptly to the other Party, who shall have 10 calendar days from receipt of such notice to respond or remedy the breach. In the event the other Party does not respond to or remedy the alleged breach within 10 calendar days, the enforcing Party shall be entitled to enforce this Agreement in accordance with its terms and to seek, without limitation, all available remedies at law or equity. Any notice provided for in this Agreement shall be in writing and shall be either personally delivered, or mailed by first class mail, return receipt requested, to the recipient at the address below indicated:

> Notices to Vision Direct:
> Attn: General Counsel of drugstore.com, inc.
> drugstore.com, inc.
> 13920 SE Eastgate Way, Suite 300
> Bellevue, WA 98005
>
> Notices to 1-800 CONTACTS:
> 1-800 CONTACTS, INC.
> 66 East Wadsworth Park Drive
> Draper, Utah 84020
> Attn: Joe Zeidner

Any notice under this Agreement shall be deemed to have been given when so delivered or mailed.

6.    **LITIGATION:** Any litigation in connection with this Agreement, including but not limited to any breach of this Agreement or the interpretation or construction of the terms of this Agreement shall only be brought in the United States District Court for the Southern District of New York. The Parties hereby waive any objection to venue or jurisdiction in the United States District Court for the Southern District of New York.

7.    **WARRANTY AND CAPACITY TO EXECUTE:** The Parties represent and warrant that they have read and understand this Agreement, that they are duly authorized to

execute this Agreement, and that they have executed this Agreement in consultation with their respective attorneys.

8.   **NEUTRAL CONSTRUCTION:**  This Agreement shall be construed and enforced without regard to which Party is the drafter of the Agreement.

9.   **WAIVER:**  The waiver of any breach of any term or provision of this Agreement shall not be construed and shall not be a waiver of any other breach of this Agreement.

10.  **NEW YORK LAW:**  This Agreement and matters relating to the performance thereof shall be construed, interpreted and enforced in accordance with the laws of the State of New York, without giving effect to its choice of law principles.

11.  **ENTIRE AGREEMENT:**  This Agreement constitutes the entire understanding between the Parties with respect to the subject matter herein and merges all prior discussions and communications between them with respect to this Agreement.  This Agreement supersedes and replaces all prior representations, statements, promises, commitments, and agreements between the Parties whether oral or written, expressed or implied, and related to any subject matter.

12.  **ASSIGNMENT:**  No Party may assign its rights, duties or obligations under this Agreement, directly or indirectly, in whole or in part, without the prior written consent of the other Party, except in connection with a merger, reorganization or change in control, or a sale of all or substantially all of a Party's business, equity and/or assets.  Any such permitted assignee must agree in writing to assume all of the assigning Party's obligations hereunder, and the assigning Party must guarantee such assignee's performance hereunder.  Any purported assignment in contravention of this Section 12 shall be void ab initio and of no force or effect.  In the event of a permitted assignment, this Agreement shall be binding upon such Party's permitted successors and assigns.

8

13.    **SEVERABILITY:** If for any reason a competent authority finds any provision of this Agreement, or portion thereof, to be unenforceable, that provision or portion shall be enforced to the maximum extent permissible to effect the intent of the Parties, and the remainder of this Agreement shall continue in full force and effect.

14.    **COUNTERPARTS:** This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one single agreement among the Parties.

15.    **NON DISCLOSURE:** The Parties will mutually agree on press releases and/or public statements regarding this Agreement ("the mutually agreed PR"). Neither Party will deviate from the mutually agreed PR without the prior written consent of the other Party, which consent will not be unreasonably withheld. **IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be signed below by their respective duly authorized officers.

1-800 CONTACTS, INC.

By: _____

Title: _____

Date: _____

VISION DIRECT INC.

By: _____

Title: _V. P. AND GENERAL COUNSEL_

Date: _6/24/04_

# EXHIBIT B

Bryan G. Pratt (Bar No. 09924)
RADER, FISHMAN & GRAUER, PLLC
10653 S. Riverfront Parkway
Suite 150
South Jordan, UT  84095
Telephone : (801) 572-0185
Facsimile :  (801) 572-7666

**FILED DISTRICT COURT**
Third Judicial District

DEC 2 8 2007

SALT LAKE COUNTY

By_____
                    Deputy Clerk

R. Terrance Rader
Kristin L. Murphy
Charles A. Bieneman
RADER, FISHMAN & GRAUER, PLLC
35933 Woodward Avenue, Suite 140
Bloomfield Hills, Michigan 48304
Telephone: (248) 594-0600
Facsimile:  (248) 594-0610

*Attorneys for Plaintiff*

---

### IN THE THIRD JUDICIAL DISTRICT COURT OF
### SALT LAKE COUNTY

### STATE OF UTAH

| | |
|---|---|
| 1-800 CONTACTS, INC., <br> a Delaware corporation, <br><br>  Plaintiff, <br><br> v. <br><br> DRUGSTORE.COM <br> a Delaware corporation, <br> ~~and~~ <br> VISION DIRECT, INC., <br> a ~~Texas~~ corporation, <br><br>  ~~Defendant.~~ | Case No.: *070918271* <br><br> Hon. *Faust* <br><br> **COMPLAINT AND JURY DEMAND** |

1

Plaintiff 1-800 CONTACTS, Inc. ("1-800 CONTACTS" or "Plaintiff") for its Complaint against

Defendant Drugstore.com, Inc. and Vision Direct, Inc. (collectively "Vision Direct" or "Defendant")

alleges:

## NATURE OF THE ACTION

1.      This is a civil action for damages and injunctive relief arising out of Vision Direct's

breach of contract, specifically an agreement dated June 24, 2004 to settle an action (the "Prior

Action") that was pending in the Southern District of New York (hereinafter "Settlement

Agreement"). A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit A**.

The Prior Action was filed October 9, 2002, and was captioned 1-800 CONTACTS, INC. v.

WHENU.COM, INC., et al., 02 CV 8043.

## THE PARTIES

2.      Plaintiff 1-800 CONTACTS, Inc. is a Delaware corporation, with its principal place of

business at 66 East Wadsworth Park Drive, Draper, Utah 84020.

3.      Upon information and belief, Defendant Drugstore.com, Inc is a Delaware corporation,

with its principle place of business at 411 108th Ave NE, Suite 1400

Bellevue, WA 98004.

4.      Upon information and belief, Defendant Vision Direct, Inc. is a Texas corporation, with

its principal place of business at 411 108th Avenue NE, Suite 1400, Bellevue, Washington 98004

5.      Upon information and belief, Defendant Vision Direct, Inc. is a wholly owned

subsidiary of Defendant Drugstore.com. Indeed, Drugstore.com, Inc.'s website identifies Vision

Direct, Inc. as a wholly owned subsidiary of Drugstore.com, Inc.  See screenshot of http://investor.drugstore.com/overview.cfm  at **Exhibit B.**

## JURISDICTION AND VENUE

6.      This Court has personal jurisdiction over the Defendants at least under the Utah Long Arm Statute as codified in §§ 78-27-22 and 78-27-24 of the Utah Code Annotated.

7.      Venue is appropriate in the Third Judicial District and Salt Lake County pursuant to Utah Code Annotated §78-13-7 in that the Plaintiff, 1-800 CONTACTS has its principal place of business in the State of Utah and is being harmed in this District.

## GENERAL ALLEGATIONS

8.      For over a decade, 1-800 CONTACTS  has been and continues to be extensively engaged in the business of selling and distributing contact lenses and eye care products via telephone and fax, through the Internet and by mail.  Indeed, 1-800 CONTACTS is the market leader in the field of replacement contact lenses, having filled over 16 million orders for over five million customers, with an inventory of over 20 million lenses.  1-800 CONTACTS' products can be ordered over the Internet via Plaintiff's website at www.1800contacts.com (the "1-800 CONTACTS Website").

9.      On information and belief, Vision Direct also has been and is now engaged in the business of selling and distributing contact lenses and eye care products via telephone and fax, through the Internet and by mail, including in this District.

3

10.    On information and belief, Drugstore.com also has been and is now engaged in the business of selling and distributing contact lenses and eye care products (among other products) via the Internet and by mail, including in this District.

11.    Internet search engine providers, such as Google, MSN, Yahoo!, and the like, generally return lists of links to websites in response to users' online searching. The results of such searching are commonly referred to as the organic search results. Further, many Internet search engine providers include paid advertisements in addition to the organic search results. Such paid advertisements are generated by keywords and appear, at least on Google, in the "Sponsored Links" section above or to the right of the organic search results.

12.    To promote its business, 1-800 CONTACTS purchases advertisements with various Internet search engines, such as Google, MSN, Yahoo!, and the like. When purchasing such advertisements, 1-800 CONTACTS generally identifies one or more keywords that may be included in users' search queries, and specifies that its advertisements should be associated with such keywords. For example, 1-800 CONTACTS could specify that one of its advertisements should be presented to a user when the user has specified a keyword such as "1800 contacts."

