UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 1-800 CONTACTS, INC.,<br><br>        Plaintiff/Counterclaim Defendant,<br><br>    v.<br><br>VISION DIRECT, INC.,<br><br>        Defendant/Counterclaim-Plaintiff. | Case No.: 08-cv-01949 (GBD)<br><br>ECF Case<br><br>**PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR DISMISSAL OF DEFENDANT'S COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(B)(6)** |

## INTRODUCTION

Plaintiff 1-800 Contacts, Inc. ("Plaintiff") brought this Action against Defendant Vision Direct, Inc. ("Vision Direct") because Vision Direct breached the settlement agreement entered into by the parties in 2004 (the "Settlement Agreement", Declaration of Danielle M. Criona, filed herewith ("Criona Decl."), at Ex. A). Specifically, Vision Direct has engaged in certain acts prohibited by the Settlement Agreement which have resulted in Internet users who are searching for Plaintiff's website being given advertisement links to Vision Direct's website. Vision Direct and its parent, Drugstore.Com, Inc. ("Drugstore") (collectively, the "Utah Defendants"), have infringed the trademarks of Plaintiff by using Plaintiff's trademarks to promote the Utah Defendants' business and drive customer traffic away from Plaintiff's website to the Utah Defendants' website. For example, if an Internet user enters the search term "1 800 Contacts" into an Internet search engine, like Google, MSN or Yahoo!, a "Sponsored Link" to the Utah Defendants' website (selling directly competitive goods) is displayed. In response to the Utah Defendants' wrongful actions, Plaintiff instituted an action in the United States District Court for the District of Utah against the Utah Defendants for violation of federal and state trademark and

unfair competition laws and Utah tort law (the "Utah Action") (Utah Complaint, Criona Decl. at Ex. B).

The Settlement Agreement with Vision Direct contains a forum selection clause requiring "[a]ny litigation *in connection with this Agreement*, including but not limited to any breach of this Agreement or the interpretation or construction of the terms of this Agreement" be brought in the Southern District of New York (emphasis added). Even though Plaintiff's statutory and tort claims in the Utah Action do not arise "in connection with" the Settlement Agreement, Vision Direct filed Counterclaims in this Action for breach of contract and offset of claims contending that the forum selection clause controls the Utah Action and that it was a breach of contract for the claims in the Utah Action to have been brought anywhere but in the Southern District of New York.

Vision Direct is mistaken as a matter of law.

Plaintiff's statutory and tort claims in the Utah Action are distinct from and independent of the Settlement Agreement and do not arise "in connection with" it, because in resolving those claims the trier of fact need not and will not refer to any provision of the Settlement Agreement. Courts hold that, because of this, such claims are not controlled by the forum selection clause. *See e.g., Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 390-92 (2d Cir. 2007) (statutory copyright claim did not depend on contract provisions, and so fell outside forum selection clause).

Since Vision Direct's Counterclaims fail as a matter of law, its Counterclaims should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

**ARGUMENT**

I. <u>**DISMISSAL IS WARRANTED WHERE A CLAIM IS INSUFFICIENT AS A MATTER OF LAW**</u>

A claim should be dismissed under Federal Rule of Civil Procedure 12(b)(6) unless it demonstrates the plausibility of the claimant's entitlement to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. ___, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007). Where a claim turns on the plain meaning of an agreement, the interpretation of that agreement is a matter of law, and the claim if legally flawed may be disposed of by Rule 12(b)(6) dismissal. *See Crane Co. v. Coltec Indus., Inc.*, 171 F.3d 733, 737 (2d Cir. 1999) (citing *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996)). That is the situation here.

Vision Direct's first Counterclaim for breach of contract, on which the second Counterclaim for an off-set of damages relies,[1] alleges that Plaintiff breached the forum selection clause of the Settlement Agreement by "filing and prosecution of the Utah Federal Action." It is undisputed that Plaintiff filed the Utah Action against the Utah Defendants. As a matter of law, however, the Utah Action does not breach the forum selection clause of the Settlement Agreement because the statutory and tort claims do not arise "in connection with" the Settlement Agreement. Since Vision Direct, as a matter of law, cannot state a claim upon which relief can be granted, the Court should dismiss Vision Direct's Counterclaims under Rule 12(b)(6).

---

[1] It is unclear whether the second Counterclaim is even a claim in its own right. It relies entirely on a finding of liability on the first Counterclaim and appears to be merely a prayer for relief should liability on the first Counterclaim be found.

