UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

1-800 CONTACTS, INC.,

        Plaintiff/Counterclaim Defendant,

v.

VISION DIRECT, INC.,

        Defendant/Counterclaim-Plaintiff.

Case No.:  08-cv-01949 (GBD)

ECF Case

**DECLARATION OF DANIELLE M. CRIONA IN SUPPORT OF PLAINTIFF'S MOTION FOR DISMISSAL OF DEFENDANT'S COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(B)(6)**

I, Danielle M. Criona, declare as follows:

1.      I am an attorney at the law firm of Christie, Parker & Hale, LLP, counsel of record for the plaintiff in the above-captioned action.  I have personal knowledge of the contents of this declaration and, if called as a witness, could and would competently testify thereto.

2.      I make this declaration in support of Plaintiff's Motion For Dismissal Of Defendant's Counterclaims Pursuant To Fed. R. Civ. P. 12(b)(6).

3.      Attached hereto as Exhibit A is a true and correct copy of the Settlement Agreement between 1-800 Contacts, Inc. and Vision Direct, Inc. dated June 24, 2004.

4.      Attached hereto as Exhibit B is a true and correct copy of the Complaint and Jury Demand (without exhibits) filed by 1-800 Contacts, Inc. in the United States District Court for the District of Utah against Drugstore.com, Inc. and Vision Direct, Inc.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 23, 2008.

                         /s/Danielle M. Criona
                          Danielle M. Criona

LLB IRV1114116.1-*-05/23/08 12:01 PM

# EXHIBIT A

## SETTLEMENT AGREEMENT

This SETTLEMENT AGREEMENT ("Agreement") is made and entered into as of June 24, 2004 (the "Effective Date") by and between 1-800 Contacts, Inc. ("1-800 Contacts" or "Plaintiff") and Vision Direct, Inc. ("Vision Direct" or "Defendant") (collectively with Plaintiff, the "Parties").

WHEREAS, on or about October 9, 2002, Plaintiff filed a lawsuit in the United States District Court for the Southern District of New York (the "Court") captioned: *1-800 Contacts, Inc. v. WhenU.com, Inc. and Vision Direct, Inc.*, Civil Action No. 02-CV-8049 and Vision Direct has taken an appeal to the United States Court of Appeals for the Second Circuit relating to the issuance of a preliminary injunction against Vision Direct (the "Action");

WHEREAS, the Parties have determined that, in order to avoid the expense, inconvenience, and disruption of pursuing and defending the Action, it is desirable and in their respective best interests to terminate the Action and settle any claims related thereto, all without admitting any liability for the claims alleged in the Action;

NOW, THEREFORE, in consideration of the mutual promises hereinafter set forth and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.    **RELEASE:** Other than with respect to the obligations contained in this Agreement, and in consideration of the mutual releases and covenants contained herein, the Parties, on behalf of themselves and their officers, directors, agents, shareholders, employees, attorneys, affiliates, subsidiaries, parent entities, successors, heirs and assigns, hereby release and discharge each other and their respective officers, directors, agents, shareholders, employees, attorneys, affiliates, subsidiaries, parent entities, successors, heirs and assigns, from any and all

2    NOTE: PAGE 1 HAS BEEN INTENTIONALLY OMITTED.

liability, claims, counterclaims, demands, debts, charges, liens and causes of action of every kind and character, known or unknown, accrued or unaccrued, whether arising out of contract, tort or otherwise, in law or in equity, arising from, or relating to the claims and defenses in this Action.

2.   **DISMISSAL OF CLAIMS / COSTS:** Within five (5) business days of the Effective Date, Plaintiff 1-800 Contacts agrees to execute and cause to be filed with the Court a stipulation in substantially the form attached hereto (i) vacating and dissolving the preliminary injunction entered in this Action against Vision Direct on December 22, 2003, (ii) dismissing the Action with prejudice as against Vision Direct; and (iii) if the above (i) and (ii) do not have the effect of dismissing with prejudice Vision Direct's appeal of the preliminary injunction, Vision Direct will thereafter dismiss the appeal with prejudice. The Parties shall cooperate in taking all other necessary action to affect this Section. Each Party agrees to bear its own costs and attorneys' fees in connection with the Action and this Agreement. Neither Party shall seek to recover from the other Party the attorneys' fees and expenses that they incurred in this Action or in the negotiation and drafting of this Agreement.

3.   **CONSIDERATION:** Defendant agrees to pay to Plaintiff the amount of One Dollar ($1.00). Within five (5) business days of the Effective Date of this Agreement, Defendant shall deliver to counsel for Plaintiff a check in the amount of One Dollar ($1.00), made payable to "1-800 Contacts, Inc." In addition, Vision Direct agrees to remove and keep absent (and shall cause its parent drugstore.com, inc. to remove and keep absent) (Vision Direct and drugstore.com, inc collectively the "Combined Entity") the phrase "World's Largest Selection" from the website located at the URL www.visiondirect.com and from any other website the Combined Entity owns or controls, but only on those portions of such websites that relate directly to the sale of vision care products. In connection with the immediately preceding

3

sentence, the Combined Entity shall remove the phrase as soon as administratively practicable following the Effective Date of this Agreement.

4.     **PROHIBITED ACTS:** (A.) From the Effective Date of this Agreement, each Party, its parent, subsidiaries, agents, servants, employees, officers and other entities controlled by such Party mutually agree to refrain from and not to cause in the future any other entity to engage in Internet advertising that causes advertisements to appear on top of, over, underneath or behind the other Party's websites, as listed on Exhibit 1 hereto (the "Restricted Websites"), to display Pop-Up Advertisements in connection with any portion of the other Party's Restricted Websites, or to modify or alter the other Party's Restricted Websites as described more fully below (collectively the "Prohibited Acts"). The Parties agree that any third-party participating in an associate or affiliate program or similar program of a Party's Restricted Websites (an "Affiliate") is not controlled by such Party. However, if a Party ("Party A") is made aware that an Affiliate is using the trademark of the other Party ("Party B") as a result of Party A's associate or affiliate relationship with such Affiliate, Party A shall within ten days request in writing that the Affiliate cease using the trademark with a copy of such notice being simultaneously sent to Party B. If the Affiliate fails to cease using the trademark within three business days, Party A will as soon as practicable terminate the Affiliate's associate or affiliate relationship with Party A. Neither Party shall have an affirmative duty to police Affiliate advertising for potential violations of the other Party's intellectual property rights.

The Prohibited Acts include

a.     displaying Pop-Up Advertisements or other content that are programmed to appear on top of, over, underneath or behind the other Party's Restricted Websites or to obstruct the on-screen view of any portion of the other Party's Restricted Websites;

b.  altering or modifying any copy of the other Party's Restricted Websites, including without limitation, altering or modifying the appearance of the other Party's Restricted Websites or the manner in which the Restricted Websites are displayed to an Internet user, whether or not the alteration or modification of the appearance of the Restricted Websites in any way interacts with or changes the underlying code for the display of that Restricted Website;

c.  using the other Party's URLs, trademarks, or brand name to target or trigger the appearance or delivery of Pop-Up Advertisements on top of, over, underneath, behind, or in any way that obstructs the on-screen view of the other Party's Restricted Websites;

d.  causing a Party's website or Internet advertisement to appear in response to any Internet search for the other Party's brand name, trademarks or URLs;

e.  causing a Party's brand name, or link to the Party's Restricted Websites to appear as a listing in the search results page of an Internet search engine, when a user specifically searches for the other Party's brand name, trademarks, or URLs;

f.  embedding or otherwise causing hypertext links to appear by highlighting, underscoring, or otherwise marking or identifying text on the other Party's Restricted Websites such that a promotional message or other type of advertisement will appear either when the user scrolls over the hypertext or other link, or when the user clicks on the hypertext or other link and is transported to a different webpage;

g.  replacing existing hypertext links on or in the other Party's Restricted Websites with a link to the Party's website;

h.  replacing promotional or advertising content on, above, below or behind the other Party's Restricted Website with promotional or advertising content of the Party;

i.  using the other Party's trademark or brand name to redirect users from the other Party's Restricted Websites or to change the appearance of the other Party's Restricted Websites.

