Glenn C. Colton
gcolton@wsgr.com
Jessica L. Margolis
jmargolis@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION
1301 Avenue of the Americas, 40th Floor
New York, New York  10019
Tel: 212.999.5800

*Attorneys for Defendant/Counterclaim-Plaintiff
Vision Direct Inc.*


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 1-800 CONTACTS, INC. | Case No. 08 CV 1949 (GBD) |
| Plaintiff/Counterclaim-Defendant, | |
| - against - | ECF CASE |
| VISION DIRECT INC. | |
| Defendant/Counterclaim-Plaintiff. | |

**MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR DISMISSAL OF DEFENDANT'S
<u>COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(b)(6)</u>**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .............................................................................................................................2

I.      THE PRIOR ACTION..........................................................................................................2

II.     THE INSTANT DISPUTE ..................................................................................................4

ARGUMENT ..................................................................................................................................6

I.      THE SETTLEMENT AGREEMENT'S FORUM SELECTION CLAUSE
REQUIRES PLAINTIFF'S CLAIMS TO BE BROUGHT IN NEW YORK .....................6

        A.     THE FORUM SELECTION CLAUSE IS BROADLY DRAFTED..........................................7

        B.     PLAINTIFF'S CLAIMS IN THE UTAH FEDERAL ACTION CLEARLY FALL
             WITHIN THE BROAD SCOPE OF THE FORUM SELECTION CLAUSE............................9

            1.     Operative Facts Test ................................................................................9

            2.     Plaintiff's Claims Relate To The Rights And Duties
                  Covered By The Contract ........................................................................11

II.     PLAINTIFF'S MOTION TO DISMISS VISION DIRECT'S SECOND
COUNTERCLAIM SHOULD BE DENIED.....................................................................13

CONCLUSION.............................................................................................................................14

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*1-800 Contacts, Inc. v. WhenU.com*, 309 F. Supp. 2d 467 (S.D.N.Y. 2003), *rev'd*,
    414 F.3d 400 (2d Cir. 2005) .................................................................................................... 2, 3

*ADT Sec. Servs., Inc. v. Apex Alarm, LLC*, 430 F. Supp. 2d 1199 (D. Colo. 2006) ........................ 9

*Beal Sav. Bank v. Sommer*, 865 N.E.2d 1210 (N.Y. 2007) .............................................................. 9

*Cheever v. Academy Chicago, Ltd.*, 685 F. Supp. 914 (S.D.N.Y. 1988) ........................................ 12

*Corcovado Music Corp. v. Hollis Music, Inc.*, 981 F.2d 679 (2d Cir. 1993) .................................. 8

*Dan-Dee International, Ltd. v. Kmart Corp.*, No. 99 Civ. 11689, 2000 WL
    1346865 (S.D.N.Y. Sept. 19, 2000) ........................................................................................ 12

*Lambert v. Kysar*, 983 F.2d 1110 (1st Cir. 1993) .......................................................................... 10

*Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509 (9th Cir. 1988) ........................... 11, 12

*Mortgage Plus, Inc. v. DocMagic, Inc.*, No. 03-2582-GTV-DJW, 2004 WL
    2331918 (D. Kan. Aug. 23, 2004) ........................................................................................ 9, 10

*Phillips v. Audio Active Ltd.*, 494 F.3d 378 (2d Cir. 2007) ............................................. 7, 8, 10, 11

*Reder Enters., Inc. v. Loomis, Fargo & Co.*, 490 F. Supp. 2d 111 (D. Mass. 2007) ....................... 7

*Roby v. Corp. of Lloyd's*, 996 F.2d 1353 (2d Cir. 1993) ................................................................. 7

*Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688 (8th Cir. 1997) ................................. 9, 10, 11

*Triple Z Postal Servs., Inc. v. United Parcel Serv., Inc.*, No. 118057/05, 2006 WL
    3393259 (N.Y. Sup. Ct. Nov. 24, 2006) ................................................................................. 12

### STATUTES

28 U.S.C. 1404(a) ............................................................................................................................ 6

### RULES

Fed. R. Civ. P. 12(b)(3) .................................................................................................................... 6

Fed. R. Civ. P. 12(b)(6) .................................................................................................................... 1

Defendant Vision Direct Inc. ("Defendant"), by its attorneys, Wilson Sonsini Goodrich & Rosati, Professional Corporation, respectfully submits this memorandum of law in opposition to Plaintiff 1-800 Contacts, Inc.'s Motion for Dismissal of Defendant's Counterclaims Pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion").