13.    Further, 1-800 CONTACTS (and the Defendants) may, when purchasing advertisements through search engines, specify so-called "negative keywords," i.e., keywords with which an advertisement purchased by 1-800 CONTACTS (or the Defendants) should NOT be associated. In specifying negative keywords, 1-800 CONTACTS ensures that its own advertising is not displayed when users type in certain keywords.

14.    On information and belief, the Defendants also purchase advertisements with various
Internet search engines, and specifies keywords and negative keywords when purchasing such
advertisements.

15.    Accordingly, as illustrated below in Figure 1, a user using the Google search engine
and searching for the term "contacts" may see advertisements for both 1-800 CONTACTS and Vision
Direct and/or Drugstore.com.  In addition, beneath the paid advertisements, Figure 1 illustrates search
results returned by the Google search engine on November 19, 2007, in response to the query for
"contacts," including a link to www.1800contacts.com.



**Figure 1.**

## The Prior Action

16.    On October 9, 2002, 1-800 CONTACTS filed the Prior Action, naming Vision Direct
as one of the defendants.  In the Prior Action, 1-800 CONTACTS brought causes of action against

5

Vision Direct alleging federal trademark infringement, unfair competition under the Lanham Act, common law unfair competition, false designation of origin, dilution under the Lanham Act, dilution under New York state law, cybersquatting in violation of the Lanham Act, copyright infringement, contributory copyright infringement, and tortious interference with prospective economic advantage.

17.    Among other things, 1-800 CONTACTS' complaint in the Prior Action, attached hereto as **Exhibit C**, alleged that Vision Direct participated in a scheme to profit from and/or damage 1-800 CONTACTS' trademarks and copyrights through bad faith use of Internet domain names and Internet advertising.

18.    On December 22, 2003, this Court entered a Preliminary Injunction against Vision Direct.

19.    On June 24, 2004, 1-800 CONTACTS and Vision Direct entered into the Settlement Agreement. Paragraph 4 of the Settlement Agreement defined several "Prohibited Acts," including:

> d.    causing a Party's website or Internet advertisement to appear in response to any Internet search for the other Party's brand name, trademarks or URLs; [and]

> e.    causing a Party's brand name, or link to the Party's Restricted Websites to appear as a listing in the search results page of an Internet search engine, when a user specifically searches for the other Party's brand name, trademarks, or URLs[.]

20.    By entering into the Settlement Agreement, Vision Direct and its parent, Drugstore.com, agreed to comply with the Prohibited Acts section of the Settlement Agreement. Based on this agreement, upon a Stipulation by 1-800 CONTACTS and Vision Direct, the Prior Action against Vision Direct was dismissed with prejudice on July 22, 2004.

## Implementation of the Settlement Agreement

21.     Paragraph 4(B) of the Settlement Agreement expressly allows "the purchase by either Party of the key words that are generic words such as 'contacts.'"  Therefore, search results such as those shown in Figure 1 above are permitted under the Settlement Agreement.

22.     However, the Settlement Agreement, as noted above, expressly prohibits Vision Direct and "its parent," Drugstore.com, from causing advertisements for Vision Direct to appear when an Internet search user searches for the brand name of 1-800 CONTACTS.  Despite this prohibition in the Settlement Agreement, at least as of November 19, 2007, the Defendants were violating the Settlement Agreement.  For example, as seen below in Figure 2, a Google search for "1800 contacts" resulted in a paid advertisement for Vision Direct.



**Figure 2**

23.     Further, 1-800 CONTACTS.com and the Defendants implemented negative keywords when purchasing Internet advertising to comply with the requirements of the Settlement Agreement so

as not to cause "a Party's website or Internet advertisement to appear in response to any Internet search for the other Party's brand name, trademarks or URLs," or to cause "a Party's brand name, or link to the Party's Restricted Websites to appear as a listing in the search results page of an Internet search engine, when a user specifically searches for the other Party's brand name, trademarks, or URLs." For example, in an e-mail dated January 25, 2005 (attached hereto as **Exhibit D**), Eric Duerr of Drugstore.com identified to 1-800 Contact thirty-nine (39) "negative keywords I have assigned to all Vision Direct campaigns, based on our communications." Other examples of the Defendants' course of conduct of using negative keywords are attached hereto as **Exhibits E and F.**

24.     Indeed, as evidenced by the course of conduct illustrated in Exhibits D-F, for example, until sometime just before July 13, 2007, both 1-800 CONTACTS and the Defendants clearly understood that the Settlement Agreement required use of negative keywords.

25.     However, without cause or justification, and in spite of the established course of conduct implemented by the Parties, the Defendants recently informed 1-800 CONTACTS that they were no longer going to use negative keywords to prevent the appearance of Vision Direct advertisements in direct violation of the Settlement Agreement.

26.     In fact, is the Defendants are violating the Settlement Agreement by purchasing advertisements without utilizing negative keywords to prevent the appearance of Vision Direct advertisements when users search for 1-800 CONTACTS' brand name.  Consequently, the Defendants are failing to "not cause any other entity [i.e. Google]" to engage in a prohibited act, namely "causing a party's brand name ... to appear as a listing in the search results page of an Internet search engine,

8

when the user specifically searches for the other party's brand name. For example, as shown in Figure 3 below, a Google search for "1800contacts" on November 19, 2007 yielded results including an advertisement for Vision Direct.



**Figure 3**

## COUNT I

### Breach of Contract

27.    1-800 CONTACTS incorporates by reference the allegations of Paragraphs 1-26 of this Complaint.

28.    The Settlement Agreement is a duly executed, valid, enforceable contract that is binding on 1-800 CONTACTS, Vision Direct, and "its parent," Drugstore.com.

29.    Vision Direct and Drugstore.com have breached and are continuing to breach the Settlement Agreement by committing "Prohibited Acts" as defined therein, including at least "causing [Vision Direct's] website or Internet advertisement to appear in response to any Internet search for [1-

800 CONTACTS] brand name, trademarks or URLs," and "causing [Vision Direct's] brand name, or link to [Vision Direct's] Restricted Websites to appear as a listing in the search results page of an Internet search engine, when a user specifically searches for [1-800 CONTACTS] brand name, trademarks, or URLs."

30.    The Defendants refuse to cure the foregoing breaches of contract.

31.    The Defendants breaches of the Settlement Agreement have caused and are causing 1-800 CONTACTS to suffer monetary and other harm.

## COUNT II

### Declaratory Relief

32.    1-800 CONTACTS incorporates by reference the allegations of Paragraphs 1-31 of this Complaint.

33.    Vision Direct and "its parent", Drugstore.com, entered into a Settlement Agreement with 1-800 CONTACTS in which the Defendants agreed to refrain from certain acts. Under the express terms of the Settlement Agreement, Vision Direct and Drugstore.com undertook a duty to prevent "causing a Party's website or Internet advertisement to appear in response to any Internet search for the other Party's brand name, trademarks or URLs," and "causing a Party's brand name, or link to the Party's Restricted Websites to appear as a listing in the search results page of an Internet search engine, when a user specifically searches for the other Party's brand name, trademarks, or URLs."

34.    The Defendants have breached its duty under the Agreement by refusing to prevent Vision Direct's "brand name, or link to [Vision Direct's] Restricted Websites to appear as a listing in

the search result page of an Internet search engine, when a user specifically searches for I-800 CONTACTS'] brand name, trademarks, or URLs" since on or about July 13, 2007.

35.    There is a controversy between 1-800 CONTACTS and the Defendants' obligation to employ negative keywords to comply with the Settlement Agreement for which this Court can provide declaratory relief.

## DEMAND FOR RELIEF

WHEREFORE, 1-800 CONTACTS requests that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief including, but not limited to, the following:

A.    That Defendants be required to pay to 1-800 CONTACTS' damages according to proof, together with prejudgment interest thereon, as 1-800 CONTACTS has sustained as a consequence of Defendants' wrongful acts, and to account for and return to 1-800 CONTACTS any monies, profits and advantages wrongfully gained by Defendants.

B.    That Defendants be required to pay to 1-800 CONTACTS punitive and exemplary damages.

C.    That Defendants be required to pay to 1-800 CONTACTS all attorney fees, expenses and costs incurred in this action.

D.    That Defendants be permanently enjoined from violating the Settlement Agreement, including failure to use negative keywords as necessary to avoid the Prohibited Acts set forth in the Settlement Agreement.