II.  **THE FORUM SELECTION CLAUSE DOES NOT APPLY TO CLAIMS MADE IN THE UTAH ACTION**

The forum selection clause of the Settlement Agreement between Vision Direct and Plaintiff, by its own explicit terms, does not apply to Plaintiff's statutory and tort claims in the Utah Action, which are governed by Federal and Utah state law.[2]  That clause provides in full:

> Any litigation *in connection with this Agreement*, including but not limited to any breach of this Agreement or the interpretation or construction of the terms of this Agreement shall only be brought in the United States District Court for the Southern District of New York. The Parties hereby waive any objection to venue or jurisdiction in the United States District Court for the Southern District of New York (emphasis added).

In order to determine whether filing the Utah Action breached the forum selection clause of the Settlement Agreement, the court must analyze "whether the claims and parties involved in the [the Utah Action] are subject to the forum selection clause." *Phillips*, 494 F.3d at 383-84. "[I]f the substance of their claims, stripped of their labels, does not fall within the scope of the clauses, the clauses cannot apply." *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993).

To make this determination, courts look to "whether the plaintiff's claims depend on rights and duties that must be analyzed by reference to the contractual relationship." *Direct Mail Prod. Servs. v. MBNA Corp.*, No. 99 Civ. 10550, 2000 U.S. Dist. LEXIS 12945, at *17 (S.D.N.Y. Sept. 6, 2000).  *See also Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) ("[w]hether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract"); *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993) ("[r]egardless of the duty sought to be enforced in a particular

---

[2] Plaintiff's claims in the Utah Action include direct and contributory trademark infringement and false designation of origin under 15 U.S.C. Sections 1114(1) & 1125(a) and Utah common law; unfair competition under Utah Code Ann. Section 13-5a-103 and Utah common law; direct and contributory dilution under 15 U.S.C. Section 1125(c) and Utah Code Ann. Section 70-3a-403; deceptive trade practices under Utah Code Ann. Section 13-11a-4; and intentional interference with economic relations under Utah common law.  (Utah Complaint, Exh. B ¶ 1 et. seq.)

cause of action, *if the duty arises from the contract*, the forum selection clause governs the action") (emphasis added); *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983) (a forum selection clause pertains to tort claims that "ultimately depend on the existence of [the] contractual relationship").

The Second Circuit recently applied this analysis in a situation similar to the instant case. In *Phillips*, a musician and a recording studio were parties to a recording contract containing a mandatory forum selection clause which applied to "any legal proceeding that may arise out of the agreement." 494 F.3d at 382. The musician brought, *inter alia*, claims of federal copyright infringement and state law claims from a jurisdiction other than the one named in the forum selection clause.

The Second Circuit looked at the language of the forum selection clause, and applied to it the dictionary definition of, "to originate from a specified source."[3] *Id.* at 390. It then looked to the nature of the claims brought, to determine whether the plaintiff's claims originated from the recording contract. *Id.* The court concluded that the plaintiff's statutory copyright claims were based on authorship rights conferred on him as a composer by operation of copyright law without reference to the recording contract between the parties. *Id.* Since assertion of those rights did not arise from, nor were they determined by the rights and duties enumerated in, the parties' contract, the forum selection clause was inapplicable. *Id.* at 391-92.

Other courts, applying the same reasoning, have reached the same conclusion. S*ee Corcovado Music Corp. v. Hollis Music, Inc.*, 981 F.2d at 682 (2nd Cir. 1993) (since plaintiff's copyright infringement action arose from Copyright Act and plaintiff asserted no claim on a

---

[3] The Settlement Agreement's phrase, "in connection with" carries a similar import in which the interdependence (or lack thereof) between the claims and the provisions of the agreement would be dispositive.

contact between predecessor parties, forum selection clause was ineffective); *Dan-Dee Int'l, Ltd. V. Kmart Corp.*, No. 99 Civ. 11689, 2000 U.S. Dist. LEXIS 13411, at *14 (plaintiff brought copyright infringement action seeking relief based on infringing sales without seeking relief under the contract; action not governed by forum selection clause); *Cheever v. Acad. Chicago Ltd.,* 685 F. Supp. at 917 (S.D.N.Y. 1988) (since asserted claims arose under copyright laws without assertion of contractual rights from agreement, forum selection clause did not apply); *Berrett v. Life Ins. Co. of the Southwest*, 623 F. Supp. at 948 (D. Utah 1985) (tort claims alleging insurance company defamed insurance agency and urged policyholders not to renew with that agency did not arise under agency agreement between insurance company and that agency).