(B.)  Prohibited Acts shall not include (i) use of the other Party's Trademarks on the

Internet in a manner that would not constitute an infringing use in an non-Internet context, e.g.,

the use on the Internet of comparative advertising, parodies, and similar non-Infringing, uses;

and (ii) the purchase by either Party of the key words that are generic words such as "contacts, "

5

"contact lens, " and "lens" (and both Parties acknowledge that any advertisements triggered by such key words are not prohibited under this agreement.)

(C.)    The Parties understand and appreciate that new Internet advertising techniques and technologies that are unknown as of the Effective Date of this Agreement likely will be developed and employed in the future. It is the intent of the Parties to construe this Section 4 in good faith to include as Prohibited Acts all future Internet advertising techniques and advertisement delivery technologies that are substantially similar to the Prohibited Acts.

(D.)    The Parties (which includes the Combined Entity for purposes of this section) may supplement Exhibit 1 (and as a result, the list of "Restricted Websites") hereto as necessary in the future by adding websites relating to the business of each respective party as it is conducted as of the date hereof, provided that the Party supplementing Exhibit 1 provides due notice in writing that additional websites are owned by that Party, its successors, or affiliates of that Party or its affiliates. The other Party shall have fifteen (15) days thereafter to comply with this Agreement with respect to any additional websites or object to their inclusion in Exhibit 1; provided that the only basis for objecting to the addition of a website to Exhibit 1 is that the website (i) is not owned by the supplementing Party, its successors, or affiliates of that Party or its affiliates or (ii) does not relate to the conduct of the supplementing Party's business as of the date hereof. The Party's acknowledge that "as of the dates hereof" their businesses shall be defined for the purposes of this agreement as follows: (x) for the Combined Entity -- beauty, wellness, personal care, vision and pharmacy – related product offerings; and for 1 - 800 Contacts any vision-related product offerings.

5.    **NOTICE OF BREACH:** In the event that a Party believes the Agreement has been breached through the commission of one or more of the Prohibited Acts set forth above in

Section 4 of this Agreement, that Party shall provide written notice of such alleged breach promptly to the other Party, who shall have 10 calendar days from receipt of such notice to respond or remedy the breach. In the event the other Party does not respond to or remedy the alleged breach within 10 calendar days, the enforcing Party shall be entitled to enforce this Agreement in accordance with its terms and to seek, without limitation, all available remedies at law or equity. Any notice provided for in this Agreement shall be in writing and shall be either personally delivered, or mailed by first class mail, return receipt requested, to the recipient at the address below indicated:

<u>Notices to Vision Direct</u>:
Attn: General Counsel of drugstore.com, inc.
drugstore.com, inc.
13920 SE Eastgate Way, Suite 300
Bellevue, WA 98005

<u>Notices to 1-800 CONTACTS</u>:
1-800 CONTACTS, INC.
66 East Wadsworth Park Drive
Draper, Utah 84020
Attn: Joe Zeidner

Any notice under this Agreement shall be deemed to have been given when so delivered or mailed.

6.      **LITIGATION:** Any litigation in connection with this Agreement, including but not limited to any breach of this Agreement or the interpretation or construction of the terms of this Agreement shall only be brought in the United States District Court for the Southern District of New York. The Parties hereby waive any objection to venue or jurisdiction in the United States District Court for the Southern District of New York.

7.      **WARRANTY AND CAPACITY TO EXECUTE:** The Parties represent and warrant that they have read and understand this Agreement, that they are duly authorized to

7

execute this Agreement, and that they have executed this Agreement in consultation with their respective attorneys.

8.    **NEUTRAL CONSTRUCTION:** This Agreement shall be construed and enforced without regard to which Party is the drafter of the Agreement.

9.    **WAIVER:** The waiver of any breach of any term or provision of this Agreement shall not be construed and shall not be a waiver of any other breach of this Agreement.

10.    **NEW YORK LAW:** This Agreement and matters relating to the performance thereof shall be construed, interpreted and enforced in accordance with the laws of the State of New York, without giving effect to its choice of law principles.

11.    **ENTIRE AGREEMENT:** This Agreement constitutes the entire understanding between the Parties with respect to the subject matter herein and merges all prior discussions and communications between them with respect to this Agreement. This Agreement supersedes and replaces all prior representations, statements, promises, commitments, and agreements between the Parties whether oral or written, expressed or implied, and related to any subject matter.

12.    **ASSIGNMENT:** No Party may assign its rights, duties or obligations under this Agreement, directly or indirectly, in whole or in part, without the prior written consent of the other Party, except in connection with a merger, reorganization or change in control, or a sale of all or substantially all of a Party's business, equity and/or assets. Any such permitted assignee must agree in writing to assume all of the assigning Party's obligations hereunder, and the assigning Party must guarantee such assignee's performance hereunder. Any purported assignment in contravention of this Section 12 shall be void ab initio and of no force or effect. In the event of a permitted assignment, this Agreement shall be binding upon such Party's permitted successors and assigns.

8

13.    **SEVERABILITY:** If for any reason a competent authority finds any provision of this Agreement, or portion thereof, to be unenforceable, that provision or portion shall be enforced to the maximum extent permissible to effect the intent of the Parties, and the remainder of this Agreement shall continue in full force and effect.

14.    **COUNTERPARTS:** This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one single agreement among the Parties.

15.    **NON DISCLOSURE:** The Parties will mutually agree on press releases and/or public statements regarding this Agreement ("the mutually agreed PR"). Neither Party will deviate from the mutually agreed PR without the prior written consent of the other Party, which consent will not be unreasonably withheld. **IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be signed below by their respective duly authorized officers.

1-800 CONTACTS, INC.                    VISION DIRECT INC.

By: _____          By: _____

Title: _____          Title: _V.P. AND GENERAL COUNSEL_

Date: __6/24/04__                      Date: __6/24/04__

9

# EXHIBIT B

FILED
U.S. DISTRICT COURT

2009 FEB 26  P 4: 18

DISTRICT OF UTAH

BY:_____
    DEPUTY CLERK

David J. Steele
Gary Dukarich
CHRISTIE, PARKER & HALE, LLP
3501 Jamboree Road, Suite 6000-North Tower
Newport Beach, CA 92660
Telephone: (949) 476-0757
Facsimile: (949) 476-8640
david.steele@cph.com
gary.dukarich@cph.com
(*pro hac vice* admission being sought)

Howard A. Kroll
CHRISTIE, PARKER & HALE, LLP
350 W. Colorado Boulevard, Suite 500
Pasadena, CA 91105
Telephone: (626) 795-9900
Facsimile: (626) 577-8800
howard.kroll@cph.com
(*pro hac vice* admission being sought)

Paxton R. Guymon (#8188)
Craig H. Howe (#7552)
Lauren Y. Parry (#11420)
MILLER GUYMON, P.C.
165 Regent Street
Salt Lake City, UT 84111
Telephone: (801) 363-5600
Facsimile: (801) 363-5601
guymon@millerguymon.com
howe@millerguymon.com
parry@millerguymon.com

Attorneys for Plaintiff
1-800 Contacts, Inc.