## PRELIMINARY STATEMENT

Vision Direct's First Counterclaim is a direct result of Plaintiff's repeated and continued attempts to evade the mandatory and enforceable forum selection clause that governs this dispute. That forum selection clause, to which Plaintiff knowingly and voluntarily agreed, requires that "any" litigation in connection with the Settlement Agreement entered into between Plaintiff and Vision Direct "shall only" be brought in the United States District Court for the Southern District of New York. Despite this broadly worded provision, Plaintiff continues to attempt to pursue claims that fall squarely within the clause's scope in a forum other than the Southern District of New York. The rationale behind Plaintiff's attempts to avoid New York is simple: Plaintiff has already lost once in the Second Circuit and fears that pursuing these matters in New York will yield a second unfavorable outcome. It is for this reason that Plaintiff now seeks so desperately to avoid litigating in the very forum that (1) it unilaterally chose in 2002 to adjudicate issues pertaining to Vision Direct's Internet advertising practices, and (2) it reaffirmed in 2004 by virtue of the Settlement Agreement's forum selection clause.

As much as Plaintiff might now wish to take back its decision to anoint New York as the mandated forum, however, it is simply too late. Whatever fear Plaintiff may have that the Second Circuit will again issue a decision that is not to Plaintiff's liking, such concerns do not

justify disregarding an otherwise enforceable and applicable forum selection clause. Accordingly, Plaintiff's motion to dismiss Vision Direct's Counterclaims should be denied.[1]

## BACKGROUND

### I. THE PRIOR ACTION

On October 9, 2002, Plaintiff filed an action in the United States District Court for the Southern District of New York (the "Prior Action") in which it named Vision Direct as one of two defendants. *See* Declaration of Jessica L. Margolis dated June 27, 2008 ("Margolis Decl."), Ex. A; Complaint, ¶ 21. In the Prior Action, Plaintiff alleged that Vision Direct's method of Internet advertising – in particular, Vision Direct's alleged use of "pop-up" advertisements – violated Plaintiff's trademark rights and otherwise harmed Plaintiff. *See* Margolis Decl., Ex. A at ¶¶ 50-68. Plaintiff moved for a preliminary injunction against Vision Direct and its co-defendant, which was granted by the district court. *See 1-800 Contacts, Inc. v. WhenU.com*, 309 F. Supp. 2d 467 (S.D.N.Y. 2003). In granting Plaintiff's motion for a preliminary injunction, the district court (among other things) held that Plaintiff met its burden of demonstrating a likelihood of success on the merits of its trademark infringement claims. *Id*. at 488-505.

In the wake of the district court's decision, Plaintiff and Vision Direct decided to settle the dispute as between themselves. This settlement was memorialized in an agreement dated June 24, 2004 ("Settlement Agreement"). *See* Complaint, Ex. D. In addition to providing for dismissal of the Prior Action with prejudice as against Vision Direct, the Settlement Agreement sets forth certain parameters for the Parties' activities with respect to Internet advertising. *See id*. In particular, the Settlement Agreement designates certain acts as "Prohibited," while it expressly

---

[1] As discussed below, Plaintiff's motion to dismiss Vision Direct's Second Counterclaim reflects a fundamental misunderstanding of this Counterclaim, which seeks an off-set in the event that Plaintiff's are awarded damages in connection with its affirmative claims. *See infra* at 13. Because Plaintiff has failed to proffer a sound basis for dismissing the Second Counterclaim, Plaintiff's motion to dismiss should be denied. *Id*.

permits other conduct relating to Internet advertising.  *See* Complaint, Ex. D at ¶ 4; Complaint at ¶¶ 23-24.