E.    That an Order be issued directing Defendants to file with this Court and serve on 1-800 CONTACTS' attorneys, within thirty (30) days after the date of entry of any injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

F.    That 1-800 CONTACTS be granted such further relief as this Court may deem appropriate.

## DEMAND FOR JURY TRIAL

1-800 CONTACTS hereby demands a trial by jury on all issues and claims so triable.

Respectfully submitted,

Date: ~~Dec. 28, 2007~~

By: _____
Bryan G. Pratt (Bar No. 09924)
RADER, FISHMAN & GRAUER, PLLC
10653 South River Parkway, Suite 150
South Jordan, UT 84095
Tel.: (801) 572-0185
Fax: (801) 572-7666

R. Terrance Rader
Kristin L. Murphy
Charles A. Bieneman
RADER, FISHMAN & GRAUER, PLLC
35933 Woodward Avenue, Suite 140
Bloomfield Hills, Michigan 48304
Telephone: (248) 594-0600
Facsimile: (248) 594-0610

*Attorneys for Plaintiff*

# EXHIBIT C

FILED
THIRD DISTRICT COURT

2008 FEB 21  PM 3: 24

SALT LAKE COUNTY

BY _____
                    DEPUTY CLERK

Bryan G. Pratt (Bar No. 09924)
RADER, FISHMAN & GRAUER, PLLC
10653 South River Parkway, Suite 150
South Jordan, UT 84095
Tel.: (801) 572-0185
Fax: (801) 572-7666

R. Terrance Rader
Kristin L. Murphy
Charles A. Bieneman
RADER, FISHMAN & GRAUER, PLLC
35933 Woodward Avenue, Suite 140
Bloomfield Hills, Michigan 48304
Tel.: (248) 594-0600
Fax: (248) 594-0610

*Attorneys for Plaintiff*

## IN THE THIRD JUDICIAL DISTRICT COURT OF
## SALT LAKE COUNTY

### STATE OF UTAH

| | |
|---|---|
| 1-800 CONTACTS, INC.,<br>a Delaware corporation,<br><br>    Plaintiff,<br>v.<br><br>DRUGSTORE.COM<br>a Delaware corporation,<br>and<br>VISION DIRECT, INC.,<br>a Texas corporation,<br><br>    Defendants. | Case No.  070918271<br><br>Hon. Robert Faust<br><br><br>**NOTICE & STIPULATION OF<br>DISMISSAL WITHOUT PREJUDICE<br>PURSUANT TO UTAH RULE 41(a)(1)** |

1

Plaintiff, 1-800 Contacts, Inc., and Defendants, Drugstore.com and Vision Direct, Inc., by and through their respective counsel of record, hereby stipulate as follows:

That Plaintiff's claims against Defendants Drugstore.com and Vision Direct, Inc. are to be dismissed without prejudice in accordance with Utah Rule 41(a)(1), with all parties to bear their own costs and attorney fees.

Respectfully submitted,

Date: February 20, 2008        By: _Bryan G. Pratt_

Bryan G. Pratt (9924)
RADER, FISHMAN & GRAUER, PLLC
10653 South River Parkway, Suite150
South Jordan, UT  84095
Tel.:  (801) 572-0185
Fax:  (801) 572-7666

R. Terrance Rader
Kristin L. Murphy
Charles A. Bieneman
RADER, FISHMAN & GRAUER, PLLC
35933 Woodward Avenue, Suite 140
Bloomfield Hills, Michigan 48304
Tel.: (248) 594-0600
Fax: (248) 594-0610

*Attorneys for Plaintiff*

Dated: February 20, 2008        By: _Mark Bettilyon_

Mark M. Bettilyon (4798)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
Salt Lake City, Utah 84111

*Attorneys for Defendants*

## ORDER

IT IS HEREBY ORDERED THAT this action shall be, and hereby is, dismissed without prejudice, with all parties to bear their own costs and attorney fees.

**SO ORDERED:**

this _____ day of _____, 2008.

_____

Hon. Robert Faust

3

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **NOTICE &**

**STIPULATION OF DISMISSAL WITHOUT PREJUDICE PURSUANT TO UTAH**

**RULE 41(a)(1)** was served via U.S. Mail, postage prepaid, on this ＿ day of February, 2008,

to the following:

Bryan G. Pratt
RADER, FISHMAN & GRAUER, PLLC
10653 South River Parkway, Suite 150
South Jordan, UT 84095

R. Terrance Rader
Kristin L. Murphy
Charles A. Bieneman
RADER, FISHMAN & GRAUER, PLLC
35933 Woodward Avenue, Suite 140
Bloomfield Hills, MI 48304

967636



Bryan G. Pratt (Bar No. 09942)
RADER, FISHMAN & GRAUER, PLLC
10653 South River Parkway, Suite 150
South Jordan, UT 84095
Tel.: (801) 572-0185
Fax: (801) 572-7666

R. Terrance Rader
Kristin L. Murphy
Charles A. Bieneman
RADER, FISHMAN & GRAUER, PLLC
35933 Woodward Avenue, Suite 140
Bloomfield Hills, MI 48304
Tel.: (248) 594-0600
Fax: (248) 594-0610

*Attorneys for Plaintiff*

**FILED DISTRICT COURT**
**Third Judicial District**

MAR 17 2008

SALT LAKE COUNTY
By _____
Deputy Clerk

---

IN THE THIRD JUDICIAL DISTRICT COURT
SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| 1-800 CONTACTS, INC., a Delaware corporation<br><br>Plaintiff,<br><br>v.<br><br>DRUGSTORE.COM, a Delaware corporation, and VISION DIRECT, INC., a Texas corporation,<br><br>Defendants. | **ORDER OF DISMISSAL WITHOUT PREJUDICE PURSUANT TO UTAH RULE 41(a)(1)**<br><br>Civil No. 070918271<br><br>Judge Robert Faust |

IT IS HEREBY ORDERED THAT this action shall be, and hereby is, dismissed without

prejudice, with all parties to bear their own costs and attorney fees.

**SO ORDERED:**

this ___17___ day of ___March___ , 2008.

Hon. Robert Faust

2

# EXHIBIT D

FILED
U.S. DISTRICT COURT

2008 FEB 26  P 4: 18

DISTRICT OF UTAH

BY:_____
      DEPUTY CLERK

David J. Steele
Gary Dukarich
CHRISTIE, PARKER & HALE, LLP
3501 Jamboree Road, Suite 6000-North Tower
Newport Beach, CA 92660
Telephone: (949) 476-0757
Facsimile: (949) 476-8640
david.steele@cph.com
gary.dukarich@cph.com
(*pro hac vice* admission being sought)

Howard A. Kroll
CHRISTIE, PARKER & HALE, LLP
350 W. Colorado Boulevard, Suite 500
Pasadena, CA 91105
Telephone: (626) 795-9900
Facsimile: (626) 577-8800
howard.kroll@cph.com
(*pro hac vice* admission being sought)

Paxton R. Guymon (#8188)
Craig H. Howe (#7552)
Lauren Y. Parry (#11420)
MILLER GUYMON, P.C.
165 Regent Street
Salt Lake City, UT 84111
Telephone: (801) 363-5600
Facsimile: (801) 363-5601
guymon@millerguymon.com
howe@millerguymon.com
parry@millerguymon.com

Attorneys for Plaintiff
1-800 Contacts, Inc.

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| 1-800 CONTACTS, INC.,<br>a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DRUGSTORE.COM, INC.,<br>a Delaware corporation, and | Case: 2:08cv00157<br>Assigned To : Campbell, Tena<br>Assign. Date : 2/26/2008<br>Description: 1800 Contacts v.<br>Drugstore.com<br><br>**COMPLAINT AND<br>JURY DEMAND** |

| VISION DIRECT INC.,<br>a Texas corporation,<br><br>       Defendants. | |

Plaintiff 1-800 Contacts, Inc. ("1-800 Contacts" or "Plaintiff") for its Complaint against Defendants Vision Direct, Inc. ("Vision Direct") and Drugstore.com, Inc. ("Drugstore.com"), alleges as follows:

### NATURE OF ACTION

1.      This is a civil action for direct and contributory trademark infringement and false designation of origin under 15 U.S.C. Sections 1114(1) & 1125(a) and Utah common law; unfair competition under Utah Code Ann. Section 13-5a-103 and Utah common law; direct and contributory dilution under 15 U.S.C. Section 1125(c) and Utah Code Ann. Section 70-3a-403; deceptive trade practices under Utah Code Ann. Section 13-11a-4; intentional interference with economic relations under Utah common law; and unjust enrichment under Utah common law. This Action seeks actual, enhanced and punitive damages, accounting, restitution and disgorgement, corrective advertising, and injunctive relief, stemming from Defendants' abuse of Plaintiff's federally registered and common law trademarks and service marks, Defendants' diversion of customers away from commerce with Plaintiff, and Drugstore.com's inducement of Vision Direct to breach contractual obligations Vision Direct owed and owes to Plaintiff.