Here, the resolution of Plaintiff's trademark infringement rights and claims in the Utah Action does not relate to the interpretation of, or to the rights and duties enumerated in, the Settlement Agreement. Nor does resolution of the other statutory and tort claims brought by Plaintiff in the Utah Action. Instead, *without reference to the provisions of the Settlement Agreement*, only the scope of federal and Utah state trademark, dilution and unfair competition laws, as well as Utah tort law, will enumerate Plaintiff's asserted rights and determine each of the Utah Defendants' liability to Plaintiff in the Utah Action.

Further, the Settlement Agreement *does not* modify, clarify or exemplify Vision Direct's duty to comply with its obligations under federal statutes, Utah statutes and Utah common law. The Settlement Agreement contains no license or other provision granting special rights or modifying the rights and liabilities that are otherwise imposed by the trademark statutes and Utah state law. The Settlement Agreement does not enlarge the scope of Vision Direct's activities beyond those permitted by the trademark laws, nor does it diminish Vision Direct's liability under those laws for acts prohibited by those laws. Its provisions did not originate or make

possible the dispute that has arisen between the parties, or even the context of that dispute. To the contrary, the Settlement Agreement serves as an *additional, redundant prohibition* on certain of Vision Direct's activities — activities that may well be permissible under the statutory trademark law. This distinguishes the Utah Action claims and the Settlement Agreement from those claims and contracts in the cases finding coverage by a forum selection clause.[4]

As in *Phillips* and the other cited cases, the proceedings in the Utah Action begin and end without any reference to the contract at issue here. Since the resolution of the statutory and tort claims in the Utah Action does not require a reference or connection to the Settlement Agreement, the forum selection clause is inapplicable to those claims. Plaintiff therefore did not breach, and as a matter of law could not have breached, the Settlement Agreement by filing the Utah Action.

The second Counterclaim, for an offset of damages relies upon the first Counterclaim, and falls with it.

Both of Vision Direct's Counterclaims fail to state a claim upon which relief can be granted, and both should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## CONCLUSION

Vision Direct's Counterclaims, premised on Plaintiff breaching the forum selection clause of the Settlement Agreement by filing the Utah Action, are insufficient, and therefore fail

---

[4] Where a contract grant special rights, the contract is often consulted to determine whether liability attaches despite the special contractual rights granted. *See, e.g., Manetti-Farrow*, 858 F.2d at 514 ("each of these [tort] claims relates in some way to rights and duties enumerated in the exclusive dealership contract. The claims cannot be adjudicated without analyzing whether the parties were in compliance with the contract"); *Roby,* 996 F.2d at 1361 ("[i]n order to underwrite risk, a [plaintiff] is required by Lloyd's' bylaws to enter into the Managing and Members' Agent's Agreements. He may not underwrite risk otherwise; that is, he may not 'buy the security' otherwise. Misconduct with respect to the sale of these 'securities' necessarily 'relates to' these required agreements").

as a matter of law.  Consequently, the Counterclaims fail to state a claim upon which relief can be granted and dismissal of the Counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6) is warranted.  Accordingly, Plaintiff respectfully requests the court grant its motion and dismiss the Counterclaims brought by Vision Direct in connection with its Answer.

DATED:  May 23, 2008

Respectfully submitted,

CHRISTIE, PARKER & HALE, LLP

By   /s/David J. Steele
David J. Steele (Admitted *pro hac vice*)
Email: djslit@cph.com
Howard A. Kroll (Admitted *pro hac vice*)
Email: howard.kroll@cph.com
Gary Dukarich (Admitted *pro hac vice*)
Email: gsd@cph.com
3501 Jamboree Road, Suite 6000-North Tower
Newport Beach, CA  92660
Telephone: (949) 476-0757
Facsimile:  (949) 476-8640

Robert J. Luddy (RJL-6970)
Email: rluddy@windelsmarx.com
Delton L. Vandever (DLV-8062)
Email: dvandever@windelsmarx.com
WINDELS MARX LANE & MITTENDORF, LLP
156 West 56th Street
New York, NY  10019
Telephone: (212) 237-1000
Facsimile:  (212) 262-1215

*Attorneys for Plaintiff/Counterclaim-Defendant
1-800 Contacts, Inc.*

LLB IRV1114103.6-*-05/23/08 3:46 PM