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| 1-800 CONTACTS, INC.,<br>a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DRUGSTORE.COM, INC.,<br>a Delaware corporation, and | Case: 2:08cv00157<br>Assigned To : Campbell, Tena<br>Assign. Date : 2/26/2008<br>Description: 1800 Contacts v.<br>Drugstore.com<br><br>**COMPLAINT AND<br>JURY DEMAND** |

| VISION DIRECT INC.,<br>a Texas corporation,<br><br>                        Defendants. | |
|---|---|

Plaintiff 1-800 Contacts, Inc. ("1-800 Contacts" or "Plaintiff") for its Complaint against Defendants Vision Direct, Inc. ("Vision Direct") and Drugstore.com, Inc. ("Drugstore.com"), alleges as follows:

## NATURE OF ACTION

1.    This is a civil action for direct and contributory trademark infringement and false designation of origin under 15 U.S.C. Sections 1114(1) & 1125(a) and Utah common law; unfair competition under Utah Code Ann. Section 13-5a-103 and Utah common law; direct and contributory dilution under 15 U.S.C. Section 1125(c) and Utah Code Ann. Section 70-3a-403; deceptive trade practices under Utah Code Ann. Section 13-11a-4; intentional interference with economic relations under Utah common law; and unjust enrichment under Utah common law. This Action seeks actual, enhanced and punitive damages, accounting, restitution and disgorgement, corrective advertising, and injunctive relief, stemming from Defendants' abuse of Plaintiff's federally registered and common law trademarks and service marks, Defendants' diversion of customers away from commerce with Plaintiff, and Drugstore.com's inducement of Vision Direct to breach contractual obligations Vision Direct owed and owes to Plaintiff.

## THE PARTIES

2.    Plaintiff 1-800 Contacts, Inc. is a Delaware corporation with a principal place of business at 66 East Wadsworth Park Drive, Draper, Utah 84020.

3.      Plaintiff is informed and believes, and thereon alleges that Defendant Drugstore.com, Inc is a Delaware corporation with a principal place of business at 411 108th Ave NE, Suite 1400, Bellevue, Washington 98004.

4.      Plaintiff is informed and believes, and thereon alleges that Defendant Vision Direct, Inc. is a Texas corporation with a principal place of business at 411 108th Avenue NE, Suite 1400, Bellevue, Washington 98004.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 15 U.S.C. Section 1121(a) and 28 U.S.C. Sections 1331 and 1338(a) & (b), due to the particular federal questions presented by this case. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. Section 1367 because these claims are so related to the federal claims brought herein as to form part of the same case or controversy.

6.      This Court may assert personal jurisdiction over Defendants consonant with Due Process by virtue of the long arm statute of the State of Utah, Utah Code Ann. Sections 78-27-22 through 78-27-28.

7.      Venue is proper in this District and this Division under 28 U.S.C. Section 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated in this District and this Division, in that Plaintiff 1-800 Contacts has its principal place of business in this District and Division and is being harmed in this District and Division, and Defendants' wrongful acts are occurring in this District and Division as well as elsewhere.

## PLAINTIFF'S TRADEMARKS AND BUSINESS

8.      Plaintiff 1-800 Contacts has been and is now engaged in the business of selling and distributing contact lenses and eye care products via the Internet, mail, telephone and fax.

9.      Plaintiff is recognized as the leading distributor of contact lenses, with sales growing from $3.6 million in 1996 to $169 million in 2001 to in excess of $200 million in 2007.

10.     Plaintiff is the owner of United States service mark registration No. 2,675,866 for the word mark 1800CONTACTS, for use with "mail order and telephone order services in the field of contact lenses and related products, and electronic retailing services via computer featuring contact lenses and related products." This registration is valid and existing on the Principal Register of the United States Patent and Trademark Office ("USPTO"), and has become incontestable. A true and correct copy of the USPTO record of this registration is attached hereto as Exhibit A.

11.     Plaintiff is the owner of United States service mark registration No. 1,462,371 for the word mark LENS EXPRESS, for use with "retail store and mail order services in the field of contact lenses." This registration is valid and existing on the Principal Register of the United States Patent and Trademark Office ("USPTO"), and has become incontestable. A true and correct copy of the USPTO record of this registration is attached hereto as Exhibit B.

12.     Plaintiff is the owner of United States service mark registration No. 2,731,114 for the mark 1800 CONTACTS and design (collectively with the mark in the two immediately foregoing paragraphs, the "Registered Marks"), for use with "mail order and telephone order services in the field of contact lenses and related products, and electronic retailing services via

computer featuring contact lenses and related products." This registration is valid and existing on the Principal Register of the USPTO. A true and correct copy of the USPTO record of this registration is attached hereto as Exhibit C.

13.    Plaintiff has continuously promoted and advertised one or more of the Registered Marks in interstate commerce in the United States and throughout the world since at least as early as July 1995. Plaintiff has spent significant sums in such promotion and advertising since that time. In 2007 alone, Plaintiff spent in excess of twenty million dollars on marketing.

14.    In 2007, there were in excess of $200 million worth of retail transactions under the Registered Marks and Plaintiff's other trademarks and service marks.

15.    Through Plaintiff's actions, and because of widespread and favorable public acceptance and recognition, the Registered Marks and Plaintiff's other trademarks and service marks have become uniquely associated with, and hence identify, Plaintiff. The Registered Marks and Plaintiff's other trademarks and service marks are assets of significant value as a symbol of Plaintiff, its services, and its business goodwill.

16.    The Registered Marks are inherently distinctive and have acquired secondary meaning.

17.    The Registered Marks are famous marks.

18.    As part of its business, Plaintiff has established and operates a website at *www.1800contacts.com* for purposes of advertising and selling contact lenses and related products. Plaintiff prominently displays the Registered Marks on its website.

19.    Plaintiff derives a substantial portion of its sales from Internet sales. As a result of extensive website design and marketing efforts, millions of customers have developed strong

5

relationships with Plaintiff and return to the *www.1800contacts.com* website repeatedly to purchase their contact lenses and related products.

## DEFENDANTS' BUSINESS

20.    Defendant Drugstore.com, by itself or through one or more of its subsidiaries, has been and is now engaged in the business of selling and distributing contact lenses and eye care products, among other products, via the Internet, mail, telephone and fax, including in this District, and is a competitor of Plaintiff.

21.    Defendant Vision Direct, by itself or through one or more of its affiliates, has been and is now engaged in the business of selling and distributing contact lenses and eye care products via the Internet, mail, telephone and fax, including in this District, and is a competitor of Plaintiff.

22.    Vision Direct was acquired by Drugstore.com in December 2003, and is now a wholly owned subsidiary of Drugstore.com, either directly or through intermediate corporate entities.

## INTERNET SEARCHING AND KEYWORD ADVERTISING

23.    An Internet user desiring to find information on the Internet, including information on potential vendors of products that the user may desire, may use the services of one or more Internet "search engine" providers, such as Google, MSN, or Yahoo. Upon the user entering into a search engine provider's webpage certain words or phrases, known as "search terms," representing the information that the user desires to search for, the search engine offered by any of these providers will return a list of "links" to other websites corresponding to the

words or phrases entered. This list of websites returned on the basis of similarity or correspondence to the search terms are commonly referred to as the "organic search results."

24.    Beyond the organic search results, however, many Internet search engine providers also simultaneously present to the user paid advertisements which are also keyed to the search terms the user entered. The Google search engine, for instance, returns these paid advertisements in a section of the webpage entitled "Sponsored Links," located above or to the right of the organic search results.