The Settlement Agreement contains a forum selection clause, in which the Parties designate this District as the exclusive and mandatory forum for any subsequent disputes relating to the Settlement Agreement – an unsurprising forum choice considering that Plaintiff chose to file the Prior Action in this District and to that point had achieved success here.  Specifically, the forum selection clause states:

> "***Any*** litigation in connection with this Agreement, including but not limited to any breach of this Agreement or the interpretation or construction of the terms of this Agreement ***shall only*** be brought in the United States District Court for the Southern District of New York.  The parties hereby waive any objection to venue or jurisdiction in the United States District Court for the Southern District of New York."

Complaint, Ex. D at ¶ 6 (emphasis added).[2]

While Plaintiff and Vision Direct determined to settle the Prior Action as set forth in the Settlement Agreement, the Prior Action continued as against Vision Direct's co-defendant WhenU.com, which appealed the district court's order granting a preliminary injunction.  On June 27, 2005, the Second Circuit reversed the district court's decision granting a preliminary injunction and ordered that 1-800 Contacts' trademark infringement claims against WhenU.com be dismissed.  *See* 414 F.3d 400 (2d Cir. 2005).  In so ruling, the Second Circuit held that neither WhenU.com's inclusion of the 1-800 Contacts' website address in its internal directory, nor WhenU.com's placement of pop-up advertisements contemporaneously with the 1-800 Contacts' website or a list of search results obtained when a user entered the 1-800 Contacts' website address, constitutes a prohibited "use" of 1-800 Contacts' trademark.  *Id*. at 407-12.

---

[2] The Settlement Agreement also contains a choice of law clause stating: "This Agreement and matters relating to the performance thereof shall be construed, interpreted and enforced in accordance with the laws of the State of New York, without giving effect to its choice of law principles."  *Id*. at ¶ 10.

**II.    THE INSTANT DISPUTE**

On or about October 12, 2007, Plaintiff sent to Vision Direct's parent company, drugstore.com, Inc., a letter in which Plaintiff alleged that Vision Direct breached the Settlement Agreement.  *See* Complaint, Ex. E.  In its notice, Plaintiff asserted that Vision Direct's failure to utilize negative keywords violated the Settlement Agreement, which Plaintiff described as "govern[ing] the use of the parties' trademarked keywords in internet advertising by the other party."  *Id*.  While the Parties were attempting to resolve their dispute, on December 28, 2007, Plaintiff filed a lawsuit against Vision Direct and its parent company, drugstore.com, in Utah State court ("Utah State Action").  *See* Counterclaim at ¶ 8; Margolis Decl., Ex. B.  In the Utah State Action, Plaintiff alleged that Defendants breached the Settlement Agreement by failing to utilize negative keywords when purchasing Internet advertising.  *See* Margolis Decl., Ex. B at ¶ 26.  Based on these underlying allegations, Plaintiff asserted two essentially duplicative causes of action; one for breach of contract, and one seeking a declaratory judgment that Defendants' conduct constituted a violation of the Settlement Agreement.  *Id*. at ¶¶ 27-35.

Upon receiving notice of the Utah State Action, Vision Direct promptly advised Plaintiff that the action constituted a blatant breach of the Settlement Agreement's forum selection clause, which requires any litigation in connection with the Agreement to be filed in the Southern District of New York.  *See* Counterclaim at ¶ 10.  Plaintiff ultimately agreed to dismiss the Utah State Action without prejudice, which agreement was memorialized in a stipulation filed with the court on February 21, 2008.  *See id*. at ¶ 11; Margolis Decl., Ex. C.[3]  Barely one week later, however, Plaintiff re-filed its claims – this time as two separate though nearly identical actions.  *See* Counterclaim at ¶ 12.  In an apparent admission that at least some of its claims are governed by the Settlement Agreement's forum selection clause, on February 27, 2008, Plaintiff filed the instant action.  Rather than bring all of its claims in this mandated forum, however, Plaintiff also

---

[3] The court dismissed the Utah State Action by order dated March 17, 2008.  *See* Margolis Decl. Ex. D.

filed a Complaint in Utah federal court ("the Utah Federal Action"), in which Plaintiff asserts various non-contract claims.  *See* Counterclaim at ¶¶ 12-13; Margolis Decl., Ex. E.