### THE PARTIES

2.      Plaintiff 1-800 Contacts, Inc. is a Delaware corporation with a principal place of business at 66 East Wadsworth Park Drive, Draper, Utah 84020.

3.    Plaintiff is informed and believes, and thereon alleges that Defendant Drugstore.com, Inc is a Delaware corporation with a principal place of business at 411 108th Ave NE, Suite 1400, Bellevue, Washington 98004.

4.    Plaintiff is informed and believes, and thereon alleges that Defendant Vision Direct, Inc. is a Texas corporation with a principal place of business at 411 108th Avenue NE, Suite 1400, Bellevue, Washington 98004.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction pursuant to 15 U.S.C. Section 1121(a) and 28 U.S.C. Sections 1331 and 1338(a) & (b), due to the particular federal questions presented by this case. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. Section 1367 because these claims are so related to the federal claims brought herein as to form part of the same case or controversy.

6.    This Court may assert personal jurisdiction over Defendants consonant with Due Process by virtue of the long arm statute of the State of Utah, Utah Code Ann. Sections 78-27-22 through 78-27-28.

7.    Venue is proper in this District and this Division under 28 U.S.C. Section 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated in this District and this Division, in that Plaintiff 1-800 Contacts has its principal place of business in this District and Division and is being harmed in this District and Division, and Defendants' wrongful acts are occurring in this District and Division as well as elsewhere.

3

## PLAINTIFF'S TRADEMARKS AND BUSINESS

8.    Plaintiff 1-800 Contacts has been and is now engaged in the business of selling and distributing contact lenses and eye care products via the Internet, mail, telephone and fax.

9.    Plaintiff is recognized as the leading distributor of contact lenses, with sales growing from $3.6 million in 1996 to $169 million in 2001 to in excess of $200 million in 2007.

10.    Plaintiff is the owner of United States service mark registration No. 2,675,866 for the word mark 1800CONTACTS, for use with "mail order and telephone order services in the field of contact lenses and related products, and electronic retailing services via computer featuring contact lenses and related products." This registration is valid and existing on the Principal Register of the United States Patent and Trademark Office ("USPTO"), and has become incontestable. A true and correct copy of the USPTO record of this registration is attached hereto as Exhibit A.

11.    Plaintiff is the owner of United States service mark registration No. 1,462,371 for the word mark LENS EXPRESS, for use with "retail store and mail order services in the field of contact lenses." This registration is valid and existing on the Principal Register of the United States Patent and Trademark Office ("USPTO"), and has become incontestable. A true and correct copy of the USPTO record of this registration is attached hereto as Exhibit B.

12.    Plaintiff is the owner of United States service mark registration No. 2,731,114 for the mark 1800 CONTACTS and design (collectively with the mark in the two immediately foregoing paragraphs, the "Registered Marks"), for use with "mail order and telephone order services in the field of contact lenses and related products, and electronic retailing services via

4

computer featuring contact lenses and related products." This registration is valid and existing on the Principal Register of the USPTO. A true and correct copy of the USPTO record of this registration is attached hereto as Exhibit C.

13.    Plaintiff has continuously promoted and advertised one or more of the Registered Marks in interstate commerce in the United States and throughout the world since at least as early as July 1995. Plaintiff has spent significant sums in such promotion and advertising since that time. In 2007 alone, Plaintiff spent in excess of twenty million dollars on marketing.

14.    In 2007, there were in excess of $200 million worth of retail transactions under the Registered Marks and Plaintiff's other trademarks and service marks.

15.    Through Plaintiff's actions, and because of widespread and favorable public acceptance and recognition, the Registered Marks and Plaintiff's other trademarks and service marks have become uniquely associated with, and hence identify, Plaintiff. The Registered Marks and Plaintiff's other trademarks and service marks are assets of significant value as a symbol of Plaintiff, its services, and its business goodwill.

16.    The Registered Marks are inherently distinctive and have acquired secondary meaning.

17.    The Registered Marks are famous marks.

18.    As part of its business, Plaintiff has established and operates a website at *www.1800contacts.com* for purposes of advertising and selling contact lenses and related products. Plaintiff prominently displays the Registered Marks on its website.

19.    Plaintiff derives a substantial portion of its sales from Internet sales. As a result of extensive website design and marketing efforts, millions of customers have developed strong

5

relationships with Plaintiff and return to the *www.1800contacts.com* website repeatedly to purchase their contact lenses and related products.

## DEFENDANTS' BUSINESS

20.     Defendant Drugstore.com, by itself or through one or more of its subsidiaries, has been and is now engaged in the business of selling and distributing contact lenses and eye care products, among other products, via the Internet, mail, telephone and fax, including in this District, and is a competitor of Plaintiff.

21.     Defendant Vision Direct, by itself or through one or more of its affiliates, has been and is now engaged in the business of selling and distributing contact lenses and eye care products via the Internet, mail, telephone and fax, including in this District, and is a competitor of Plaintiff.

22.     Vision Direct was acquired by Drugstore.com in December 2003, and is now a wholly owned subsidiary of Drugstore.com, either directly or through intermediate corporate entities.

## INTERNET SEARCHING AND KEYWORD ADVERTISING

23.     An Internet user desiring to find information on the Internet, including information on potential vendors of products that the user may desire, may use the services of one or more Internet "search engine" providers, such as Google, MSN, or Yahoo. Upon the user entering into a search engine provider's webpage certain words or phrases, known as "search terms," representing the information that the user desires to search for, the search engine offered by any of these providers will return a list of "links" to other websites corresponding to the

words or phrases entered. This list of websites returned on the basis of similarity or correspondence to the search terms are commonly referred to as the "organic search results."

24.     Beyond the organic search results, however, many Internet search engine providers also simultaneously present to the user paid advertisements which are also keyed to the search terms the user entered. The Google search engine, for instance, returns these paid advertisements in a section of the webpage entitled "Sponsored Links," located above or to the right of the organic search results.

25.     When purchasing advertisements with a search engine provider, an advertiser generally identifies one or more "keywords," which are words or phrases that, if entered by a user as a search term, will cause that advertiser's paid advertisement to be returned to that user. For example, either of the parties here might specify that one of its advertisements should be presented to a user if the user has entered as a search term the phrase, "contact lens."

26.     An advertiser can specify its trademark as a search engine advertising keyword. Unfortunately, many search engine providers allow a *competitor's* trademark to be specified as a keyword, thus presenting a company's advertisement to a user who may have been seeking a competitor's product.

27.     When purchasing advertisements with a search engine provider, an advertiser may also specify so-called "negative keywords," which are words or phrases that, if entered by a user as a search term, will cause that advertiser's advertisement *not* to be presented to that user.

28.     Defendants have purchased and currently purchase advertisements with various Internet search engine providers, and when purchasing such advertisements have specified and specify keywords and, at least for some period of time, have also specified negative keywords.

## THE PRIOR ACTION AND THE SETTLEMENT AGREEMENT

29.    On October 9, 2002, 1-800 Contacts filed an action (the "Prior Action") in the Federal District Court for the Southern District of New York, Case No. 02 CV 8043, naming two defendants, including Vision Direct. The Prior Action included causes of action against Vision Direct for federal trademark infringement, unfair competition under the Lanham Act, common law unfair competition, false designation of origin, dilution under the Lanham Act, dilution under New York state law, cybersquatting in violation of the Lanham Act, copyright infringement, contributory copyright infringement, and tortious interference with prospective economic advantage, with allegations that Vision Direct participated in a scheme to profit from and damage 1-800 Contact's trademarks and copyrights through bad faith use of Internet domain names and Internet advertising.

30.    On June 24, 2004, 1-800 Contacts and Vision Direct entered into a settlement agreement (the "Settlement Agreement") that led to dismissal of the Prior Action with prejudice on July 22, 2004. A true and correct copy of the Settlement Agreement is attached hereto as Exhibit D. Although Vision Direct had by that time been acquired by Drugstore.com, Drugstore.com was not a party to the Settlement Agreement.

31.    In entering into the Settlement Agreement, Vision Direct agreed to refrain from committing any of certain acts defined as "Prohibited Acts" by the Settlement Agreement. Section 4 of the Settlement Agreement includes as Prohibited Acts:

> d.    causing a Party's website or Internet advertisement to appear in response to any Internet search for the other Party's brand name, trademarks or URLs;

> e.    causing a Party's brand name, or link to the Party's Restricted Websites to appear as a listing in the search results page of an Internet

8

search engine, when a user specifically searches for the other Party's brand name, trademarks, or URLs;

* * *

i.    using the other Party's trademark or brand name to redirect users from the other Party's Restricted Websites . . . .