25.    When purchasing advertisements with a search engine provider, an advertiser generally identifies one or more "keywords," which are words or phrases that, if entered by a user as a search term, will cause that advertiser's paid advertisement to be returned to that user. For example, either of the parties here might specify that one of its advertisements should be presented to a user if the user has entered as a search term the phrase, "contact lens."

26.    An advertiser can specify its trademark as a search engine advertising keyword. Unfortunately, many search engine providers allow a *competitor's* trademark to be specified as a keyword, thus presenting a company's advertisement to a user who may have been seeking a competitor's product.

27.    When purchasing advertisements with a search engine provider, an advertiser may also specify so-called "negative keywords," which are words or phrases that, if entered by a user as a search term, will cause that advertiser's advertisement *not* to be presented to that user.

28.    Defendants have purchased and currently purchase advertisements with various Internet search engine providers, and when purchasing such advertisements have specified and specify keywords and, at least for some period of time, have also specified negative keywords.

## THE PRIOR ACTION AND THE SETTLEMENT AGREEMENT

29.     On October 9, 2002, 1-800 Contacts filed an action (the "Prior Action") in the Federal District Court for the Southern District of New York, Case No. 02 CV 8043, naming two defendants, including Vision Direct. The Prior Action included causes of action against Vision Direct for federal trademark infringement, unfair competition under the Lanham Act, common law unfair competition, false designation of origin, dilution under the Lanham Act, dilution under New York state law, cybersquatting in violation of the Lanham Act, copyright infringement, contributory copyright infringement, and tortious interference with prospective economic advantage, with allegations that Vision Direct participated in a scheme to profit from and damage 1-800 Contact's trademarks and copyrights through bad faith use of Internet domain names and Internet advertising.

30.     On June 24, 2004, 1-800 Contacts and Vision Direct entered into a settlement agreement (the "Settlement Agreement") that led to dismissal of the Prior Action with prejudice on July 22, 2004. A true and correct copy of the Settlement Agreement is attached hereto as Exhibit D. Although Vision Direct had by that time been acquired by Drugstore.com, Drugstore.com was not a party to the Settlement Agreement.

31.     In entering into the Settlement Agreement, Vision Direct agreed to refrain from committing any of certain acts defined as "Prohibited Acts" by the Settlement Agreement. Section 4 of the Settlement Agreement includes as Prohibited Acts:

> d.     causing a Party's website or Internet advertisement to appear in response to any Internet search for the other Party's brand name, trademarks or URLs;
>
> e.     causing a Party's brand name, or link to the Party's Restricted Websites to appear as a listing in the search results page of an Internet

8

search engine, when a user specifically searches for the other Party's brand name, trademarks, or URLs;

* * *

i.      using the other Party's trademark or brand name to redirect users from the other Party's Restricted Websites . . . .

## VIOLATION OF THE SETTLEMENT AGREEMENT

32.    While the Settlement Agreement allows its parties to specify as Internet search engine keywords generic words such as "contacts," it expressly prohibits Vision Direct from causing advertisements for Vision Direct to appear when an Internet search user searches for Plaintiff's brand names or trademarks, such as the phrases constituting the Registered Marks, 1800CONTACTS and 1800 CONTACTS, or Plaintiff's trade name of 1-800 CONTACTS.

33.    Plaintiff is informed and believes, and thereon alleges that at some time following Drugstore.com's acquisition of Vision Direct, Drugstore.com took over all direct operational control and activities of Vision Direct, including the placement of Internet search engine advertising and the specification of keywords and negative keywords.

34.    For a period of time following execution of the Settlement Agreement, paid advertisements for Vision Direct did not appear in Internet search engine results when phrases constituting the Registered Marks were entered as search terms. Plaintiff is informed and believes, and thereon alleges that during this period Defendant Drugstore.com and/or Vision Direct achieved this outcome by specifying negative keywords when purchasing Internet search engine advertising, and were thus able to comply with the prohibitions of the Settlement Agreement.

35.    Without cause or justification, and in spite of the previous course of conduct, Defendants began, no later than July 27, 2007, to cause paid advertisements for Vision Direct to

9

appear in Internet search engine results when phrases constituting the Registered Marks were entered as search terms. Plaintiff is informed and believes, and thereon alleges that Defendants caused this outcome by ceasing to specify negative keywords when purchasing Internet search engine advertising.

36.    On July 27, 2007, Plaintiff sent to Defendants a written notice of the breach of the Settlement Agreement and demand to cure; however, Defendants failed to cure the breach or to prevent paid advertisements for Vision Direct from appearing in Internet search engine results when phrases constituting the Registered Marks were entered as search terms. On October 12, 2007, Plaintiff's attorneys sent another notice of breach and demand to cure to Defendants. A true and correct copy of Plaintiff's October 12, 2007 written demand, which attaches Plaintiff's prior July 27, 2007 written demand, is attached hereto as Exhibit E. Defendants have in response affirmatively and explicitly refused to cure the breach or to prevent paid advertisements for Vision Direct from appearing in Internet search engine results when phrases constituting the Registered Marks are entered as search terms.

37.    Defendants have placed and are placing with search engine providers paid advertisements for Vision Direct that appear in Internet search engine results when phrases constituting the Registered Marks are entered as search terms, in violation of Vision Direct's obligations under the Settlement Agreement. Exhibit F attached hereto comprises true and correct printouts of the results of searches performed on the Google search engine on February 23, 2008, using the Registered Marks or variants thereof as search terms, which, as indicated by the portions circled in red, each returned a paid advertisement for Vision Direct, indicating a breach of the Settlement Agreement.

38.    Vision Direct's breach of the Settlement Agreement was influenced, induced, procured, caused, performed, and effected, in whole or in part, by Drugstore.com.

## HARM TO PLAINTIFF

39.    Plaintiff has not released or excused Vision Direct from Vision Direct's obligations to Plaintiff under the Settlement Agreement.

40.    Plaintiff has not given Defendants license or permission to use the Registered Marks or any other of Plaintiff's trademarks or service marks to promote Defendants' business or to divert customers from Plaintiff.

41.    Defendants knew or should have known of Plaintiff's rights in the Registered Marks and Plaintiff's other trademarks and service marks.

42.    The use by Defendants of Plaintiff's famous Registered Marks to drive customer traffic away from Plaintiff's website and to the Vision Direct website reduces the ability of Plaintiff's famous Registered Marks to distinguish Plaintiff's services and identify Plaintiff as the source of those services.

43.    The use by Defendants of Plaintiff's Registered Marks to drive customer traffic away from Plaintiff's website and to the Vision Direct website is likely to confuse and deceive Plaintiff's current customers, potential customers, and the general public as to the origin and sponsorship of Defendants' services and/or Plaintiff's services, and trades upon the business goodwill and substantial customer recognition in Plaintiff's favor associated with the Registered Marks.

44.    Confusion regarding Defendants' implied affiliation with Plaintiff has damaged and will continue to damage Plaintiff's reputation and customer relationships.

11

45.    Defendants' actions steal customers from Plaintiff, erode the effectiveness of Plaintiff's Internet sales and marketing operations, and disrupt Plaintiff's business. If left unchecked, Defendants' actions may imperil the economic validity of Plaintiff's business.

46.    Plaintiff is informed and believes, and thereon alleges that Defendants acted willfully and maliciously and with the intent fraudulently to infringe upon Plaintiff's Registered Marks and to damage Plaintiff, with knowing and reckless indifference toward and disregard of Plaintiff's rights.

47.    Defendants' actions have caused damage and irreparable injury to Plaintiff, and further damage and irreparable injury will result if Defendants are allowed to continue to violate Plaintiff's rights.