While the causes of action in Plaintiff's two pending federal lawsuits differ, the factual allegations underlying these causes of action are in essence the same.  *See* Counterclaim at ¶ 13.  Both the instant Complaint and the Utah Federal Action – like the now-dismissed Utah State Action – allege that Vision Direct (by itself or through its parent, drugstore.com, Inc.) failed to utilize negative keywording when purchasing Internet search engine advertising, and that this failure allegedly constitutes a breach of the Settlement Agreement.  *Compare* Complaint at ¶¶ 26-31 *with* Margolis Decl. Ex. E at ¶¶ 32-37.  Indeed, most of the factual allegations underlying the Utah Federal Action copy nearly verbatim the allegations in the instant Complaint.  For example, both complaints allege that:

- "While the Settlement Agreement allows its parties to specify as Internet search engine keywords generic words such as 'contacts,' it expressly prohibits Vision Direct from causing advertisements for Vision Direct to appear when an Internet search user searches for Plaintiff's brand names or trademarks…."  Complaint at ¶ 26; Margolis Decl. Ex. E at ¶ 32.
- "For a period of time following execution of the Settlement Agreement, paid advertisements for Vision Direct did not appear in Internet search engine results when phrases constituting the Registered Marks were entered as search terms.  Plaintiff is informed and believes, and thereon alleges that during this period Defendant Vision Direct, by itself or through [d]rugstore.com, achieved this outcome by specifying negative keywords when purchasing Internet search engine advertising, and were thus able to comply with the prohibitions of the Settlement Agreement."  Complaint at ¶ 27; Margolis Decl. Ex. E at ¶ 34.
- "Without cause or justification, and in spite of the previous course of conduct, Defendant Vision Direct, by itself or through [d]rugstore.com, began to cause paid advertisements for Vision Direct to appear in Internet search engine results when phrases constituting the Registered Marks were entered as search terms.  Plaintiff is informed and believes, and thereon alleges that Defendant Vision Direct, by itself or through [d]rugstore.com, caused this outcome by ceasing to specify negative keywords when purchasing Internet search engine advertising."  Complaint at ¶ 28; Margolis Decl. Ex. E at ¶ 35.
- Vision Direct "has placed and is placing with search engine providers paid advertisements for Vision Direct that appear in Internet search engine results

> when phrases constituting the Registered Marks are entered as search terms, in violation of Vision Direct's obligations under the Settlement Agreement." Complaint at ¶ 31; Margolis Decl. Ex. E at ¶ 37.

*See also* Complaint at ¶¶ 15-23; Margolis Decl. Ex. E at ¶¶ 23-31. Both actions go on to assert that Plaintiff has been harmed as a result of the alleged conduct – including harm to Plaintiff's trademarks – and seek overlapping injunctive relief as well as monetary damages. *See* Complaint at pp. 13-14; Margolis Decl. Ex. E at pp. 35-37.

Confronted with two nearly identical federal actions – one of which constitutes a blatant violation of the Settlement Agreement's forum selection provision – on April 9, 2008, Vision Direct (joined by drugstore.com) timely moved to dismiss the Utah Federal Action for improper venue under Fed. R. Civ. P. 12(b)(3) or, in the alternative, to transfer venue to the Southern District of New York pursuant to 28 U.S.C. 1404(a) so that the Utah Federal Action could be consolidated with the instant action (the "Utah Motion"). In the Utah Motion, which is currently pending, Vision Direct argues (among other things) that Plaintiff's claims in the Utah Federal Action fall squarely within the scope of the Settlement Agreement's forum selection clause, which requires those claims to be brought in the Southern District of New York. As of June 10, 2008, the Utah Motion has been fully briefed, and the court has scheduled argument on the Utah Motion for August 11, 2008.