## VIOLATION OF THE SETTLEMENT AGREEMENT

32.    While the Settlement Agreement allows its parties to specify as Internet search engine keywords generic words such as "contacts," it expressly prohibits Vision Direct from causing advertisements for Vision Direct to appear when an Internet search user searches for Plaintiff's brand names or trademarks, such as the phrases constituting the Registered Marks, 1800CONTACTS and 1800 CONTACTS, or Plaintiff's trade name of 1-800 CONTACTS.

33.    Plaintiff is informed and believes, and thereon alleges that at some time following Drugstore.com's acquisition of Vision Direct, Drugstore.com took over all direct operational control and activities of Vision Direct, including the placement of Internet search engine advertising and the specification of keywords and negative keywords.

34.    For a period of time following execution of the Settlement Agreement, paid advertisements for Vision Direct did not appear in Internet search engine results when phrases constituting the Registered Marks were entered as search terms. Plaintiff is informed and believes, and thereon alleges that during this period Defendant Drugstore.com and/or Vision Direct achieved this outcome by specifying negative keywords when purchasing Internet search engine advertising, and were thus able to comply with the prohibitions of the Settlement Agreement.

35.    Without cause or justification, and in spite of the previous course of conduct, Defendants began, no later than July 27, 2007, to cause paid advertisements for Vision Direct to

9

appear in Internet search engine results when phrases constituting the Registered Marks were entered as search terms. Plaintiff is informed and believes, and thereon alleges that Defendants caused this outcome by ceasing to specify negative keywords when purchasing Internet search engine advertising.

36.      On July 27, 2007, Plaintiff sent to Defendants a written notice of the breach of the Settlement Agreement and demand to cure; however, Defendants failed to cure the breach or to prevent paid advertisements for Vision Direct from appearing in Internet search engine results when phrases constituting the Registered Marks were entered as search terms. On October 12, 2007, Plaintiff's attorneys sent another notice of breach and demand to cure to Defendants. A true and correct copy of Plaintiff's October 12, 2007 written demand, which attaches Plaintiff's prior July 27, 2007 written demand, is attached hereto as Exhibit E. Defendants have in response affirmatively and explicitly refused to cure the breach or to prevent paid advertisements for Vision Direct from appearing in Internet search engine results when phrases constituting the Registered Marks are entered as search terms.

37.      Defendants have placed and are placing with search engine providers paid advertisements for Vision Direct that appear in Internet search engine results when phrases constituting the Registered Marks are entered as search terms, in violation of Vision Direct's obligations under the Settlement Agreement. Exhibit F attached hereto comprises true and correct printouts of the results of searches performed on the Google search engine on February 23, 2008, using the Registered Marks or variants thereof as search terms, which, as indicated by the portions circled in red, each returned a paid advertisement for Vision Direct, indicating a breach of the Settlement Agreement.

38.     Vision Direct's breach of the Settlement Agreement was influenced, induced, procured, caused, performed, and effected, in whole or in part, by Drugstore.com.

## HARM TO PLAINTIFF

39.     Plaintiff has not released or excused Vision Direct from Vision Direct's obligations to Plaintiff under the Settlement Agreement.

40.     Plaintiff has not given Defendants license or permission to use the Registered Marks or any other of Plaintiff's trademarks or service marks to promote Defendants' business or to divert customers from Plaintiff.

41.     Defendants knew or should have known of Plaintiff's rights in the Registered Marks and Plaintiff's other trademarks and service marks.

42.     The use by Defendants of Plaintiff's famous Registered Marks to drive customer traffic away from Plaintiff's website and to the Vision Direct website reduces the ability of Plaintiff's famous Registered Marks to distinguish Plaintiff's services and identify Plaintiff as the source of those services.

43.     The use by Defendants of Plaintiff's Registered Marks to drive customer traffic away from Plaintiff's website and to the Vision Direct website is likely to confuse and deceive Plaintiff's current customers, potential customers, and the general public as to the origin and sponsorship of Defendants' services and/or Plaintiff's services, and trades upon the business goodwill and substantial customer recognition in Plaintiff's favor associated with the Registered Marks.

44.     Confusion regarding Defendants' implied affiliation with Plaintiff has damaged and will continue to damage Plaintiff's reputation and customer relationships.

11

45.    Defendants' actions steal customers from Plaintiff, erode the effectiveness of Plaintiff's Internet sales and marketing operations, and disrupt Plaintiff's business. If left unchecked, Defendants' actions may imperil the economic validity of Plaintiff's business.

46.    Plaintiff is informed and believes, and thereon alleges that Defendants acted willfully and maliciously and with the intent fraudulently to infringe upon Plaintiff's Registered Marks and to damage Plaintiff, with knowing and reckless indifference toward and disregard of Plaintiff's rights.

47.    Defendants' actions have caused damage and irreparable injury to Plaintiff, and further damage and irreparable injury will result if Defendants are allowed to continue to violate Plaintiff's rights.

48.    Plaintiff has no adequate remedy at law against Defendants' actions in violation of Plaintiff's rights.

### **FIRST CLAIM FOR RELIEF**
#### **(against all Defendants)**
#### **Direct Infringement of Federally Registered Service Marks**

49.    Plaintiff hereby repeats and realleges paragraphs 1 through 48 hereinabove as though fully set forth herein.

50.    Plaintiff is the registrant on the USPTO Principal Register of the Registered Marks.

51.    Plaintiff's Registered Marks are valid and inherently distinctive, and are further presumed to be valid, distinctive, and the property of Plaintiff due to their registration on the USPTO Principal Register.

52.     Defendants have used in commerce a reproduction, counterfeit, copy. or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

53.     Defendants' use described immediately above was without the consent of the registrant.

54.     Plaintiff is informed and believes, and thereon alleges that Defendants' above-described acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

55.     Plaintiff is informed and believes, and thereon alleges that Defendants did and continue to intentionally use such reproduction, counterfeit, copy, or colorable imitation of a registered mark with complete and conscious disregard of Plaintiff's rights and with the intent to trade on the business goodwill Plaintiff has created.

56.     Defendants' above-described acts constitute infringement of a registered service mark under 15 U.S.C. Section 1114(1), in that Defendants have used a reproduction, counterfeit, copy, or colorable imitation of a registered mark, in this District and elsewhere, alone or in combination with other words and other items, in connection with their services which are likely to cause confusion or mistake or to deceive the public that those services are authorized, sponsored by, or affiliated with Plaintiff, and such services have entered into commerce which may be regulated by Congress.

57.    Plaintiff and its business goodwill have been damaged and are likely to be damaged in the future by Defendants' service mark infringement, by reason of the likelihood that current and prospective consumers of Plaintiff's services will be confused as to the source, sponsorship, or affiliation of Plaintiff's services and/or Defendants' services.

58.    Defendants have unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

59.    By reason of Defendants' acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Defendants' conduct is permanently enjoined.

60.    This is an exceptional case within the meaning of 15 U.S.C. Section 1117(a).

### SECOND CLAIM FOR RELIEF

### (against Drugstore.com)

### Contributory Infringement of Federally Registered Service Marks

61.    Plaintiff hereby repeats and realleges paragraphs 1 through 60 hereinabove as though fully set forth herein.

62.    Plaintiff is the registrant on the USPTO Principal Register of the Registered Marks.

63.    Plaintiff's Registered Marks are valid and inherently distinctive, and are further presumed to be valid, distinctive, and the property of Plaintiff due to their registration on the Principal Register of the USPTO.

64.    Drugstore.com has intentionally induced Vision Direct to use in commerce a reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the

sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

65.    The use described immediately above was without the consent of the registrant.

66.    Plaintiff is informed and believes, and thereon alleges that Drugstore.com's above-described acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

67.    Plaintiff is informed and believes, and thereon alleges that Drugstore.com did and continues to intentionally and with complete and conscious disregard of Plaintiff's rights and with the intent to trade on the business goodwill Plaintiff has created, induce Vision Direct to infringe Plaintiff's Registered Marks.

68.    Drugstore.com's above-described acts constitute contributory infringement of a registered service mark under 15 U.S.C. Section 1114(1), in that Drugstore.com has intentionally induced the use by another of a reproduction, counterfeit, copy, or colorable imitation of a registered mark, in this District and elsewhere, alone or in combination with other words and other items, in connection with such other's services which are likely to cause confusion or mistake or to deceive the public that such other's services are authorized, sponsored by, or affiliated with Plaintiff, and such services have entered into commerce which may be regulated by Congress.

69.    Plaintiff and its business goodwill have been damaged and are likely to be damaged in the future by Drugstore.com's contributory service mark infringement, by reason of the likelihood that current and prospective consumers of Plaintiff's services will be confused as to the source, sponsorship, or affiliation of Plaintiff's services and/or Defendants' services.