48.    Plaintiff has no adequate remedy at law against Defendants' actions in violation of Plaintiff's rights.

## FIRST CLAIM FOR RELIEF
### (against all Defendants)
### Direct Infringement of Federally Registered Service Marks

49.    Plaintiff hereby repeats and realleges paragraphs 1 through 48 hereinabove as though fully set forth herein.

50.    Plaintiff is the registrant on the USPTO Principal Register of the Registered Marks.

51.    Plaintiff's Registered Marks are valid and inherently distinctive, and are further presumed to be valid, distinctive, and the property of Plaintiff due to their registration on the USPTO Principal Register.

52.     Defendants have used in commerce a reproduction, counterfeit, copy. or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

53.     Defendants' use described immediately above was without the consent of the registrant.

54.     Plaintiff is informed and believes, and thereon alleges that Defendants' above-described acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

55.     Plaintiff is informed and believes, and thereon alleges that Defendants did and continue to intentionally use such reproduction, counterfeit, copy, or colorable imitation of a registered mark with complete and conscious disregard of Plaintiff's rights and with the intent to trade on the business goodwill Plaintiff has created.

56.     Defendants' above-described acts constitute infringement of a registered service mark under 15 U.S.C. Section 1114(1), in that Defendants have used a reproduction, counterfeit, copy, or colorable imitation of a registered mark, in this District and elsewhere, alone or in combination with other words and other items, in connection with their services which are likely to cause confusion or mistake or to deceive the public that those services are authorized, sponsored by, or affiliated with Plaintiff, and such services have entered into commerce which may be regulated by Congress.

13

57.    Plaintiff and its business goodwill have been damaged and are likely to be damaged in the future by Defendants' service mark infringement, by reason of the likelihood that current and prospective consumers of Plaintiff's services will be confused as to the source, sponsorship, or affiliation of Plaintiff's services and/or Defendants' services.

58.    Defendants have unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

59.    By reason of Defendants' acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Defendants' conduct is permanently enjoined.

60.    This is an exceptional case within the meaning of 15 U.S.C. Section 1117(a).

**SECOND CLAIM FOR RELIEF**

**(against Drugstore.com)**

**Contributory Infringement of Federally Registered Service Marks**

61.    Plaintiff hereby repeats and realleges paragraphs 1 through 60 hereinabove as though fully set forth herein.

62.    Plaintiff is the registrant on the USPTO Principal Register of the Registered Marks.

63.    Plaintiff's Registered Marks are valid and inherently distinctive, and are further presumed to be valid, distinctive, and the property of Plaintiff due to their registration on the Principal Register of the USPTO.

64.    Drugstore.com has intentionally induced Vision Direct to use in commerce a reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the

sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

65.     The use described immediately above was without the consent of the registrant.

66.     Plaintiff is informed and believes, and thereon alleges that Drugstore.com's above-described acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

67.     Plaintiff is informed and believes, and thereon alleges that Drugstore.com did and continues to intentionally and with complete and conscious disregard of Plaintiff's rights and with the intent to trade on the business goodwill Plaintiff has created, induce Vision Direct to infringe Plaintiff's Registered Marks.

68.     Drugstore.com's above-described acts constitute contributory infringement of a registered service mark under 15 U.S.C. Section 1114(1), in that Drugstore.com has intentionally induced the use by another of a reproduction, counterfeit, copy, or colorable imitation of a registered mark, in this District and elsewhere, alone or in combination with other words and other items, in connection with such other's services which are likely to cause confusion or mistake or to deceive the public that such other's services are authorized, sponsored by, or affiliated with Plaintiff, and such services have entered into commerce which may be regulated by Congress.

69.     Plaintiff and its business goodwill have been damaged and are likely to be damaged in the future by Drugstore.com's contributory service mark infringement, by reason of the likelihood that current and prospective consumers of Plaintiff's services will be confused as to the source, sponsorship, or affiliation of Plaintiff's services and/or Defendants' services.

15

70.    Drugstore.com has unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

71.    By reason of Drugstore.com's acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Drugstore.com's conduct is permanently enjoined.

72.    This is an exceptional case within the meaning of 15 U.S.C. Section 1117(a).

### THIRD CLAIM FOR RELIEF
#### (against all Defendants)
#### Federal Direct Infringement of All Trademarks and Service Marks

73.    Plaintiff hereby repeats and realleges paragraphs 1 through 72 hereinabove as though fully set forth herein.

74.    Plaintiff owns valid common law and federally registered trademarks and service marks entitled to protection under the Lanham Act.

75.    Defendants in connection with goods and services have used in commerce words, terms, names, symbols, or devices, in this District and elsewhere, alone or in combination with other words and other items, that are likely to cause confusion, cause mistake, and deceive that the goods, services, or commercial activities of Defendants originate from, are sponsored by, or are approved by Plaintiff.

76.    Plaintiff is informed and believes, and thereon alleges that Defendants continue intentionally to make such use of such words, terms, names, symbols, or devices with complete and conscious disregard of Plaintiff's rights and with the intent to trade on the business goodwill Plaintiff has created.

16

77.     Defendants' above-described acts constitute infringement of Plaintiff's trademarks and service marks under 15 U.S.C. Section 1125(a), in that Defendants have used words, terms, names, symbols, or devices in connection with Defendants' goods and services which are likely to cause confusion or mistake or to deceive the public that such goods and services are authorized, sponsored by, or affiliated with Plaintiff, and such goods and services have entered into commerce which may be regulated by Congress.

78.     Plaintiff and its business goodwill have been damaged and are likely to be damaged in the future by Defendants' trademark and service mark infringement, by reason of the likelihood that current and prospective consumers of Plaintiff's goods and services will be confused as to the source, sponsorship, or affiliation of Plaintiff's goods and services and/or Defendants' goods and services.

79.     Defendants have unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

80.     By reason of Defendants' acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Defendants' conduct is permanently enjoined.

81.     This is an exceptional case within the meaning of 15 U.S.C. Section 1117(a).

## FOURTH CLAIM FOR RELIEF

### (against Drugstore.com)

**Federal Contributory Infringement of All Trademarks and Service Marks**

82.     Plaintiff hereby repeats and realleges paragraphs 1 through 81 hereinabove as though fully set forth herein.

83.     Plaintiff owns valid common law and federally registered trademarks and service marks entitled to protection under the Lanham Act.

84.     Vision Direct in connection with goods and services has used in commerce words, terms, names, symbols, or devices, in this District and elsewhere, alone or in combination with other words and other items, that are likely to cause confusion, cause mistake, and deceive that the goods, services, or commercial activities of Vision Direct originate from, are sponsored by, or are approved by Plaintiff.

85.     Plaintiff is informed and believes, and thereon alleges that Drugstore.com continues intentionally and with complete and conscious disregard of Plaintiff's rights and with the intent to trade on the business goodwill Plaintiff has created, to cause Vision Direct to make such use of such words, terms, names, symbols, or devices, therefore intentionally inducing Vision Direct to infringe Plaintiff's trademarks and service marks.

86.     Drugstore.com's above-described acts constitute contributory infringement of Plaintiff's trademarks and service marks under 15 U.S.C. Section 1125(a), in that Drugstore.com has intentionally induced the use by another of words, terms, names, symbols, or devices in connection with Defendants' goods and services which are likely to cause confusion or mistake or to deceive the public that such goods and services are authorized, sponsored by, or affiliated

18

with Plaintiff, and such goods and services have entered into commerce which may be regulated by Congress.