## ARGUMENT

### I. THE SETTLEMENT AGREEMENT'S FORUM SELECTION CLAUSE REQUIRES PLAINTIFF'S CLAIMS TO BE BROUGHT IN NEW YORK

In its Motion, Plaintiff does not dispute that the Settlement Agreement's forum selection clause is both mandatory and enforceable. Instead, Plaintiff asserts that the clause does not apply to the Utah Federal Action because Plaintiff's non-contract claims supposedly fall outside the scope of the Settlement Agreement's forum selection clause. For following reasons, the Court should reject Plaintiff's argument.

### A.    THE FORUM SELECTION CLAUSE IS BROADLY DRAFTED

In its Motion, Plaintiff argues that the Settlement Agreement's forum selection clause should be narrowly construed to exclude Plaintiff's claims in the Utah Federal Action. In particular, Plaintiff suggests that the phrase "in connection with" somehow restricts the scope of the forum selection clause to exclude Plaintiff's non-contract claims. Plaintiff's artificially narrow reading of the forum selection clause is contrary to both settled case law and the explicit language of the clause. ***First***, contrary to Plaintiff's suggestion, the use of the phrase "in connection with" demonstrates the Parties' intent that the clause be construed broadly to include claims beyond simple breach of contract. *See*, *e.g.*, *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993) (clauses containing the phrases such as "relating to," "in connection with" or "arising from" should be broadly construed as encompassing claims beyond pure breach of contract); *Reder Enters., Inc. v. Loomis, Fargo & Co.*, 490 F. Supp. 2d 111, 115-16 (D. Mass. 2007) (describing forum selection clauses such as the one at issue here as "intentionally broad" and "generous" in scope).

That the forum selection clause in this case was intended to be broadly construed is supported by the very authority relied on by Plaintiff in its Motion. In *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 382 (2d Cir. 2007), the Second Circuit explicitly recognized that statutory claims often fall within the scope of a contractual forum selection clause. *See Phillips*, 494 F.3d at 388 ("[F]ederal courts have routinely rejected Phillips' suggestion that a claim arising under a law of the United States is exempt from provisions governing disputes between contracting parties."). The court further recognized that the determination of whether a contractual forum selection clause applies has little to do with the particular legal causes of action chosen by plaintiff, but rather it depends on the factual allegations underlying the asserted claims. *Id*. at 388-89.

With these principles in mind, the *Phillips* court turned its focus to "examin[ing] the substance of [plaintiff's] claims ***as they relate to the precise language of the clause***." *Id*. at 382,

389 (emphasis added).[4] In so doing, the court found that the parties' exclusive use of the phrase "arise out of" indicated an intent to limit the applicability of the clause to claims that "originate from" the contract. *Id.* at 389-90 (noting that the dictionary definition of "arise out of" is "to originate from a specified source" and indicates a "causal connection"). In fact, the *Phillips* court explicitly distinguished the language it was called upon to evaluate from broader clauses such as the one at issue here, which encompasses any claims "in connection with" the Parties' agreement. *Id.* at 389 (contrasting the narrow phrase "arise out of" with broader phrases such as "relate to," "associated with" or "arise in connection with").[5]

*Second*, in concentrating exclusively on the use of the phrase "in connection with," Plaintiff wholly ignores the forum selection clause's express clarification that it applies to more than just contract claims – a fact not present in the *Phillips* case. *See* Complaint, Ex. D at ¶ 6 (explicitly stating that the provision "include[es] ***but [is] not limited*** to any breach of the Agreement or the interpretation or construction of the terms of this Agreement") (emphasis added). Indeed, Plaintiff does not even attempt to identify what non-contractual causes of action this language could possibly refer to if not the precise claims urged by Plaintiff in the Utah Federal Action. Under basic principles of contract construction, the Court should reject Plaintiff's attempt to ignore this provision of the forum selection clause. *See*, *e.g.*, *Beal Sav.*

---

[4] The forum selection clause in *Phillips* provided that "any legal proceedings that may arise out of [the parties' agreement] are to be brought in England." *Id.* at 382.