15

70.    Drugstore.com has unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

71.    By reason of Drugstore.com's acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Drugstore.com's conduct is permanently enjoined.

72.    This is an exceptional case within the meaning of 15 U.S.C. Section 1117(a).

### THIRD CLAIM FOR RELIEF
### (against all Defendants)
### Federal Direct Infringement of All Trademarks and Service Marks

73.    Plaintiff hereby repeats and realleges paragraphs 1 through 72 hereinabove as though fully set forth herein.

74.    Plaintiff owns valid common law and federally registered trademarks and service marks entitled to protection under the Lanham Act.

75.    Defendants in connection with goods and services have used in commerce words, terms, names, symbols, or devices, in this District and elsewhere, alone or in combination with other words and other items, that are likely to cause confusion, cause mistake, and deceive that the goods, services, or commercial activities of Defendants originate from, are sponsored by, or are approved by Plaintiff.

76.    Plaintiff is informed and believes, and thereon alleges that Defendants continue intentionally to make such use of such words, terms, names, symbols, or devices with complete and conscious disregard of Plaintiff's rights and with the intent to trade on the business goodwill Plaintiff has created.

77.    Defendants' above-described acts constitute infringement of Plaintiff's trademarks and service marks under 15 U.S.C. Section 1125(a), in that Defendants have used words, terms, names, symbols, or devices in connection with Defendants' goods and services which are likely to cause confusion or mistake or to deceive the public that such goods and services are authorized, sponsored by, or affiliated with Plaintiff, and such goods and services have entered into commerce which may be regulated by Congress.

78.    Plaintiff and its business goodwill have been damaged and are likely to be damaged in the future by Defendants' trademark and service mark infringement, by reason of the likelihood that current and prospective consumers of Plaintiff's goods and services will be confused as to the source, sponsorship, or affiliation of Plaintiff's goods and services and/or Defendants' goods and services.

79.    Defendants have unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

80.    By reason of Defendants' acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Defendants' conduct is permanently enjoined.

81.    This is an exceptional case within the meaning of 15 U.S.C. Section 1117(a).

## **FOURTH CLAIM FOR RELIEF**

### **(against Drugstore.com)**

### **Federal Contributory Infringement of All Trademarks and Service Marks**

82.    Plaintiff hereby repeats and realleges paragraphs 1 through 81 hereinabove as though fully set forth herein.

83.    Plaintiff owns valid common law and federally registered trademarks and service marks entitled to protection under the Lanham Act.

84.    Vision Direct in connection with goods and services has used in commerce words, terms, names, symbols, or devices, in this District and elsewhere, alone or in combination with other words and other items, that are likely to cause confusion, cause mistake, and deceive that the goods, services, or commercial activities of Vision Direct originate from, are sponsored by, or are approved by Plaintiff.

85.    Plaintiff is informed and believes, and thereon alleges that Drugstore.com continues intentionally and with complete and conscious disregard of Plaintiff's rights and with the intent to trade on the business goodwill Plaintiff has created, to cause Vision Direct to make such use of such words, terms, names, symbols, or devices, therefore intentionally inducing Vision Direct to infringe Plaintiff's trademarks and service marks.

86.    Drugstore.com's above-described acts constitute contributory infringement of Plaintiff's trademarks and service marks under 15 U.S.C. Section 1125(a), in that Drugstore.com has intentionally induced the use by another of words, terms, names, symbols, or devices in connection with Defendants' goods and services which are likely to cause confusion or mistake or to deceive the public that such goods and services are authorized, sponsored by, or affiliated

18

with Plaintiff, and such goods and services have entered into commerce which may be regulated by Congress.

87.     Plaintiff and its business goodwill have been damaged and are likely to be damaged in the future by Drugstore.com's contributory trademark and service mark infringement, by reason of the likelihood that current and prospective consumers of Plaintiff's goods and services will be confused as to the source, sponsorship, or affiliation of Plaintiff's goods and services and/or Defendants' goods and services.

88.     Drugstore.com has unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

89.     By reason of Drustore.com's acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Drugstore.com's conduct is permanently enjoined.

90.     This is an exceptional case within the meaning of 15 U.S.C. Section 1117(a).

### FIFTH CLAIM FOR RELIEF
#### (against all Defendants)
#### Federal Direct False Designation of Origin

91.     Plaintiff hereby repeats and realleges paragraphs 1 through 90 hereinabove as though fully set forth herein.

92.     Plaintiff owns valid common law and federally registered trademarks and service marks entitled to protection under the Lanham Act.

93.     Defendants in connection with goods and services have used in commerce false designations of origin, in this District and elsewhere, that are likely to cause confusion, cause

mistake, and deceive as to the origin of Plaintiff's goods, services, or commercial activities and/or Defendants' goods, services, or commercial activities.

94.    Plaintiff is informed and believes, and thereon alleges that Defendants continue intentionally to use such false designations of origin with complete and conscious disregard of Plaintiff's rights and with the intent to trade on the business goodwill Plaintiff has created.

95.    Defendants' above-described acts constitute false designation of origin under 15 U.S.C. Section 1125(a), in that Defendants have used such false designations of origin in connection with Defendants' goods, services, or commercial activities which are likely to cause confusion or mistake or to deceive the public that such goods, services, or commercial activities are authorized, sponsored by, or affiliated with Plaintiff, and such goods, services, or commercial activities have entered into commerce which may be regulated by Congress.

96.    Plaintiff and its business goodwill have been damaged and are likely to be damaged in the future by Defendants' false designation of origin, by reason of the likelihood that current and prospective consumers of Plaintiff's goods and services will be confused as to the source, sponsorship, or affiliation of Plaintiff's goods, services, or commercial activities and/or Defendants' goods, services, or commercial activities.

97.    Defendants have unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

98.    By reason of Defendants' acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Defendants' conduct is permanently enjoined.

99.    This is an exceptional case within the meaning of 15 U.S.C. Section 1117(a).

### SIXTH CLAIM FOR RELIEF

**(against Drugstore.com)**

**Federal Contributory False Designation of Origin**

100.    Plaintiff hereby repeats and realleges paragraphs 1 through 99 hereinabove as though fully set forth herein.

101.    Plaintiff owns valid common law and federally registered trademarks and service marks entitled to protection under the Lanham Act.

102.    Drugstore.com has caused others in connection with goods and services to use in commerce false designations of origin, in this District and elsewhere, that are likely to cause confusion, cause mistake, and deceive as to the origin of Plaintiff's goods, services, or commercial activities, and/or Defendants' goods, services, or commercial activities.

103.    Plaintiff is informed and believes, and thereon alleges that Drugstore.com continues intentionally and with complete and conscious disregard of Plaintiff's rights and with the intent to trade on the business goodwill Plaintiff has created, to cause others to use such false designations of origin.

104.    Drugstore.com's above-described acts constitute contributory false designation of origin under 15 U.S.C. Section 1125(a), in that Drugstore.com has intentionally caused others to use false designations of origin in connection with Defendants' goods, services, or commercial activities which are likely to cause confusion or mistake or to deceive the public that such goods, services, or commercial activities are authorized, sponsored by, or affiliated with Plaintiff, and such goods, services, or commercial activities have entered into commerce which may be regulated by Congress.

105.    Plaintiff and its business goodwill have been damaged and are likely to be damaged in the future by Drugstore.com's contributory false designation of origin, by reason of the likelihood that current and prospective consumers of Plaintiff's goods, services, or commercial activities will be confused as to the source, sponsorship, or affiliation of Plaintiff's goods, services, or commercial activities and/or Defendants' goods, services, or commercial activities.

106.    Drugstore.com has unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

107.    By reason of Drugstore.com's acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Drugstore.com's conduct is permanently enjoined.

108.    This is an exceptional case within the meaning of 15 U.S.C. Section 1117(a).

## SEVENTH CLAIM FOR RELIEF

### (against all Defendants)

### Common Law Trademark and Service Mark Infringement

109.    Plaintiff hereby repeats and realleges paragraphs 1 through 108 hereinabove as though fully set forth herein.

110.    Plaintiff has used certain marks in connection with the sale, distribution, offering for sale, or advertising of goods or services (the "Common Law Marks").

111.    The Common Law Marks are inherently distinctive and have acquired secondary meaning.

112.    The above-described acts of Defendants constitute trademark and service mark infringement under the common law of the State of Utah, in that Defendants have used in

22

connection with their goods and services trademarks and service marks which are likely to cause confusion or mistake or to deceive the public that their goods and services are authorized, sponsored by, or affiliated with Plaintiff.

113.    Plaintiff and its business goodwill have been damaged and are likely to be damaged in the future by Defendants' common law trademark and service mark infringement, by reason of the likelihood that current and prospective consumers of Plaintiff's goods and services will be confused as to the source, sponsorship, or affiliation of Plaintiff's goods and services and/or Defendants' goods and services.