87.    Plaintiff and its business goodwill have been damaged and are likely to be damaged in the future by Drugstore.com's contributory trademark and service mark infringement, by reason of the likelihood that current and prospective consumers of Plaintiff's goods and services will be confused as to the source, sponsorship, or affiliation of Plaintiff's goods and services and/or Defendants' goods and services.

88.    Drugstore.com has unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

89.    By reason of Drustore.com's acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Drugstore.com's conduct is permanently enjoined.

90.    This is an exceptional case within the meaning of 15 U.S.C. Section 1117(a).

## FIFTH CLAIM FOR RELIEF
### (against all Defendants)
### Federal Direct False Designation of Origin

91.    Plaintiff hereby repeats and realleges paragraphs 1 through 90 hereinabove as though fully set forth herein.

92.    Plaintiff owns valid common law and federally registered trademarks and service marks entitled to protection under the Lanham Act.

93.    Defendants in connection with goods and services have used in commerce false designations of origin, in this District and elsewhere, that are likely to cause confusion, cause

mistake, and deceive as to the origin of Plaintiff's goods, services, or commercial activities and/or Defendants' goods, services, or commercial activities.

94.    Plaintiff is informed and believes, and thereon alleges that Defendants continue intentionally to use such false designations of origin with complete and conscious disregard of Plaintiff's rights and with the intent to trade on the business goodwill Plaintiff has created.

95.    Defendants' above-described acts constitute false designation of origin under 15 U.S.C. Section 1125(a), in that Defendants have used such false designations of origin in connection with Defendants' goods, services, or commercial activities which are likely to cause confusion or mistake or to deceive the public that such goods, services, or commercial activities are authorized, sponsored by, or affiliated with Plaintiff, and such goods, services, or commercial activities have entered into commerce which may be regulated by Congress.

96.    Plaintiff and its business goodwill have been damaged and are likely to be damaged in the future by Defendants' false designation of origin, by reason of the likelihood that current and prospective consumers of Plaintiff's goods and services will be confused as to the source, sponsorship, or affiliation of Plaintiff's goods, services, or commercial activities and/or Defendants' goods, services, or commercial activities.

97.    Defendants have unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

98.    By reason of Defendants' acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Defendants' conduct is permanently enjoined.

99.    This is an exceptional case within the meaning of 15 U.S.C. Section 1117(a).

## SIXTH CLAIM FOR RELIEF

### (against Drugstore.com)

### Federal Contributory False Designation of Origin

100.   Plaintiff hereby repeats and realleges paragraphs 1 through 99 hereinabove as though fully set forth herein.

101.   Plaintiff owns valid common law and federally registered trademarks and service marks entitled to protection under the Lanham Act.

102.   Drugstore.com has caused others in connection with goods and services to use in commerce false designations of origin, in this District and elsewhere, that are likely to cause confusion, cause mistake, and deceive as to the origin of Plaintiff's goods, services, or commercial activities, and/or Defendants' goods, services, or commercial activities.

103.   Plaintiff is informed and believes, and thereon alleges that Drugstore.com continues intentionally and with complete and conscious disregard of Plaintiff's rights and with the intent to trade on the business goodwill Plaintiff has created, to cause others to use such false designations of origin.

104.   Drugstore.com's above-described acts constitute contributory false designation of origin under 15 U.S.C. Section 1125(a), in that Drugstore.com has intentionally caused others to use false designations of origin in connection with Defendants' goods, services, or commercial activities which are likely to cause confusion or mistake or to deceive the public that such goods, services, or commercial activities are authorized, sponsored by, or affiliated with Plaintiff, and such goods, services, or commercial activities have entered into commerce which may be regulated by Congress.

105.    Plaintiff and its business goodwill have been damaged and are likely to be damaged in the future by Drugstore.com's contributory false designation of origin, by reason of the likelihood that current and prospective consumers of Plaintiff's goods, services, or commercial activities will be confused as to the source, sponsorship, or affiliation of Plaintiff's goods, services, or commercial activities and/or Defendants' goods, services, or commercial activities.

106.    Drugstore.com has unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

107.    By reason of Drugstore.com's acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Drugstore.com's conduct is permanently enjoined.

108.    This is an exceptional case within the meaning of 15 U.S.C. Section 1117(a).

**SEVENTH CLAIM FOR RELIEF**

**(against all Defendants)**

**Common Law Trademark and Service Mark Infringement**

109.    Plaintiff hereby repeats and realleges paragraphs 1 through 108 hereinabove as though fully set forth herein.

110.    Plaintiff has used certain marks in connection with the sale, distribution, offering for sale, or advertising of goods or services (the "Common Law Marks").

111.    The Common Law Marks are inherently distinctive and have acquired secondary meaning.

112.    The above-described acts of Defendants constitute trademark and service mark infringement under the common law of the State of Utah, in that Defendants have used in

22

connection with their goods and services trademarks and service marks which are likely to cause confusion or mistake or to deceive the public that their goods and services are authorized, sponsored by, or affiliated with Plaintiff.

113.    Plaintiff and its business goodwill have been damaged and are likely to be damaged in the future by Defendants' common law trademark and service mark infringement, by reason of the likelihood that current and prospective consumers of Plaintiff's goods and services will be confused as to the source, sponsorship, or affiliation of Plaintiff's goods and services and/or Defendants' goods and services.

114.    Defendants have unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

115.    By reason of Defendants' acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Defendants' conduct is permanently enjoined.

116.    Plaintiff is informed and believes, and thereon alleges that Defendants acted willfully and maliciously and with the intent fraudulently to infringe upon Plaintiff's Common Law Marks and to damage Plaintiff, with knowing and reckless indifference toward and disregard of Plaintiff's rights.

## EIGHTH CLAIM FOR RELIEF
### (against all Defendants)
### State Statutory Unfair Competition

117.    Plaintiff hereby repeats and realleges paragraphs 1 through 116 hereinabove as though fully set forth herein.

118.    The above-described acts of Defendants constitute unfair competition under Utah Code Ann. Section 13-5a-103, in that Defendants have engaged in an intentional business act or practice that is unlawful, unfair, or fraudulent, leads to a material diminution in the value of intellectual property, and constitutes infringement of a trademark/service mark and a trade name.

119.    Plaintiff and its business goodwill have been damaged and are likely to be damaged in the future by Defendants' actions by reason of the likelihood that current and prospective consumers of Plaintiff's goods and services will be confused as to the source, sponsorship, or affiliation of Plaintiff's goods and services and/or Defendants' goods and services.

120.    Defendants have unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

121.    By reason of Defendants' acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Defendants' conduct is permanently enjoined.

122.    Plaintiff is informed and believes, and thereon alleges that Defendants acted willfully and maliciously and with the intent fraudulently to damage Plaintiff and Plaintiff's trademarks and service marks, with knowing and reckless indifference toward and disregard of Plaintiff's rights.

## NINTH CLAIM FOR RELIEF
### (against all Defendants)
### Common Law Unfair Competition

123.    Plaintiff hereby repeats and realleges paragraphs 1 through 122 hereinabove as though fully set forth herein.

24

124.    The above-described acts of Defendants constitute unfair competition under the common law of the State of Utah, in that Defendants by their acts have unfairly competed and are unfairly competing with Plaintiff.

125.    Plaintiff and its business goodwill have been damaged and are likely to be damaged in the future by Defendants' actions by reason of the likelihood that current and prospective consumers of Plaintiff's goods and services will be confused as to the source, sponsorship, or affiliation of Plaintiff's goods and services and/or Defendants' goods and services.

126.    Defendants have unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

127.    By reason of Defendants' acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Defendants' conduct is permanently enjoined.