[5] The other Second Circuit case relied on by Plaintiff – *Corcovado Music Corp. v. Hollis Music, Inc.*, 981 F.2d 679 (2d Cir. 1993) – is similarly inapposite. As an initial matter, in *Corcovado*, ***none*** of the defendants had ever entered into an agreement with plaintiff. Instead, defendants were attempting to impose a forum selection clause contained in an agreement entered into by defendants' predecessor and a third party approximately thirty years before plaintiff entered into an entirely separate agreement with the same third party. *Id.* at 680-81. Moreover, there is no indication that the language of the forum selection clause in *Corcovado* was as broad as the language chosen by the Parties in this case; not only does the clause in this case use the broadening phrase "in connection with," but (as discussed below) the clause was intentionally drafted to expressly include non-contract claims.

*Bank v. Sommer*, 865 N.E.2d 1210, 1213 (N.Y. 2007) ("A reading of the contract should not render any portion meaningless….").

### B.  PLAINTIFF'S CLAIMS IN THE UTAH FEDERAL ACTION CLEARLY FALL WITHIN THE BROAD SCOPE OF THE FORUM SELECTION CLAUSE

Having established that the Settlement Agreement's forum selection clause is broad, the question becomes whether the claims asserted by Plaintiff in the Utah Federal Action fall within the clause's generous scope. In attempting to evade the agreed-upon forum, Plaintiff asserts that because its claims in the Utah Federal Action do not relate to "the rights and duties enumerated in" the Settlement Agreement, the Agreement's forum selection clause does not apply. *See* Motion at 6. Not only is Plaintiff incorrect that its claims do not implicate the Settlement Agreement, but Plaintiff entirely ignores a separate but equally applicable test for determining when non-contract claims fall within the scope of a forum selection clause. In fact, each of these tests provides an independent basis for concluding that the claims in the Utah Federal Action must proceed in New York.

#### 1.  Operative Facts Test

It is well-established that, where the operative facts underlying a plaintiff's statutory or tort claims could also underlie a breach of contract claim, the contractual forum selection clause applies. *See*, *e.g.*, *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 694-95 (8th Cir. 1997) ("'[C]ontract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties.'") (quoting *Lambert v. Kysar*, 983 F.2d 1110, 1121-22 (1st Cir. 1993)); *ADT Sec. Servs., Inc. v. Apex Alarm, LLC*, 430 F. Supp. 2d 1199, 1204 (D. Colo. 2006) ("Non-contract claims that involve the same operative facts as a parallel breach of contract claim fall within the scope of a forum selection clause."); *Mortgage Plus, Inc. v. DocMagic, Inc.*, No. 03-2582-GTV-DJW, 2004 WL 2331918,

at *7 (D. Kan. Aug. 23, 2004) (applying forum selection provision to both contract and non-contract claims where "same operative facts surround each claim").[6]

Here, it cannot seriously be disputed that the factual allegations underlying Plaintiff's claims in the Utah Federal Action could also underlie a breach of contract claim. Indeed, rather than being forced to consider a hypothetical, the Court in this case need look no further than the instant Complaint, which asserts causes of action for breach of contract based on the exact same conduct Plaintiff challenges in the Utah Federal Action. *Compare* Complaint at ¶¶ 35-38 *with* Margolis Decl., Ex. B at ¶ 26 and Ex. E at ¶¶ 28-31. Indeed, in the Utah Federal Action Plaintiff's expressly alleges that Defendants' conduct violates the terms of the Settlement Agreement – allegations that are incorporated into each and every cause of action asserted by Plaintiff in the Utah Federal Action. *See* Margolis Decl., Ex. E at ¶¶ 49-184. That Plaintiff deliberately drafted the complaint in the Utah Federal Action to omit its contract causes of action is therefore of no consequence.[7] *See Phillips*, 494 F.3d at 388-89 (proper focus in determining

---

[6] Notably, these courts reached this conclusion despite the fact that none of these cases involves a forum-selection clause that, as here, expressly includes non-contract claims. *See Terra Int'l, Inc.*, 119 F.3d at 692 (clause provides that "[a]ny dispute or disputes arising between the parties hereunder" must be brought in Mississippi); *Lambert*, 983 F.2d at 1112 ("In the event any action is brought to enforce [the terms of the agreement], venue shall lie exclusively in Clark County, Washington."); *ADT Sec. Servs., Inc.*, 430 F. Supp. 2d at 1204 (clause covers "[a]ny action or proceeding brought by either party against the other arising out of or relating to" the agreement); *Mortgage Plus, Inc.*, 2004 WL 2331918, at * 1 (clause provides that "any cause of action arising under this Agreement shall be brought" in California).