114.    Defendants have unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

115.    By reason of Defendants' acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Defendants' conduct is permanently enjoined.

116.    Plaintiff is informed and believes, and thereon alleges that Defendants acted willfully and maliciously and with the intent fraudulently to infringe upon Plaintiff's Common Law Marks and to damage Plaintiff, with knowing and reckless indifference toward and disregard of Plaintiff's rights.

## EIGHTH CLAIM FOR RELIEF

### (against all Defendants)

### State Statutory Unfair Competition

117.    Plaintiff hereby repeats and realleges paragraphs 1 through 116 hereinabove as though fully set forth herein.

118.    The above-described acts of Defendants constitute unfair competition under Utah Code Ann. Section 13-5a-103, in that Defendants have engaged in an intentional business act or practice that is unlawful, unfair, or fraudulent, leads to a material diminution in the value of intellectual property, and constitutes infringement of a trademark/service mark and a trade name.

119.    Plaintiff and its business goodwill have been damaged and are likely to be damaged in the future by Defendants' actions by reason of the likelihood that current and prospective consumers of Plaintiff's goods and services will be confused as to the source, sponsorship, or affiliation of Plaintiff's goods and services and/or Defendants' goods and services.

120.    Defendants have unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

121.    By reason of Defendants' acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Defendants' conduct is permanently enjoined.

122.    Plaintiff is informed and believes, and thereon alleges that Defendants acted willfully and maliciously and with the intent fraudulently to damage Plaintiff and Plaintiff's trademarks and service marks, with knowing and reckless indifference toward and disregard of Plaintiff's rights.

### NINTH CLAIM FOR RELIEF
#### (against all Defendants)
#### Common Law Unfair Competition

123.    Plaintiff hereby repeats and realleges paragraphs 1 through 122 hereinabove as though fully set forth herein.

24

124.    The above-described acts of Defendants constitute unfair competition under the common law of the State of Utah, in that Defendants by their acts have unfairly competed and are unfairly competing with Plaintiff.

125.    Plaintiff and its business goodwill have been damaged and are likely to be damaged in the future by Defendants' actions by reason of the likelihood that current and prospective consumers of Plaintiff's goods and services will be confused as to the source, sponsorship, or affiliation of Plaintiff's goods and services and/or Defendants' goods and services.

126.    Defendants have unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

127.    By reason of Defendants' acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Defendants' conduct is permanently enjoined.

128.    Plaintiff is informed and believes, and thereon alleges that Defendants acted willfully and maliciously and with the intent fraudulently to unfairly compete with and damage Plaintiff, with knowing and reckless indifference toward and disregard of Plaintiff's rights.

## TENTH CLAIM FOR RELIEF

### (against all Defendants)

### Federal Direct Trademark and Service Mark Dilution

129.    Plaintiff hereby repeats and realleges paragraphs 1 through 128 hereinabove as though fully set forth herein.

130.    Plaintiff owns valid common law and federally registered trademarks and service marks entitled to protection under the Lanham Act.

131.    The common law and federally registered trademarks and service marks owned by Plaintiff are famous within the meaning of 15 U.S.C. Section 1125(c), as they are widely recognized by the general consuming public of the United States as a designation of source of Plaintiff's goods and services.

132.    The common law and federally registered service marks owned by Plaintiff are inherently distinctive or have acquired distinctiveness.

133.    The above-described acts of Defendants constitute dilution under 15 U.S.C. Section 1125(c), in that, after Plaintiff's trademarks and service marks became famous, Defendants began use of marks or trade names that are likely to blur and impair the distinctiveness of Plaintiff's famous marks, thus reducing the ability of those marks to distinguish Plaintiff's goods and services and identify Plaintiff as the source of those goods and services.

134.    Plaintiff and its business goodwill have been damaged and are likely to be damaged in the future by Defendants' actions by reason of the likelihood that Plaintiff's famous marks are likely to be rendered less able to distinguish Plaintiff's goods and services to current and prospective consumers of Plaintiff's goods and services and identify Plaintiff as the source of those goods and services.

135.    Defendants have unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

136.    By reason of Defendants' acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Defendants' conduct is permanently enjoined.

137.    Plaintiff is informed and believes, and thereon alleges that Defendants continue intentionally to blur and dilute Plaintiff's famous trademarks and service marks with complete and conscious disregard of Plaintiff's rights and with the intent to trade on the business goodwill Plaintiff has created.

138.    This is an exceptional case within the meaning of 15 U.S.C. Section 1117(a).

### ELEVENTH CLAIM FOR RELIEF

#### (against Drugstore.com)

#### Federal Contributory Trademark and Service Mark Dilution

139.    Plaintiff hereby repeats and realleges paragraphs 1 through 138 hereinabove as though fully set forth herein.

140.    Plaintiff owns valid common law and federally registered trademarks and service marks entitled to protection under the Lanham Act.

141.    The common law and federally registered trademarks and service marks owned by Plaintiff are famous within the meaning of 15 U.S.C. Section 1125(c), as they are widely recognized by the general consuming public of the United States as a designation of source of Plaintiff's goods and services.

142.    The common law and federally registered trademarks and service marks owned by Plaintiff are inherently distinctive or have acquired distinctiveness.

143.    The above-described acts of Drugstore.com constitute contributory dilution under 15 U.S.C. Section 1125(c), in that, after Plaintiff's trademarks and service marks became famous, Drugstore.com induced others to begin use of marks or trade names that are likely to blur and impair the distinctiveness of Plaintiff's famous marks, thus reducing the ability of those

27

marks to distinguish Plaintiff's goods and services and identify Plaintiff as the source of those goods and services.

144.    Plaintiff and its business goodwill have been damaged and are likely to be damaged in the future by Drugstore.com's actions by reason of the likelihood that Plaintiff's famous marks are likely to be rendered less able to distinguish Plaintiff's goods and services to current and prospective consumers of Plaintiff's goods and services and identify Plaintiff as the source of those goods and services.

145.    Drugstore.com has unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

146.    By reason of Drugstore.com's acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Drugstore.com's conduct is permanently enjoined.

147.    Plaintiff is informed and believes, and thereon alleges that Drugstore.com continues intentionally to cause others to blur and dilute Plaintiff's famous trademarks and service marks with complete and conscious disregard of Plaintiff's rights and with the intent to trade on the business goodwill Plaintiff has created.

148.    This is an exceptional case within the meaning of 15 U.S.C. Section 1117(a).

## TWELFTH CLAIM FOR RELIEF
### (against all Defendants)
### State Statutory Trademark Dilution

149.    Plaintiff hereby repeats and realleges paragraphs 1 through 148 hereinabove as though fully set forth herein.

150.    Plaintiff owns valid common law and federally registered service marks entitled to protection under Utah Code Ann. Section 70-3a-403.

151.    The common law and federally registered service marks owned by Plaintiff are famous in the State of Utah within the meaning of Utah Code Ann. Section 70-3a-403.

152.    The above-described acts of Defendants constitute dilution under Utah Code Ann. Section 70-3a-403, in that, after Plaintiff's trademarks and service marks became famous in the State of Utah, Defendants began commercial use of such marks in a way that causes dilution of the distinctive quality of such marks, thus reducing the ability of those marks to distinguish Plaintiff's goods and services and identify Plaintiff as the source of those goods and services.

153.    Plaintiff and its business goodwill have been damaged and are likely to be damaged in the future by Defendants' actions, by reason of the likelihood that Plaintiff's famous marks will be rendered less able to distinguish Plaintiff's services to purchasers and prospective consumers of Plaintiff's services and identify Plaintiff as the source of those services.

154.    Defendants have unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

155.    By reason of Defendants' acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Defendants' conduct is permanently enjoined.

156.    Plaintiff is informed and believes, and thereon alleges that Defendants in their actions willfully intended to trade on Plaintiff's reputation and to cause dilution of Plaintiff's famous marks, acting maliciously and with intent fraudulently to damage Plaintiff and Plaintiff's

trademarks and service marks, and with knowing and reckless indifference toward and disregard of Plaintiff's rights.

## THIRTEENTH CLAIM FOR RELIEF
### (against All Defendants)
### State Statutory Deceptive Trade Practices

157.    Plaintiff hereby repeats and realleges paragraphs 1 through 156 hereinabove as though fully set forth herein.

158.    The above-described acts of Defendants constitute deceptive trade practices under Utah Code Ann. Section 13-11a-4, in that, in the course of Defendants' business, vocation, or occupation, Defendants have passed off and are passing off goods or services as those of another, have caused and are causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services, have caused and are causing likelihood of confusion or of misunderstanding as to affiliation, connection, association with, or certification by another, and have engaged and are engaging in other conduct which similarly creates a likelihood of confusion or of misunderstanding.