128.    Plaintiff is informed and believes, and thereon alleges that Defendants acted willfully and maliciously and with the intent fraudulently to unfairly compete with and damage Plaintiff, with knowing and reckless indifference toward and disregard of Plaintiff's rights.

## TENTH CLAIM FOR RELIEF
### (against all Defendants)
### Federal Direct Trademark and Service Mark Dilution

129.    Plaintiff hereby repeats and realleges paragraphs 1 through 128 hereinabove as though fully set forth herein.

130.    Plaintiff owns valid common law and federally registered trademarks and service marks entitled to protection under the Lanham Act.

25

131.    The common law and federally registered trademarks and service marks owned by Plaintiff are famous within the meaning of 15 U.S.C. Section 1125(c), as they are widely recognized by the general consuming public of the United States as a designation of source of Plaintiff's goods and services.

132.    The common law and federally registered service marks owned by Plaintiff are inherently distinctive or have acquired distinctiveness.

133.    The above-described acts of Defendants constitute dilution under 15 U.S.C. Section 1125(c), in that, after Plaintiff's trademarks and service marks became famous, Defendants began use of marks or trade names that are likely to blur and impair the distinctiveness of Plaintiff's famous marks, thus reducing the ability of those marks to distinguish Plaintiff's goods and services and identify Plaintiff as the source of those goods and services.

134.    Plaintiff and its business goodwill have been damaged and are likely to be damaged in the future by Defendants' actions by reason of the likelihood that Plaintiff's famous marks are likely to be rendered less able to distinguish Plaintiff's goods and services to current and prospective consumers of Plaintiff's goods and services and identify Plaintiff as the source of those goods and services.

135.    Defendants have unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

136.    By reason of Defendants' acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Defendants' conduct is permanently enjoined.

137.     Plaintiff is informed and believes, and thereon alleges that Defendants continue intentionally to blur and dilute Plaintiff's famous trademarks and service marks with complete and conscious disregard of Plaintiff's rights and with the intent to trade on the business goodwill Plaintiff has created.

138.     This is an exceptional case within the meaning of 15 U.S.C. Section 1117(a).

### ELEVENTH CLAIM FOR RELIEF

### (against Drugstore.com)

### Federal Contributory Trademark and Service Mark Dilution

139.     Plaintiff hereby repeats and realleges paragraphs 1 through 138 hereinabove as though fully set forth herein.

140.     Plaintiff owns valid common law and federally registered trademarks and service marks entitled to protection under the Lanham Act.

141.     The common law and federally registered trademarks and service marks owned by Plaintiff are famous within the meaning of 15 U.S.C. Section 1125(c), as they are widely recognized by the general consuming public of the United States as a designation of source of Plaintiff's goods and services.

142.     The common law and federally registered trademarks and service marks owned by Plaintiff are inherently distinctive or have acquired distinctiveness.

143.     The above-described acts of Drugstore.com constitute contributory dilution under 15 U.S.C. Section 1125(c), in that, after Plaintiff's trademarks and service marks became famous, Drugstore.com induced others to begin use of marks or trade names that are likely to blur and impair the distinctiveness of Plaintiff's famous marks, thus reducing the ability of those

marks to distinguish Plaintiff's goods and services and identify Plaintiff as the source of those goods and services.

144.    Plaintiff and its business goodwill have been damaged and are likely to be damaged in the future by Drugstore.com's actions by reason of the likelihood that Plaintiff's famous marks are likely to be rendered less able to distinguish Plaintiff's goods and services to current and prospective consumers of Plaintiff's goods and services and identify Plaintiff as the source of those goods and services.

145.    Drugstore.com has unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

146.    By reason of Drugstore.com's acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Drugstore.com's conduct is permanently enjoined.

147.    Plaintiff is informed and believes, and thereon alleges that Drugstore.com continues intentionally to cause others to blur and dilute Plaintiff's famous trademarks and service marks with complete and conscious disregard of Plaintiff's rights and with the intent to trade on the business goodwill Plaintiff has created.

148.    This is an exceptional case within the meaning of 15 U.S.C. Section 1117(a).

**TWELFTH CLAIM FOR RELIEF**

**(against all Defendants)**

**State Statutory Trademark Dilution**

149.    Plaintiff hereby repeats and realleges paragraphs 1 through 148 hereinabove as though fully set forth herein.

150.    Plaintiff owns valid common law and federally registered service marks entitled to protection under Utah Code Ann. Section 70-3a-403.

151.    The common law and federally registered service marks owned by Plaintiff are famous in the State of Utah within the meaning of Utah Code Ann. Section 70-3a-403.

152.    The above-described acts of Defendants constitute dilution under Utah Code Ann. Section 70-3a-403, in that, after Plaintiff's trademarks and service marks became famous in the State of Utah, Defendants began commercial use of such marks in a way that causes dilution of the distinctive quality of such marks, thus reducing the ability of those marks to distinguish Plaintiff's goods and services and identify Plaintiff as the source of those goods and services.

153.    Plaintiff and its business goodwill have been damaged and are likely to be damaged in the future by Defendants' actions, by reason of the likelihood that Plaintiff's famous marks will be rendered less able to distinguish Plaintiff's services to purchasers and prospective consumers of Plaintiff's services and identify Plaintiff as the source of those services.

154.    Defendants have unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

155.    By reason of Defendants' acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Defendants' conduct is permanently enjoined.

156.    Plaintiff is informed and believes, and thereon alleges that Defendants in their actions willfully intended to trade on Plaintiff's reputation and to cause dilution of Plaintiff's famous marks, acting maliciously and with intent fraudulently to damage Plaintiff and Plaintiff's

29

trademarks and service marks, and with knowing and reckless indifference toward and disregard of Plaintiff's rights.

## THIRTEENTH CLAIM FOR RELIEF
### (against All Defendants)
### State Statutory Deceptive Trade Practices

157.    Plaintiff hereby repeats and realleges paragraphs 1 through 156 hereinabove as though fully set forth herein.

158.    The above-described acts of Defendants constitute deceptive trade practices under Utah Code Ann. Section 13-11a-4, in that, in the course of Defendants' business, vocation, or occupation, Defendants have passed off and are passing off goods or services as those of another, have caused and are causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services, have caused and are causing likelihood of confusion or of misunderstanding as to affiliation, connection, association with, or certification by another, and have engaged and are engaging in other conduct which similarly creates a likelihood of confusion or of misunderstanding.

159.    Plaintiff notified Defendants and demanded Defendants cease their unlawful conduct; by virtue of such notice, Defendants were given implicit notice of their violation of Title 13, Chapter 11a of the Utah Code, and were implicitly provided an opportunity to promulgate a correction notice by the same media as the violating advertisement. However, Defendants did not promulgate a correction notice within ten days of receipt of such notice.

160.    Defendant have unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

161.    By reason of Defendants' acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Defendants' conduct is permanently enjoined.

162.    Plaintiff is informed and believes, and thereon alleges that Defendants acted willfully and maliciously and with the intent fraudulently to engage in deceptive trade practices and to damage Plaintiff, with knowing and reckless indifference toward and disregard of Plaintiff's rights.

## FOURTEENTH CLAIM FOR RELIEF

### (against Drugstore.com)

### Intentional Interference with Economic Relations

### (as to Vision Direct's breach of the Settlement Agreement)

163.    Plaintiff hereby repeats and realleges paragraphs 1 through 162 hereinabove as though fully set forth herein.

164.    Through the above-described acts of Drugstore.com causing Vision Direct to breach the Settlement Agreement between Vision Direct and Plaintiff, Drugstore.com has intentionally interfered with Plaintiff's existing economic relations.