[7] That the causes of action asserted in the Utah Federal Action may involve different elements than Plaintiff's contract claim – an argument raised by Plaintiff in response to the Utah Motion – is similarly irrelevant. Tort and statutory claims nearly always require a plaintiff to plead one or more different elements than a breach of contract claim. Indeed, if the operative facts test were simply a matter of comparing the elements of Plaintiff's various causes of action, non-contract claims would never be included within a contractual forum selection clause. Instead, the critical consideration is whether the same general facts surrounding Plaintiff's tort claims also surround Plaintiff's breach of contract claim – something that clearly exists in this case.

whether non-contract claims fall within contractual forum selection provision is plaintiff's factual allegations, not the causes of action plaintiff chooses to assert); *Terra Int'l, Inc.*, 119 F.3d at 695 ("Strategic or artfully drawn pleadings…will not work to circumvent an otherwise applicable forum selection clause….Although we recognize that [plaintiff's] claims are alleged as tort claims, [plaintiff] plainly could have asserted a parallel claim for breach of contract in the same complaint.")(citations omitted).  On this basis alone, the Court should find that the forum selection clause applies to Plaintiff's claims in the Utah Federal Action.

### 2. Plaintiff's Claims Relate To The Rights And Duties Covered By The Contract

Alternatively, but equally compelling, the forum selection clause also governs the Utah Federal Action because resolution of Plaintiff's claims in that action relates to the interpretation of, and rights and duties enumerated in, the Settlement Agreement.  *See*, *e.g.*, *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 (9th Cir. 1988).  According to Plaintiff's own allegations in both the instant action and the Utah Federal Action, the Settlement Agreement governs the precise conduct challenged by Plaintiff in the Utah Federal Action.  In both actions, Plaintiff alleges that the Settlement Agreement sets parameters with respect to the placement of Internet advertising, identifying both permissible and prohibited activities.  *See* Complaint at ¶¶ 23-26; Margolis Decl., Ex. E at ¶¶ 31-32.  Plaintiff goes on to allege that Defendants' conduct with respect to Internet advertising is expressly prohibited by the Settlement Agreement, and as such constitutes a breach of the Agreement.  *See* Complaint at ¶¶ 28-31; Margolis Decl., Ex. E at ¶¶ 35-38.  Thus, regardless of how Plaintiff strategically chooses to position its causes of action, it is clear that Plaintiff's claims relate "in some way" to the rights and obligations established by the Settlement Agreement, and that the Court will be unable to resolve these claims without reference to the Agreement.  *Manetti-Farrow, Inc.*, 858 F.2d at 514.[8]

---

[8] The same result ensues under New York State law.  *See Triple Z Postal Servs., Inc. v. United Parcel Serv., Inc.*, No. 118057/05, 2006 WL 3393259, at *9 (N.Y. Sup. Ct. Nov. 24,

The cases cited by Plaintiff are readily distinguishable. For example, in *Dan-Dee International, Ltd. v. Kmart Corp.*, No. 99 Civ. 11689, 2000 WL 1346865, at *5 (S.D.N.Y. Sept. 19, 2000), the defendant was attempting to enforce a forum selection clause contained in a purchase order from nearly two years earlier that involved goods other than those that were the subject of the plaintiff's claims; as such, plaintiff in *Dan-Dee International* did not allege that defendant had breached the purchase order or that defendant's conduct was otherwise governed by the terms of the purchase order. *Id*. Similarly, in *Cheever v. Academy Chicago, Ltd.*, 685 F. Supp. 914, 917 (S.D.N.Y. 1988), the plaintiffs expressly rejected the contract containing the forum selection clause as the source of any rights with respect to the underlying claims. By contrast, in both the instant action and the Utah Federal Action, Plaintiff not only alleges that the Settlement Agreement governs the conduct at issue, but also Plaintiff expressly asserts that Vision Direct's conduct is in breach of that Agreement.[9] Finally, neither the *Dan-Dee International* court nor the *Cheever* court addressed the operative facts test, which – as discussed above – provides an independent basis for holding that the forum selection clause applies.