159.    Plaintiff notified Defendants and demanded Defendants cease their unlawful conduct; by virtue of such notice, Defendants were given implicit notice of their violation of Title 13, Chapter 11a of the Utah Code, and were implicitly provided an opportunity to promulgate a correction notice by the same media as the violating advertisement. However, Defendants did not promulgate a correction notice within ten days of receipt of such notice.

160.    Defendant have unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

30

161.    By reason of Defendants' acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Defendants' conduct is permanently enjoined.

162.    Plaintiff is informed and believes, and thereon alleges that Defendants acted willfully and maliciously and with the intent fraudulently to engage in deceptive trade practices and to damage Plaintiff, with knowing and reckless indifference toward and disregard of Plaintiff's rights.

### FOURTEENTH CLAIM FOR RELIEF

**(against Drugstore.com)**

**Intentional Interference with Economic Relations**

**(as to Vision Direct's breach of the Settlement Agreement)**

163.    Plaintiff hereby repeats and realleges paragraphs 1 through 162 hereinabove as though fully set forth herein.

164.    Through the above-described acts of Drugstore.com causing Vision Direct to breach the Settlement Agreement between Vision Direct and Plaintiff, Drugstore.com has intentionally interfered with Plaintiff's existing economic relations.

165.    Drugstore.com interfered with Plaintiff's existing economic relations for an improper purpose, in that Drugstore.com's predominant purpose was to injure Plaintiff, and Drugstore.com interfered by improper means, in that inducing breach of contract is contrary to the common law of the State of Utah and violates established standards of commerce.

166.    Drugstore.com's interference has caused injury to Plaintiff and Plaintiff's business goodwill, and is likely to cause injury to Plaintiff and Plaintiff's business goodwill in the future, by improperly destroying contractual protections against: (a) the likelihood of

31

confusing and deceiving Plaintiff's current and potential customers and the general public as to the origin and sponsorship of Plaintiff's goods and services and/or Vision Direct's goods and services; (b) reduction of the ability of Plaintiff's famous Registered Marks to distinguish Plaintiff's goods and services and identify Plaintiff as the source of those goods and services; (c) trading upon the business goodwill and substantial customer recognition associated with Plaintiff's trademarks and service marks; and (d) reduction of Plaintiff's website-based commerce and sales.

167.    Drugstore.com has unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

168.    By reason of Drugstore.com's acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Drugstore.com's conduct is permanently enjoined.

169.    Plaintiff is informed and believes, and thereon alleges that Drugstore.com's interference was and is willful and malicious, with intent fraudulently to infringe upon and damage Plaintiff's trademarks and service marks and to damage Plaintiff, and with knowing and reckless indifference toward and disregard of Plaintiff's rights.

## FIFTEENTH CLAIM FOR RELIEF

### (against all Defendants)

### Intentional Interference with Economic Relations

### (as to customers diverted from Plaintiff's website)

170.    Plaintiff hereby repeats and realleges paragraphs 1 through 169 hereinabove as though fully set forth herein.

171.    Many of Plaintiff's customers regularly and repeatedly purchase contact lenses and related products through Plaintiff's website. It is likely that such customers and others will desire to visit or continue to visit Plaintiff's website and there purchase Plaintiff's goods and consume Plaintiff's services in the future.

172.    Many visitors to Plaintiff's website engage in commerce with Plaintiff once they reach the website, and absent Defendants' actions driving Plaintiff's current and potential customers away from Plaintiff's website and toward Vision Direct's website, it is likely that Plaintiff would have realized and would realize in the future additional website-based and other sales from these existing and new customers.

173.    Defendants knew or should have known of the existence of Plaintiff's reasonable expectation of future transactions with these returning and future customers.

174.    Through the above-described acts of Defendants driving customers away from Plaintiff's website and to the Vision Direct website instead, Defendants intentionally interfered with Plaintiff's potential economic relations with such returning and future customers.

175.    Defendants interfered with Plaintiff's potential economic relations for an improper purpose, in that Defendants' predominant purpose was to injure Plaintiff, and Defendants interfered by improper means, in that Plaintiff's current and potential customers were driven away from Plaintiff's website through trademark infringement, false designation of origin, dilution, and acts deemed by Utah statutes to be unfair competition and deceptive trade practices, all of which violates state and federal law and established standards of commerce.

176.    Defendants' interference has caused injury to Plaintiff and Plaintiff's business goodwill, and is likely to cause injury to Plaintiff and Plaintiff's business goodwill in the future,

by creating the likelihood of confusing and deceiving Plaintiff's current and potential customers and the general public as to the origin and sponsorship of Plaintiff's goods and services and/or Defendants' goods and services; by reducing the ability of Plaintiff's famous Registered Marks to distinguish Plaintiff's goods and services and identify Plaintiff as the source of those goods and services; by trading upon the business goodwill and substantial customer recognition associated with Plaintiff's trademarks and service marks; and by reducing Plaintiff's website-based commerce and sales.

177.    Defendants have unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

178.    By reason of Defendants' acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Defendants' conduct is permanently enjoined.

179.    Plaintiff is informed and believes, and thereon alleges that Defendants' interference was and is willful and malicious, with intent fraudulently to infringe upon and damage Plaintiff's trademarks and service marks and to damage Plaintiff, and with knowing and reckless indifference toward and disregard of Plaintiff's rights.

## SIXTEENTH CLAIM FOR RELIEF
### (against all Defendants)
### Unjust Enrichment

180.    Plaintiff hereby repeats and realleges paragraphs 1 through 179 hereinabove as though fully set forth herein.

181.    Defendants have unfairly profited from, and have been unjustly enriched by, their acts as alleged herein.

182.    At all relevant times, Defendants have been aware of the unfair profit, benefits, and unjust enrichment arising from their acts as alleged herein.

183.    Under the circumstances of this Action, it is inequitable for Defendants to retain such profits and benefits.

184.    As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and its business goodwill have suffered, and will continue to suffer, damages as alleged more fully above.

### REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

1.    For a preliminary and permanent injunction prohibiting Defendants, their officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with them, from engaging in any of the following:

(a)    placing or maintaining with any search engine provider any advertisement that appears in Internet search engine results when any words or phrases identical or substantially similar to any of Plaintiff's trademarks, service marks, or trade name are entered as search terms, or causing any other entity to do so;

(b)    infringing any of Plaintiff's federally registered or common law trademarks or service marks, or causing any other entity to do so;

(c)    diluting, blurring, or tarnishing any of Plaintiff's famous trademarks or service marks, or causing any other entity to do so;

(d)     making any false designations of origin, descriptions, representations or suggestions that Plaintiff is the source, sponsor, or in any way affiliated with Defendants or their websites, products or services, or causing any other entity to do so;

(e)     engaging in any unfair or deceptive advertising or trade practice with respect or Plaintiff, or causing any other entity to do so; or

(f)     otherwise unfairly competing with Plaintiff in any manner whatsoever, or causing any other entity to do so.

2.     For a preliminary and permanent injunction prohibiting Drugstore.com, its officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with them, from inducing Vision Direct to breach the Settlement Agreement, or causing any other entity to so induce.

3.     For an order directing Defendants to file with this Court and serve on Plaintiff within thirty (30) days after service of the injunction, a report in writing and under oath describing in detail the manner and form in which Defendants have complied with the orders of this Court.

4.     For an order directing an accounting to determine all gains, profits, savings, and advantages obtained by Defendants as a result of their wrongful acts.

5.     For restitution to Plaintiff of all gains, profits, savings, and advantages obtained by Defendants as a result of their wrongful acts.

6.     For an award of all actual damages sustained by Plaintiff and all profits realized by Defendants as a result of their wrongful acts, and that such damages and/or profits be trebled and/or enhanced to the maximum amount provided by law.

7.    For an award of an amount sufficient to conduct a corrective advertising campaign to dispel the effects of Defendants' wrongful conduct and confusing and misleading advertising.

8.    For punitive damages under Utah statutes and common law in an amount sufficient to deter other and future similar conduct by Defendants and others.

9.    For prejudgment interest.

10.   For all of Plaintiff's costs of this Action, including attorneys' fees.

11.   For such other or further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff 1-800 Contacts, pursuant to Federal Rule of Civil Procedure 38, hereby demands a trial by jury of all issues so triable.

DATED:  February 26, 2008.

Respectfully submitted,

MILLER GUYMON, P.C.

Paxton R. Guymon
Craig H. Howe
Lauren Y. Parry

CHRISTIE, PARKER & HALE, LLP
David J. Steele
Howard A. Kroll
Gary Dukarich
(*pro hac vice* admission being sought)

Attorneys for Plaintiff 1-800 Contacts, Inc.