165.    Drugstore.com interfered with Plaintiff's existing economic relations for an improper purpose, in that Drugstore.com's predominant purpose was to injure Plaintiff, and Drugstore.com interfered by improper means, in that inducing breach of contract is contrary to the common law of the State of Utah and violates established standards of commerce.

166.    Drugstore.com's interference has caused injury to Plaintiff and Plaintiff's business goodwill, and is likely to cause injury to Plaintiff and Plaintiff's business goodwill in the future, by improperly destroying contractual protections against: (a) the likelihood of

confusing and deceiving Plaintiff's current and potential customers and the general public as to the origin and sponsorship of Plaintiff's goods and services and/or Vision Direct's goods and services; (b) reduction of the ability of Plaintiff's famous Registered Marks to distinguish Plaintiff's goods and services and identify Plaintiff as the source of those goods and services; (c) trading upon the business goodwill and substantial customer recognition associated with Plaintiff's trademarks and service marks; and (d) reduction of Plaintiff's website-based commerce and sales.

167.    Drugstore.com has unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

168.    By reason of Drugstore.com's acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Drugstore.com's conduct is permanently enjoined.

169.    Plaintiff is informed and believes, and thereon alleges that Drugstore.com's interference was and is willful and malicious, with intent fraudulently to infringe upon and damage Plaintiff's trademarks and service marks and to damage Plaintiff, and with knowing and reckless indifference toward and disregard of Plaintiff's rights.

### FIFTEENTH CLAIM FOR RELIEF
#### (against all Defendants)
#### Intentional Interference with Economic Relations
#### (as to customers diverted from Plaintiff's website)

170.    Plaintiff hereby repeats and realleges paragraphs 1 through 169 hereinabove as though fully set forth herein.

171.    Many of Plaintiff's customers regularly and repeatedly purchase contact lenses and related products through Plaintiff's website. It is likely that such customers and others will desire to visit or continue to visit Plaintiff's website and there purchase Plaintiff's goods and consume Plaintiff's services in the future.

172.    Many visitors to Plaintiff's website engage in commerce with Plaintiff once they reach the website, and absent Defendants' actions driving Plaintiff's current and potential customers away from Plaintiff's website and toward Vision Direct's website, it is likely that Plaintiff would have realized and would realize in the future additional website-based and other sales from these existing and new customers.

173.    Defendants knew or should have known of the existence of Plaintiff's reasonable expectation of future transactions with these returning and future customers.

174.    Through the above-described acts of Defendants driving customers away from Plaintiff's website and to the Vision Direct website instead, Defendants intentionally interfered with Plaintiff's potential economic relations with such returning and future customers.

175.    Defendants interfered with Plaintiff's potential economic relations for an improper purpose, in that Defendants' predominant purpose was to injure Plaintiff, and Defendants interfered by improper means, in that Plaintiff's current and potential customers were driven away from Plaintiff's website through trademark infringement, false designation of origin, dilution, and acts deemed by Utah statutes to be unfair competition and deceptive trade practices, all of which violates state and federal law and established standards of commerce.

176.    Defendants' interference has caused injury to Plaintiff and Plaintiff's business goodwill, and is likely to cause injury to Plaintiff and Plaintiff's business goodwill in the future,

by creating the likelihood of confusing and deceiving Plaintiff's current and potential customers and the general public as to the origin and sponsorship of Plaintiff's goods and services and/or Defendants' goods and services; by reducing the ability of Plaintiff's famous Registered Marks to distinguish Plaintiff's goods and services and identify Plaintiff as the source of those goods and services; by trading upon the business goodwill and substantial customer recognition associated with Plaintiff's trademarks and service marks; and by reducing Plaintiff's website-based commerce and sales.

177.    Defendants have unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

178.    By reason of Defendants' acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Defendants' conduct is permanently enjoined.

179.    Plaintiff is informed and believes, and thereon alleges that Defendants' interference was and is willful and malicious, with intent fraudulently to infringe upon and damage Plaintiff's trademarks and service marks and to damage Plaintiff, and with knowing and reckless indifference toward and disregard of Plaintiff's rights.

### SIXTEENTH CLAIM FOR RELIEF
#### (against all Defendants)
#### Unjust Enrichment

180.    Plaintiff hereby repeats and realleges paragraphs 1 through 179 hereinabove as though fully set forth herein.

181.    Defendants have unfairly profited from, and have been unjustly enriched by, their acts as alleged herein.

182.    At all relevant times, Defendants have been aware of the unfair profit, benefits, and unjust enrichment arising from their acts as alleged herein.

183.    Under the circumstances of this Action, it is inequitable for Defendants to retain such profits and benefits.

184.    As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and its business goodwill have suffered, and will continue to suffer, damages as alleged more fully above.

<u>**REQUEST FOR RELIEF**</u>

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

1.    For a preliminary and permanent injunction prohibiting Defendants, their officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with them, from engaging in any of the following:

(a)    placing or maintaining with any search engine provider any advertisement that appears in Internet search engine results when any words or phrases identical or substantially similar to any of Plaintiff's trademarks, service marks, or trade name are entered as search terms, or causing any other entity to do so;

(b)    infringing any of Plaintiff's federally registered or common law trademarks or service marks, or causing any other entity to do so;

(c)    diluting, blurring, or tarnishing any of Plaintiff's famous trademarks or service marks, or causing any other entity to do so;

(d)    making any false designations of origin, descriptions, representations or suggestions that Plaintiff is the source, sponsor, or in any way affiliated with Defendants or their websites, products or services, or causing any other entity to do so;

(e)    engaging in any unfair or deceptive advertising or trade practice with respect or Plaintiff, or causing any other entity to do so; or

(f)    otherwise unfairly competing with Plaintiff in any manner whatsoever, or causing any other entity to do so.

2.    For a preliminary and permanent injunction prohibiting Drugstore.com, its officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with them, from inducing Vision Direct to breach the Settlement Agreement, or causing any other entity to so induce.

3.    For an order directing Defendants to file with this Court and serve on Plaintiff within thirty (30) days after service of the injunction, a report in writing and under oath describing in detail the manner and form in which Defendants have complied with the orders of this Court.

4.    For an order directing an accounting to determine all gains, profits, savings, and advantages obtained by Defendants as a result of their wrongful acts.

5.    For restitution to Plaintiff of all gains, profits, savings, and advantages obtained by Defendants as a result of their wrongful acts.

6.    For an award of all actual damages sustained by Plaintiff and all profits realized by Defendants as a result of their wrongful acts, and that such damages and/or profits be trebled and/or enhanced to the maximum amount provided by law.

36

7.    For an award of an amount sufficient to conduct a corrective advertising campaign to dispel the effects of Defendants' wrongful conduct and confusing and misleading advertising.

8.    For punitive damages under Utah statutes and common law in an amount sufficient to deter other and future similar conduct by Defendants and others.

9.    For prejudgment interest.

10.    For all of Plaintiff's costs of this Action, including attorneys' fees.

11.    For such other or further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff 1-800 Contacts, pursuant to Federal Rule of Civil Procedure 38, hereby demands a trial by jury of all issues so triable.

DATED: February 26, 2008.

Respectfully submitted,

MILLER GUYMON, P.C.

Paxton R. Guymon
Craig H. Howe
Lauren Y. Parry

CHRISTIE, PARKER & HALE, LLP
David J. Steele
Howard A. Kroll
Gary Dukarich
(*pro hac vice* admission being sought)

Attorneys for Plaintiff 1-800 Contacts, Inc.

37