The fact is, Plaintiff's attempt to divorce its allegations in the Utah Federal Action from the Settlement Agreement is belied by Plaintiff's own conduct: Plaintiff initially pursued this dispute by filing a straightforward breach of contract action in Utah state court; it was only after

---

2006) (holding that the contractual forum selection clause encompasses plaintiff's tort claims, stating that plaintiff's failure to assert a claim for breach of contract despite its allegation that defendant in fact breached the contract "appears to be a transparent attempt to evade the Forum Selection Clause").

[9] Despite Plaintiff's allegations in its federal court complaints, Plaintiff's Motion attempts to diminish the relevance of the Settlement Agreement by asserting that the Agreement was not intended to establish any rights or liabilities beyond that which is permitted or prohibited by the trademark laws. *See* Motion at 6-7. This self-serving assertion is contrary to the plain language of the Settlement Agreement, which sets forth specific conduct that is permitted and prohibited with respect to Internet advertising and in which neither party admits liability under the trademark laws. *See* Complaint, Ex. D. Indeed, Plaintiff itself has stated that the Settlement Agreement – and not federal or state trademark law – "governs the use of the parties' trademarked keywords in internet advertising by the other party." *Id*. at Ex. E.

Defendant pointed out that the Utah State Action constituted a blatant violation of the Settlement Agreement's forum selection clause that Plaintiff voluntarily dismissed that action and re-filed its claims as two separate actions – albeit based on the same underlying factual allegations. *See* Counterclaim at ¶ 12; Margolis Decl., Ex. E. Such a transparent attempt to evade an enforceable forum selection clause should not be countenanced.

## II.   PLAINTIFF'S MOTION TO DISMISS VISION DIRECT'S SECOND COUNTERCLAIM SHOULD BE DENIED

Plaintiff's motion to dismiss Vision Direct's Second Counterclaim manifests a fundamental misunderstanding of this Counterclaim and should be denied. Defendant's Second Counterclaim asserts that, to the extent that the Court or a jury ultimately agrees with Plaintiff's interpretation of the Settlement Agreement as requiring the utilization of negative keywords – an interpretation that Vision Direct continues to contest – any damages awarded to Plaintiff should be off-set by damages incurred by Vision Direct as a result of Plaintiff's own failure to utilize negative keywords in the manner it urges in the Complaint. Vision Direct's Second Counterclaim, therefore, is entirely separate and independent from Vision Direct's First Counterclaim, and neither "relies upon" nor "falls with" it as Plaintiff claims. *See* Motion at 7. Accordingly, because Plaintiff has failed to proffer any sound basis for dismissing Vision Direct's Second Counterclaim, Plaintiff's motion to dismiss this Counterclaim should be denied.

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court deny the Motion in all respects and award such other relief as is just and proper.

Date: June 27, 2008                               Respectfully submitted,

                                                  WILSON SONSINI GOODRICH & ROSATI
                                                  PROFESSIONAL CORPORATION

                                                  By:  _____/s/_____
                                                      Glenn C. Colton
                                                      gcolton@wsgr.com
                                                      Jessica L. Margolis
                                                      jmargolis@wsgr.com
                                                      WILSON SONSINI GOODRICH & ROSATI
                                                      PROFESSIONAL CORPORATION
                                                      1301 Avenue of the Americas, 40th Floor
                                                      New York, New York  10019
                                                      Tel: 212.999.5800

                                                      *Attorneys for Defendant/Counterclaim-Plaintiff
                                                      Vision Direct Inc.*