UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 1-800 CONTACTS, INC. | Case No. 08 CV 1949 (GBD) |
| Plaintiff/Counterclaim-Defendant, | |
| - against - | ECF CASE |
| VISION DIRECT INC. | |
| Defendant/Counterclaim-Plaintiff. | |

## DECLARATION OF JESSICA L. MARGOLIS

I, Jessica L. Margolis, declare as follows:

I am an attorney associated with the firm of Wilson Sonsini Goodrich & Rosati, Professional Corporation, attorneys for Defendant Vision Direct Inc. I am admitted to practice before the courts of the State of New York and before the United States District Courts for the Southern and Eastern Districts of New York. I respectfully submit this declaration in support of Defendant's Memorandum of Law in Opposition to Plaintiff 1-800 Contacts, Inc.'s Motion for Dismissal of Defendant's Counterclaims Pursuant to Fed. R. Civ. P. 12(b)(6). I have personal knowledge of the facts set forth in this declaration.

1.    A true and correct copy of the Complaint filed by Plaintiff on October 9, 2002 in the United States District Court for the Southern District of New York, Case No. 02 CV 8043 (DAB), is attached hereto as Exhibit A. Exhibits to the Complaint have been omitted.

2.    A true and correct copy of the Complaint filed by Plaintiff on December 28, 2007 in the Third Judicial District Court of Salt Lake County, State of Utah, Case No. 070918271

(hereinafter, "Utah State Action"), is attached hereto as Exhibit B.  Exhibits to the Complaint have been omitted.

3.      A true and correct copy of the Notice & Stipulation of Dismissal Without Prejudice Pursuant to Utah Rule 41(a)(1), filed in the Utah State Action on February 21, 2008, is attached hereto as Exhibit C.

4.      A true and correct copy of the Order dismissing the Utah State Action, dated March 17, 2008, is attached hereto as Exhibit D.

5.      A true and correct copy of the Complaint filed by Plaintiff on February 26, 2008 in the United States District Court for the District of Utah, Central Division, Case No. 08-CV-00157 (TC), is attached hereto as Exhibit E.  Exhibits to the Complaint have been omitted.

I declare under penalty of perjury that the foregoing is true and correct.  Executed in New York, New York on June 27, 2008.

Jessica L. Margolis

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------- x

1-800 CONTACTS, INC.,

        Plaintiff,

    v.

WHENU.COM, INC.

and

VISION DIRECT, INC.,

        Defendants.

------------------------------------------- x

**02 CV 8043**

**JUDGE BATTS**

___ Civ._____ (___)

**COMPLAINT**

RECEIVED
OCT - 9 2002
U.S.D.C. S.D. N.Y.
CASHIERS

     Plaintiff 1-800 Contacts, Inc. ("1-800 Contacts" or "Plaintiff"), by their undersigned attorneys, for their Complaint allege against defendants, WhenU.com, Inc. ("WhenU.com") and Vision Direct, Inc. ("Vision Direct") (collectively, the "Defendants") as follows:

### NATURE OF THE ACTION

    1.    This action is for preliminary and permanent relief, damages, and attorney's fees and costs arising out of Defendants' acts of trademark infringement, unfair competition, false designation of origin, trademark dilution, copyright infringement, and contributory copyright infringement, and tortious interference with prospective economic advantage.

### THE PARTIES

    2.    Plaintiff 1-800 Contacts was incorporated in Utah in 1995 and is presently incorporated in Delaware. Its principle place of business is in Draper, Utah. 1-800 Contacts is the world's largest contact lens distributor, having delivered over 7 million orders to more than 2.5 million customers since its inception in 1995. 1-800 Contacts is a publicly traded company listed on NASDAQ.

3.    1-800 Contacts revolutionized the way in which consumers purchase contact lenses by providing easy and convenient methods of purchase via its Internet website, located at http://www.1800Contacts.com, as well as through its toll-free telephone number, "1-800 Contacts," and by mail.

4.    Upon information and belief, Defendant WhenU.com is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in New York, New York.

5.    Upon information and belief, Defendant Vision Direct is a Texas Corporation with its principle place of business in Austin, Texas. Defendant Vision Direct sells contact lenses through its Internet website, located at http://www.visiondirect.com, as well as by telephone and mail, and endeavors to compete with the Plaintiff.

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction over this action under 15 U.S.C. §1121, 28 U.S.C. §1331, and 28 U.S.C. § 1338(a) and (b). This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367(a) because those claims are so related to the federal claims brought herein as to form part of the same case or controversy.

7.    Venue is proper in this district under 28 U.S.C. §1391(b) and 28 U.S.C. §1400(a) because Defendants reside in this district within the meaning of 28 U.S.C. §1391(c).

8.    WhenU.com is subject to personal jurisdiction in this district because its principle place of business is in the State of New York within this district.

9.    Vision Direct is subject to personal jurisdiction in this district because it practices the unlawful conduct complained of herein, in part, within the State of New York and this district; because the unlawful conduct complained of herein causes injury, in part, within the State of New York and this district; and because Vision Direct regularly does or solicits business, engages in other persistent courses of conduct and/or derives substantial revenue from goods used or consumed or services rendered within the State of New York and this district.

2

Moreover, Vision Direct regularly and systematically has directed electronic activity into the State of New York with the manifested intent of engaging in business within the State and that activity has resulted in causes of action cognizable within the State. Vision Direct's actions in this regard include causing the regular placement of pop-up advertisements upon the screens of numerous PCs within the State; the offering of contact lens products to PC users within the State, many of whom purchased such products; and entry into contracts with residents of the State. Upon information and belief, these actions by Vision Direct were the means by which actual business was conducted by Vision Direct within the State and which resulted in cognizable causes of action within the State. In particular, Vision Direct entered into a contract with WhenU.com, a corporation with its principal place of business in the State of New York and within this district, which resulted in the unauthorized placement of Vision Direct advertisements upon the Plaintiff's websites, the exact harm complained of in this lawsuit.

## PLAINTIFF'S TRADEMARKS

10.     On July 8, 1999, 1-800 Contacts filed to register the service mark "1-800 CONTACTS" with the United States Patent and Trademark Office ("USPTO") USPTO for use in connection with retail sales via electronic retailing services using a computer, by mail order and by telephone order, for the field of contact lenses and related products. That application remains pending. *See* USPTO Trademark Application No. 75/746,706 (appended hereto as Exhibit A).

11.     On October 2, 2000, 1-800 Contacts filed to register the service mark "1-800 CONTACTS" and associated design logo with the USPTO for use in connection with retail sales via electronic retailing services using a computer, by mail order and by telephone order, for the field of contact lenses and related products. That application remains pending. *See* USPTO Trademark Application No. 76/138,625 (appended hereto as Exhibit B).

12.     On August 29, 2000, 1-800 Contacts registered the service mark "WE DELIVER. YOU SAVE." with the USPTO for use in connection with retail sales via electronic retailing services using a computer, by mail order and by telephone order, for the field of contact lenses

and related products. On April 9, 2002, the USPTO issued a registered service mark. *See* Federal Trademark Reg. No. 2558233 (appended hereto as Exhibit C.)

13.    1-800 Contacts has continuously promoted and advertised the above-described trademarks in interstate commerce in the United States and throughout the world since at least as early as July 1995. Plaintiff has spent significant sums promoting these marks over the last seven years. In 2001 alone, 1-800 Contacts spent $26.8 million on marketing.

14.    In 2001, there were $169 million worth of retail transactions under Plaintiff's trademarks.

15.    Through Plaintiff's actions, and because of widespread and favorable public acceptance and recognition, the Plaintiff's trademarks have become a distinctive designation of the source of origin of Plaintiff's goods and services. The Plaintiff's trademarks have become uniquely associated with, and hence identify, the Plaintiff. These marks are an asset of incalculable value as a symbol of the Plaintiff, its quality services and its goodwill.

16.    Accordingly, the Plaintiff's trademarks have developed secondary meaning and are famous marks.

## PLAINTIFF'S COPYRIGHT

17.    Plaintiff is the sole owner of the 1-800contacts.com website and holds a valid copyright on the 1-800Contacts.com website.

18.    Plaintiff registered its copyright to the 1-800Contacts.com website with the Copyright Office of the United States Library of Congress ("Copyright Office") on October 2, 2000. *See* Certificate of Registration No. VA-1-032-662 (appended hereto as Exhibit D).

19.    Plaintiff grants visitors to its website a non-exclusive, non-transferable, limited right to access, use and display the website and its content for the viewers' personal, non-commercial use. Visitors are explicitly prohibited from modifying any of the website content or the manner in which the content is displayed.

## FACTUAL BACKGROUND

### A.    The Internet And The World Wide Web

20.    The Internet is a global network of millions of interconnected computers.  The World Wide Web is a portion of the Internet especially suited to displaying images and sound, in addition to text.  Much of the information on the World Wide Web is stored in the form of "webpages," which can be accessed through a computer connected to the Internet (available through commercial Internet service providers or "ISPs"), and viewed using a computer program called a "browser," such as Microsoft Internet Explorer and Netscape Navigator.  "Websites" are locations on the World Wide Web containing a collection of webpages.  A webpage is identified by its own unique Uniform Resource Locator ("URL") (*e.g.*, http://www.1800contacts.com), which ordinarily incorporates its site's "domain name" (*e.g.*, 1-800 Contacts).

21.    Internet use in the United States has grown substantially in the last few years.  More than half of the nation, roughly 53.9 million households, are now online.  Internet use in the United States continues to grow at an astonishing rate of two million new Internet users per month.

22.    The Internet has revolutionized commercial sales activities in the United States and throughout the world.  Using the Internet, consumers now have the power to comparatively shop multiple, worldwide vendors, without leaving the comforts of their homes.

23.    Among Internet users in the United States, 39 percent currently use the Internet to make online purchases.

24.    As a result, Internet sales, or "e-commerce" reached an estimated $48.28 billion by 2000.

### B.    The Business Of Plaintiff 1-800 Contacts

25.    Plaintiff 1-800 Contacts has established and operates a website for the purpose of advertising and selling contact lenses and related products.  Plaintiff prominently displays its "1-

800 Contacts" and "We Deliver. You Save." trademarks on its website. Plaintiff also sells its products through its easy to remember toll-free "1-800 Contacts" telephone number and by mail.

26.    Plaintiff is recognized as the leading distributor of contact lenses, with sales growing from $3.6 million in 1996 to $169 million in 2001.

27.    1-800 Contacts has achieved such success in part because 1-800 Contacts offers consumers a simple, convenient and efficient method for purchasing contact lenses. In support of this goal, 1-800 Contacts has invested in excess of $45 million in its contact lenses inventory. In addition, 1-800 Contacts has invested substantially in the information systems and Internet infrastructure necessary to support customer sales.

28.    Plaintiff derives a substantial portion of its sales from e-commerce. Therefore, great care and enormous efforts are undertaken by the Plaintiff to present its webpage content with a specific "look and feel" that will encourage site visitors to remain at the site, to purchase Plaintiff's products and to return to Plaintiff's website for future purchases. Plaintiff deliberately designs its website to display and advertise its products and related information in a manner that will be visually attractive and easy to navigate for site visitors.

29.    Plaintiff offers users the ability to personalize the services available on or through its website. For example, customers may "store" their purchase details, such as their contact lens prescription or billing information, by registering on Plaintiff's website.

30.    As a result of these design efforts, millions of customers have developed strong relationships with 1-800 Contacts, and return to the 1-800Contacts.com website repeatedly to purchase their contact lenses.

31.    1-800 Contacts uses its website to advertise and to sell exclusively its products. Plaintiff does not permit other advertising on its website. Moreover, the Plaintiff's website does not utilize pop-up advertisements.

## C.    The Business of WhenU.com

32.    WhenU.com is in the business of selling online advertising.  But, rather than sell advertising on its own website, WhenU.com sells pop-up ads on other websites **WITHOUT** the permission of or payment to such websites.

33.    Upon information and belief, WhenU.com's unauthorized pop-up advertising scheme operates as follows:

a)  WhenU.com distributes a software program called "SaveNow" that resides on a user's desktop.  WhenU.com also bundles the SaveNow software with many of the Web's most popularly downloaded software programs, including: MP3 players, screensavers, online games and shopping tools. Anyone who downloads these popular free software programs may have the SaveNow software automatically downloaded and installed on their computer.

b)  Once SaveNow software is installed on a personal computer, whenever a user initiates a browser-based Internet connection, SaveNow automatically launches and communicates frequently with WhenU.com's computer servers, monitoring the user's activities on the World Wide Web and transmitting that information over the Internet to WhenU.com.  Software that operates in this manner is commonly called "spyware."

c)  When a PC user visits certain websites, WhenU.com's remote computer systems will transmit to the user's computer one or more unauthorized pop-up advertisements to be displayed directly over the content that the owner of the website intended to be displayed.

d)  WhenU.com's unauthorized pop-up advertisements typically appear at approximately the same time as the webpage that the user has requested. As a result of WhenU.com's unauthorized pop-up advertisements, users ordinarily do not see the webpage in the manner the website owner intended to display it.

7

34.    In order for the PC user to see the webpage displayed as intended by the website owner, the user must move their mouse to the pop-up advertisement and click the mouse to close WhenU.com's unauthorized pop-up advertisement, thus delaying access to the site's content.

35.    In the example below, a WhenU.com pop-up advertisement for Defendant Vision Direct appears on the home page for Plaintiff's website.



36.    Upon information and belief, WhenU.com has also caused pop-up advertisements to appear on top of viewers' copies of the 1-800Contacts.com web pages on which viewers place their orders for Plaintiff's products. These pop-up advertisements appear on the *secure* side of the 1-800Contacts.com server, on to the same web pages in which users are entering confidential payment information.

37.    An example of a WhenU.com pop-up advertisement that appeared on a *secure* page of Plaintiff's website is set out below.



38.    The above examples of WhenU.com pop-up advertisements appeared on the 1-800contacts.com website without 1-800 Contacts's authorization.  Upon information and belief, WhenU.com does not seek or obtain the authorization of the websites upon which it causes its pop-up advertisements to appear.

39.    WhenU.com asserts that SaveNow currently resides on 15 million personal computers.

40.    Upon information and belief, WhenU.com offers to third-party Internet advertisers, such as Defendant Vision Direct, the opportunity to "buy" URLs on which SaveNow will cause to appear pop-up advertisements for the third party advertisers.  Indeed, SaveNow software was designed to allow it to cause advertisements from any originating server to display on any website.

41.    Upon information and belief, WhenU.com's software was designed to divert and lure Internet users from the websites they intend to visit to other websites owned by

WhenU.com's advertisers. Indeed, WhenU.com claims to have "industry leading click through rates." WhenU.com shares with its advertisers the revenue generated by the advertisements, offers and coupons that pop-up on to the users' screen. None of this revenue is paid to the websites targeted by WhenU.com. Thus, WhenU.com profits from free riding on other websites' content.

42.      WhenU.com's pop-up advertising scheme enables WhenU.com to profit, without the permission of the websites it targets and without having to make any investment or exert any effort to create and develop content that attracts and holds viewers, from pop-up advertisements displayed over other websites that have not authorized, do not want and are directly injured by such parasitic interference with the display and appearance of their sites.

43.      WhenU.com's pop-up advertising scheme is inherently deceptive and misleads users into falsely believing the pop-up advertisements supplied by WhenU.com are in actuality advertisements authorized by and originating with the underlying website.

44.      WhenU.com does not prominently advise persons who have downloaded SaveNow software that unauthorized pop-up advertisements will be systematically delivered to change the display of content on particular websites.

45.      Even if WhenU.com delivered such a warning message, there would be no way to eliminate the inherent confusion created by WhenU.com's wrongful conduct.

46.      Because WhenU.com's unauthorized pop-up advertisements appear on a user's screen simultaneously, or nearly simultaneously, with the downloading and opening of the requested webpage of the targeted website, the WhenU.com pop-up advertisements appear to be an integral and fully authorized part of the original underlying webpage.

47.      The WhenU.com advertisements fail to suggest that they are not authorized and supplied by the underlying website.

**D.    The Business of Vision Direct**

48.      Defendant Vision Direct is in the business of selling contact lens via its Internet website, located at http://www.visiondirect.com, by telephone and by mail. Upon information

and belief, Vision Direct endeavors to compete with the Plaintiff by engaging in aggressive advertising schemes that target customers visiting Plaintiff's website.

49.    Upon information and belief, on November 1, 2001, Vision Direct registered the internet domain name located at http://www.www1800contacts.com.  The domain name www.www1800contacts.com is identical or confusingly similar to Plaintiff's 1-800 Contacts marks.  Vision Direct registered and continues to maintain its registration in the domain name www.www1800contacts.com with the bad faith intent to profit from and/or damage Plaintiff's 1-800 CONTACTS marks.

50.    Upon information and belief, beginning in at least the summer of 2002, Vision Direct, without Plaintiff's authorization, caused Vision Direct advertisements to appear over top of some viewers' copies of the 1-800contacts.com webpage.  These unauthorized advertisements changed the appearance of the 1-800contacts.com website.

51.    An example of such an unauthorized Vision Direct advertisement, as placed onto the 1-800contacts.com web page, is set forth below:



52.    These unauthorized Vision Direct advertisements alter the appearance of the 1-800contacts.com webpage.  These unauthorized modifications also constitute a derivative work of the 1-800contacts.com website.

**E.    Harm To Plaintiff**

53.    Since at least the summer of 2002, Defendants have specifically targeted, and continue to target, the Plaintiff's website for the delivery of unauthorized pop-up advertising.

54.    Upon information and belief, Defendants have already delivered hundreds of thousands of unauthorized pop-up advertisements to Plaintiff's website.

55.    Plaintiff has not given Defendants permission or a license to place advertisements on to the 1-800Contacts.com website or copies of the webpage.

56.    Defendants are not licensed or otherwise authorized to use, alter, modify, change the appearance of or add to the 1-800Contacts.com website or copies of the webpage, nor are Defendants licensed to create derivative works based on the 1-800Contacts.com website.

57.    All of the pop-up advertisements that Defendants have displayed on the Plaintiff's website have been displayed without the authorization or permission of the Plaintiff.

58.    Upon information and belief, Defendants knew or should have known of Plaintiff's rights in its trademarks and the 1-800Contacts.com website.

59.    Upon information and belief, Defendants nevertheless caused Vision Direct advertisements to be added on to viewers' copies of the 1-800Contacts.com website.

60.    Upon information and belief, Defendants caused these advertisements to be added on to viewers' copies of the 1-800contacts.com website with the intent to confuse and deceive customers as to the source of Vision Direct's services and to trade upon the goodwill and substantial customer recognition associated with the 1-800 Contacts marks.

61.    The Vision Direct advertisements on the 1-800Contacts.com website blur the Plaintiff's trademarks and dilute the marks' ability to identify Plaintiff as a source of goods and services.

62.    Plaintiff's current customers have been and will likely continue to be confused about the origin and sponsorship of Defendants' services.  Potential customers, as well as members of the general public, are also likely to be confused.

63.    Confusion regarding Defendant Vision Direct's implied affiliation with Plaintiff has damaged and will continue to damage Plaintiff's reputation and customer relationships.

64.    Upon information and belief, Defendants caused these advertisements to be added on to viewers' copies of the 1-800Contacts.com website with the intent to infringe and to cause viewers to infringe Plaintiff's copyright in the website.  Alternatively, Defendants have acted with reckless disregard for Plaintiff's copyright.

65.    In the short term, Defendants' actions steal customers from Plaintiff, erode the attractiveness of shopping on the Plaintiff's website and disrupt Plaintiff's efforts to create a "user friendly" site.  In the long term, if left unchecked, Defendants' actions imperil the economic viability of the Plaintiff's business.

66.    As of at least September 24, 2002, unauthorized pop-up advertisements from Defendants continue to appear over top of viewers' copies of the Plaintiff's website.

67.    Defendants' actions have caused damage and irreparable injury to the Plaintiff. Further damage and irreparable injury will result if WhenU.com and Vision Direct are allowed to continue to violate Plaintiff's rights.

68.    Plaintiff has no adequate remedy at law.

### FIRST CLAIM FOR RELIEF
### FOR FEDERAL TRADEMARK INFRINGEMENT

69.    Paragraphs 1 through 68 are repeated and realleged as if fully set forth herein.

70.    Plaintiff owns a valid, federally registered trademark entitled to protection under the Lanham Act.

71.    Defendants' unauthorized use of Plaintiff's marks in commerce has caused and is likely to continue to cause consumer confusion.

72.    Defendants' conduct constitutes trademark infringement in violation of Section 32(I) of the Lanham Act, 15 U.S.C. § 1114(I).

13

## SECOND CLAIM FOR RELIEF
### FOR UNFAIR COMPETITION UNDER THE LANHAM ACT

73.    Paragraphs 1 through 72 are repeated and realleged as if fully set forth herein.

74.    Plaintiff owns valid common law and federally registered trademarks entitled to protection under the Lanham Act.

75.    Defendants' unauthorized use of the Plaintiff's marks in commerce has caused and is likely to continue to cause consumer confusion as to the origin or sponsorship of Defendant Vision Direct's products and services and the association of Defendant Vision Direct's products and servcies with Plaintiff or Plaintiff's products and services.

76.    Defendants' conduct constitutes a false designation of origin and a false description and representation, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

## THRID CLAIM FOR RELIEF
### FOR COMMON LAW UNFAIR COMPETITION

77.    Paragraphs 1 through 76 are repeated and realleged as if fully set forth herein.

78.    Defendants' unauthorized use of the Plaintiff's marks in commerce has caused and is likely to continue to cause consumer confusion and induce consumers to believe that the Plaintiff and Defendant Vision Direct or their products or services are affiliated.

79.    Defendants have misappropriated Plaintiff's marks, reputation, and good will through their actions.

80.    Defendants have acted deliberately and with bad faith.

81.    Defendants have engaged in unfair methods of competition in violation of the common law.

82.    As a result of Defendants' conduct, Plaintiff is suffering, and will continue to suffer, damage to its reputation because of consumer confusion as to the origin or sponsorship of Defendant Vision Direct's products and services and the association of Defendant Vision Direct's products and services with Plaintiff or Plaintiff's products and services, and loss of profits.

14

### FOURTH CLAIM FOR RELIEF
### FOR FALSE DESIGNATION OF ORIGIN

83.    Paragraphs 1 through 82 are repeated and realleged as if fully set forth herein.

84.    Defendants' conduct constitutes false designation of origin and false description and representation, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

### FIFTH CLAIM FOR RELIEF
### FOR DILUTION UNDER THE FEDERAL TRADEMARK DILUTION ACT

85.    Paragraphs 1 through 84 are repeated and realleged as if fully set forth herein.

86.    Plaintiff owns valid common law and federally registered trademarks entitled to protection under the Lanham Act. These marks are famous within the meaning of 15 U.S.C. § 1125(c).

87.    Defendants' pop-up advertising scheme has the effect of blurring Plaintiff's trademarks and thereby diluting the marks' ability to identify Plaintiff as a source of goods or services.

88.    Defendants have made unauthorized commercial use of Plaintiff's marks in commerce.

89.    Defendants' conduct has diluted the distinctive quality of Plaintiff's famous marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

### SIXTH CLAIM FOR RELIEF
### FOR DILUTION UNDER N.Y. Gen. Bus. Law §360-1

90.    Paragraphs 1 through 89 are repeated and realleged as if fully set forth herein.

91.    Defendants' conduct has diluted the distinctive quality of Plaintiff's marks and/or caused injury to Plaintiff's business reputation in violation of N.Y. Gen. Bus. Law §360-1.

## SEVENTH CLAIM FOR RELIEF
### FOR CYBERSQUATTING UNDER 15 U.S.C. §1125(d)

92.   Paragraphs 1 through 91 are repeated and realleged as if fully set forth herein.

93.   The Plaintiff owns valid trademarks and or rights to valid trademarks entitled to protection under the Lanham Act.

94.   Plaintiff's 1-800 CONTACTS marks are protected marks within the meaning of the Anticybersquatting Consumer Protection Act, 15 U.S.C. §1125(d)(1)(A). The 1-800 CONTACTS marks are famous marks.

95.   In choosing the domain name www.www1800Contacts.com, Defendant Vision Direct intended to and has diverted customers from Plaintiff's online location to a site that is likely to harm, and has harmed the goodwill represented by Plaintiff's 1-800 CONTACTS marks, for Defendant Vision Direct's commercial gain or in an attempt to damage the marks, by creating a likelihood of confusion as to source, sponsorship, affiliation, or endorsement of Defendant Vision Direct's website.

96.   Defendant Vision Direct registered and has maintained its registration in, the domain name www.www1800Contacts.com. Defendant Vision Direct registered and maintains its registration in www.www1800Contacts.com with a bad faith intent to profit from and/or damage Plaintiff's 1-800 CONTACTS marks. The domain name www.www1800Contacts.com is identical or confusingly similar to Plaintiff's 1-800 Contacts marks.

97.   Defendant Vision Direct's conduct constitutes cybersquatting in violation of Section 43(c) of the Lanham Act, 15 U.S.C. §1125(d).

## EIGHTH CLAIM FOR RELIEF
### COPYRIGHT INFRINGEMENT

98.   Paragraphs 1 through 97 are repeated and realleged as if fully set forth herein.

99.   Plaintiff owns a valid copyright in the 1-800Contacts.com website.

100.   Plaintiff has registered this copyright with the United States Copyright Office.

101.    Defendants' conduct, including causing advertisements to be added on to or over top of viewers' copies of the 1-800Contacts.com web page violates Plaintiff's exclusive rights in its copyright.

102.    Defendants' conduct constitutes an unauthorized display of the Plaintiff's copyrighted work and the unauthorized preparation of a derivative work based upon the copyrighted work in violation of Plaintiff's exclusive rights in its copyright.

103.    Defendants' conduct constitutes copyright infringement under the Federal Copyright Act, 17 U.S.C. §§101, *et seq.*

### NINTH CLAIM FOR RELIEF
### CONTRIBUTORY COPYRIGHT INFRINGEMENT

104.    Paragraphs 1 through 103 are repeated and realleged as if fully set forth herein.

105.    Plaintiff owns a valid copyright in the 1-800contacts.com website.

106.    Plaintiff has registered this copyright with the United States Copyright Office.

107.    Defendants have knowingly (or with reckless disregard for Plaintiff's rights) induced, caused, or materially contributed to conduct by third parties, which violates Plaintiff's exclusive rights in their copyright.

108.    Defendants' conduct facilitates the unauthorized and infringing public display of the Plaintiff's copyrighted work by third parties as well as the creation of unauthorized derivative works by those same third parties.  Defendants have engaged in this pop-up advertising scheme knowingly, or with reckless disregard, that it was inducing, causing or materially contributing to conduct by third parties that infringed the Plaintiff's exclusive rights in its copyright.

109.    Defendants' conduct constitutes contributory copyright infringement under the Federal Copyright Act, 17 U.S.C. §§101, *et seq.*

### TENTH CLAIM FOR RELIEF
### TORTIOUS INTERFERENCE
### WITH PROSPECTIVE ECONOMIC  ADVANTAGE

110.    Paragraphs 1 through 109 are repeated and realleged as if fully set forth herein.

17

111.    Many of the Plaintiff's customers regularly purchase contact lens from Plaintiff's website. It is probable that such customers and others will continue to visit Plaintiff's website and purchase Plaintiff's goods and services in the future. Upon information and belief, Defendants were aware of the existance of Plaintiff's reasonable expectancy of future transactions with Plaintiff's returning customers.

112.    Absent Defendants' intentional and improper interference through their pop-up advertising scheme, it is reasonably certain that Plaintiff would realize additional sales from existing customers and/or new customers. Defendants' pop-up advertising scheme, however, damages Plaintiff.

113.    Defendants' pop-up advertising scheme constitutes improper interference with the Plaintiff's prospective economic advantage.

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendants as follows:

A.    A preliminary and a permanent injunction, prohibiting Defendants, their agents, servants, employees, officers, attorneys, and all other persons in active concert or participation with them, from:

1.    placing, or causing any other entity to place, advertisements of any kind on any copy of the 1-800Contacts.com website, without the express consent of the Plaintiff;

2.    altering or modifying, or causing any other entity to alter or modify, any copy of the 1-800Contacts.com website in any way, including its appearance or how it is displayed;

3.    infringing, or causing any other entity to infringe, Plaintiff's copyright;

4.    making any designations of origin, descriptions, representations or suggstions that Plaintiff is the source, sponsor or in any way affiliated with Defendant Vision Direct's website and services;

5.    acting in any manner that causes Defendants' products, services, websites, or advertisements to be in any way associated with Plaintiff's products,

18

services, or website, including, but not limited to, any means of marketing, advertising, or agreements with third parties likely to induce the belief that Defendants or Defendants' websites, advertisements, products or services are in any way associated, connected, or affiliated with, or licensed or authorized by Plaintiff;

6. infringing, or causing any other entity to infringe, Plaintiff's trademarks and/or service marks rights;

7. unfairly designating the origin of Defendant Vision Direct's website and services, or otherwise creating confusion regarding the origin of Defendant Vision Direct's website and services;

8. unfairly competing with Plaintiff in any manner whatsoever;

9. acting, or causing another entity to act, in any manner likely to dilute, tarnish, or blur the distinctiveness of the 1-800 Contacts marks;

10. causing a likelihood of confusion or injuries to Plaintiff's business reputation;

11. interfering with Plaintiff's reasonable business expectations; and

B. An order directing Defendants, their agents, servants, employees, franchisees, licensees, attorneys, and all others in active concert or participation with Defendants to deliver to Plaintiff any agreements between Defendants and any other party or parties that relate to the use of any means by which advertisements are added on to the 1-800Contacts.com website or viewers' copies thereof;

C. An order directing Defendants to file with this Court and serve on Plaintiff within thirty (30) days after the service of the injunction, a report in writing, under oath, that describes in detail the manner and form in which Defendants have complied with the orders of this Court;

D. An order directing an accounting to determine all gains, profits, savings, and advantages obtained by Defendants as a result of their wrongful actions;

19

E.  Awarding restitution to Plaintiff of all gains, profits, savings, and advantages obtained by Defendants as a result of their wrongful actions;

F.  Awarding Plaintiff all damages caused by Defendants' wrongful actions;

G.  Awarding Plaintiff treble the amount of its damages, together with the costs of this suit, including reasonable attorneys' fees and expenses and prejudgment interest;

H.  Awarding Plaintiff an amount sufficient to conduct a corrective advertising campaign to dispel the effects of Defendants' wrongful conduct and confusing and misleading advertising;

I.  An order directing Defendants to post on their websites corrective advertising in a manner and form to be established by the Court;

J.  Awarding Plaintiff punitive damages in an amount sufficient to deter other and future similar conduct by Defendants and others; and

K.  Granting Plaintiff such other and further relief as the Court may deem just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues and claims so triable.

DATED:    New York, New York
            October 9, 2002

                        GIBSON, DUNN & CRUTCHER LLP

                        By: _____
                             Marshall R. King (MK-1642)

                        200 Park Avenue.
                        New York, New York 10166-0193
                        Telephone: (212) 351-4000
                        Facsimile: (212) 351-4035

                        Attorneys for Plaintiff 1-800 Contacts, Inc.
                        1-800 Contacts, Inc.

Of Counsel:

      Terence P. Ross
      Hill B. Wellford
      Amy E. Barrier
      Claudia M. Osorio
      GIBSON, DUNN & CRUTCHER, LLP
      1050 Connecticut Ave., N.W.
      Washington, D.C. 20036
      (202) 955-8500

70219122_4.DOC

# EXHIBIT B

Bryan G. Pratt (Bar No. 09924)
RADER, FISHMAN & GRAUER, PLLC
10653 S. Riverfront Parkway
Suite 150
South Jordan, UT 84095
Telephone : (801) 572-0185
Facsimile : (801) 572-7666

FILED DISTRICT COURT
Third Judicial District

DEC 2 8 2007

SALT LAKE COUNTY

By_____
                          Deputy Clerk

R. Terrance Rader
Kristin L. Murphy
Charles A. Bieneman
RADER, FISHMAN & GRAUER, PLLC
35933 Woodward Avenue, Suite 140
Bloomfield Hills, Michigan 48304
Telephone: (248) 594-0600
Facsimile: (248) 594-0610

*Attorneys for Plaintiff*

## IN THE THIRD JUDICIAL DISTRICT COURT OF
## SALT LAKE COUNTY

### STATE OF UTAH

| | |
|---|---|
| 1-800 CONTACTS, INC.,<br>a Delaware corporation,<br><br>         Plaintiff,<br><br>v.<br><br>DRUGSTORE.COM<br>a Delaware corporation,<br>~~and~~<br>VISION DIRECT, INC.,<br>a ~~Texas~~ corporation,<br><br>         Defendant. | Case No.: 070918271<br><br>Hon. *Faust*<br><br>**COMPLAINT AND JURY DEMAND** |

1

Plaintiff 1-800 CONTACTS, Inc. ("1-800 CONTACTS" or "Plaintiff") for its Complaint against

Defendant Drugstore.com, Inc. and Vision Direct, Inc. (collectively "Vision Direct" or "Defendant")

alleges:

## NATURE OF THE ACTION

1.      This is a civil action for damages and injunctive relief arising out of Vision Direct's

breach of contract, specifically an agreement dated June 24, 2004 to settle an action (the "Prior

Action") that was pending in the Southern District of New York (hereinafter "Settlement

Agreement"). A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit A**.

The Prior Action was filed October 9, 2002, and was captioned 1-800 CONTACTS, INC. v.

WHENU.COM, INC., et al., 02 CV 8043.

## THE PARTIES

2.      Plaintiff 1-800 CONTACTS, Inc. is a Delaware corporation, with its principal place of

business at 66 East Wadsworth Park Drive, Draper, Utah 84020.

3.      Upon information and belief, Defendant Drugstore.com, Inc is a Delaware corporation,

with its principle place of business at 411 108th Ave NE, Suite 1400

Bellevue, WA 98004.

4.      Upon information and belief, Defendant Vision Direct, Inc. is a Texas corporation, with

its principal place of business at 411 108th Avenue NE, Suite 1400, Bellevue, Washington 98004

5.      Upon information and belief, Defendant Vision Direct, Inc. is a wholly owned

subsidiary of Defendant Drugstore.com.  Indeed, Drugstore.com, Inc.'s website identifies Vision

Direct, Inc. as a wholly owned subsidiary of Drugstore.com, Inc. See screenshot of http://investor.drugstore.com/overview.cfm at **Exhibit B.**

## JURISDICTION AND VENUE

6.     This Court has personal jurisdiction over the Defendants at least under the Utah Long Arm Statute as codified in §§ 78-27-22 and 78-27-24 of the Utah Code Annotated.

7.     Venue is appropriate in the Third Judicial District and Salt Lake County pursuant to Utah Code Annotated §78-13-7 in that the Plaintiff, 1-800 CONTACTS has its principal place of business in the State of Utah and is being harmed in this District.

## GENERAL ALLEGATIONS

8.     For over a decade, 1-800 CONTACTS has been and continues to be extensively engaged in the business of selling and distributing contact lenses and eye care products via telephone and fax, through the Internet and by mail. Indeed, 1-800 CONTACTS is the market leader in the field of replacement contact lenses, having filled over 16 million orders for over five million customers, with an inventory of over 20 million lenses. 1-800 CONTACTS' products can be ordered over the Internet via Plaintiff's website at www.1800contacts.com (the "1-800 CONTACTS Website").

9.     On information and belief, Vision Direct also has been and is now engaged in the business of selling and distributing contact lenses and eye care products via telephone and fax, through the Internet and by mail, including in this District.

3

10.    On information and belief, Drugstore.com also has been and is now engaged in the business of selling and distributing contact lenses and eye care products (among other products) via the Internet and by mail, including in this District.

11.    Internet search engine providers, such as Google, MSN, Yahoo!, and the like, generally return lists of links to websites in response to users' online searching.  The results of such searching are commonly referred to as the organic search results.  Further, many Internet search engine providers include paid advertisements in addition to the organic search results.  Such paid advertisements are generated by keywords and appear, at least on Google, in the "Sponsored Links" section above or to the right of the organic search results.

12.    To promote its business, 1-800 CONTACTS purchases advertisements with various Internet search engines, such as Google, MSN, Yahoo!, and the like.  When purchasing such advertisements, 1-800 CONTACTS generally identifies one or more keywords that may be

included in users' search queries, and specifies that its advertisements should be associated with such keywords.  For example, 1-800 CONTACTS could specify that one of its advertisements should be presented to a user when the user has specified a keyword such as "1800 contacts."

13.    Further, 1-800 CONTACTS (and the Defendants) may, when purchasing advertisements through search engines, specify so-called "negative keywords," i.e., keywords with which an advertisement purchased by 1-800 CONTACTS (or the Defendants) should NOT be associated.  In specifying negative keywords, 1-800 CONTACTS ensures that its own advertising is not displayed when users type in certain keywords.

14.     On information and belief, the Defendants also purchase advertisements with various

Internet search engines, and specifies keywords and negative keywords when purchasing such

advertisements.

15.     Accordingly, as illustrated below in Figure 1, a user using the Google search engine

and searching for the term "contacts" may see advertisements for both 1-800 CONTACTS and Vision

Direct and/or Drugstore.com.  In addition, beneath the paid advertisements, Figure 1 illustrates search

results returned by the Google search engine on November 19, 2007, in response to the query for

"contacts," including a link to www.1800contacts.com.



**Figure 1.**

## The Prior Action

16.     On October 9, 2002, 1-800 CONTACTS filed the Prior Action, naming Vision Direct

as one of the defendants.  In the Prior Action, 1-800 CONTACTS brought causes of action against

Vision Direct alleging federal trademark infringement, unfair competition under the Lanham Act, common law unfair competition, false designation of origin, dilution under the Lanham Act, dilution under New York state law, cybersquatting in violation of the Lanham Act, copyright infringement, contributory copyright infringement, and tortious interference with prospective economic advantage.

17.    Among other things, 1-800 CONTACTS' complaint in the Prior Action, attached hereto as **Exhibit C**, alleged that Vision Direct participated in a scheme to profit from and/or damage 1-800 CONTACTS' trademarks and copyrights through bad faith use of Internet domain names and Internet advertising.

18.    On December 22, 2003, this Court entered a Preliminary Injunction against Vision Direct.

19.    On June 24, 2004, 1-800 CONTACTS and Vision Direct entered into the Settlement Agreement. Paragraph 4 of the Settlement Agreement defined several "Prohibited Acts," including:

> d.    causing a Party's website or Internet advertisement to appear in response to any Internet search for the other Party's brand name, trademarks or URLs; [and]
>
> e.    causing a Party's brand name, or link to the Party's Restricted Websites to appear as a listing in the search results page of an Internet search engine, when a user specifically searches for the other Party's brand name, trademarks, or URLs[.]

20.    By entering into the Settlement Agreement, Vision Direct and its parent, Drugstore.com, agreed to comply with the Prohibited Acts section of the Settlement Agreement. Based on this agreement, upon a Stipulation by 1-800 CONTACTS and Vision Direct, the Prior Action against Vision Direct was dismissed with prejudice on July 22, 2004.

### Implementation of the Settlement Agreement

21.      Paragraph 4(B) of the Settlement Agreement expressly allows "the purchase by either Party of the key words that are generic words such as 'contacts.'"  Therefore, search results such as those shown in Figure 1 above are permitted under the Settlement Agreement.

22.      However, the Settlement Agreement, as noted above, expressly prohibits Vision Direct and "its parent," Drugstore.com, from causing advertisements for Vision Direct to appear when an Internet search user searches for the brand name of 1-800 CONTACTS.  Despite this prohibition in the Settlement Agreement, at least as of November 19, 2007, the Defendants were violating the Settlement Agreement.  For example, as seen below in Figure 2, a Google search for "1800 contacts" resulted in a paid advertisement for Vision Direct.



**Figure 2**

23.      Further, 1-800 CONTACTS.com and the Defendants implemented negative keywords when purchasing Internet advertising to comply with the requirements of the Settlement Agreement so

as not to cause "a Party's website or Internet advertisement to appear in response to any Internet search for the other Party's brand name, trademarks or URLs," or to cause "a Party's brand name, or link to the Party's Restricted Websites to appear as a listing in the search results page of an Internet search engine, when a user specifically searches for the other Party's brand name, trademarks, or URLs." For example, in an e-mail dated January 25, 2005 (attached hereto as **Exhibit D**), Eric Duerr of Drugstore.com identified to 1-800 Contact thirty-nine (39) "negative keywords I have assigned to all Vision Direct campaigns, based on our communications." Other examples of the Defendants' course of conduct of using negative keywords are attached hereto as **Exhibits E and F.**

24.     Indeed, as evidenced by the course of conduct illustrated in Exhibits D-F, for example, until sometime just before July 13, 2007, both 1-800 CONTACTS and the Defendants clearly understood that the Settlement Agreement required use of negative keywords.


25.     However, without cause or justification, and in spite of the established course of conduct implemented by the Parties, the Defendants recently informed 1-800 CONTACTS that they were no longer going to use negative keywords to prevent the appearance of Vision Direct advertisements in direct violation of the Settlement Agreement.


26.     In fact, is the Defendants are violating the Settlement Agreement by purchasing advertisements without utilizing negative keywords to prevent the appearance of Vision Direct advertisements when users search for 1-800 CONTACTS' brand name.  Consequently, the Defendants are failing to "not cause any other entity [i.e. Google]" to engage in a prohibited act, namely "causing a party's brand name ... to appear as a listing in the search results page of an Internet search engine,

8

when the user specifically searches for the other party's brand name. For example, as shown in Figure

3 below, a Google search for "1800contacts" on November 19, 2007 yielded results including an

advertisement for Vision Direct.



**Figure 3**

### COUNT I

### Breach of Contract

27.    1-800 CONTACTS incorporates by reference the allegations of Paragraphs 1-26 of this

Complaint.

28.    The Settlement Agreement is a duly executed, valid, enforceable contract that is

binding on 1-800 CONTACTS, Vision Direct, and "its parent," Drugstore.com.

29.    Vision Direct and Drugstore.com have breached and are continuing to breach the

Settlement Agreement by committing "Prohibited Acts" as defined therein, including at least "causing

[Vision Direct's] website or Internet advertisement to appear in response to any Internet search for [1-

800 CONTACTS] brand name, trademarks or URLs," and "causing [Vision Direct's] brand name, or link to [Vision Direct's] Restricted Websites to appear as a listing in the search results page of an Internet search engine, when a user specifically searches for [1-800 CONTACTS] brand name, trademarks, or URLs."

30.    The Defendants refuse to cure the foregoing breaches of contract.

31.    The Defendants breaches of the Settlement Agreement have caused and are causing 1-800 CONTACTS to suffer monetary and other harm.

## COUNT II

### Declaratory Relief

32.    1-800 CONTACTS incorporates by reference the allegations of Paragraphs 1-31 of this Complaint.

33.    Vision Direct and "its parent", Drugstore.com, entered into a Settlement Agreement with 1-800 CONTACTS in which the Defendants agreed to refrain from certain acts. Under the express terms of the Settlement Agreement, Vision Direct and Drugstore.com undertook a duty to prevent "causing a Party's website or Internet advertisement to appear in response to any Internet search for the other Party's brand name, trademarks or URLs," and "causing a Party's brand name, or link to the Party's Restricted Websites to appear as a listing in the search results page of an Internet search engine, when a user specifically searches for the other Party's brand name, trademarks, or URLs."

34.    The Defendants have breached its duty under the Agreement by refusing to prevent Vision Direct's "brand name, or link to [Vision Direct's] Restricted Websites to appear as a listing in

the search result page of an Internet search engine, when a user specifically searches for I-800 CONTACTS'] brand name, trademarks, or URLs" since on or about July 13, 2007.

35.    There is a controversy between 1-800 CONTACTS and the Defendants' obligation to employ negative keywords to comply with the Settlement Agreement for which this Court can provide declaratory relief.

## DEMAND FOR RELIEF

WHEREFORE, 1-800 CONTACTS requests that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief including, but not limited to, the following:

A.    That Defendants be required to pay to 1-800 CONTACTS' damages according to proof, together with prejudgment interest thereon, as 1-800 CONTACTS has sustained as a consequence of Defendants' wrongful acts, and to account for and return to 1-800 CONTACTS any monies, profits and advantages wrongfully gained by Defendants.

B.    That Defendants be required to pay to 1-800 CONTACTS punitive and exemplary damages.

C.    That Defendants be required to pay to 1-800 CONTACTS all attorney fees, expenses and costs incurred in this action.

D.    That Defendants be permanently enjoined from violating the Settlement Agreement, including failure to use negative keywords as necessary to avoid the Prohibited Acts set forth in the Settlement Agreement.

E.    That an Order be issued directing Defendants to file with this Court and serve on 1-800 CONTACTS' attorneys, within thirty (30) days after the date of entry of any injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

F.    That 1-800 CONTACTS be granted such further relief as this Court may deem appropriate.

## DEMAND FOR JURY TRIAL

1-800 CONTACTS hereby demands a trial by jury on all issues and claims so triable.

Respectfully submitted,

Date: Dec. 28, 2007

By: _Bryan G. Pratt_
Bryan G. Pratt (Bar No. 09924)
RADER, FISHMAN & GRAUER, PLLC
10653 South River Parkway, Suite 150
South Jordan, UT 84095
Tel.: (801) 572-0185
Fax: (801) 572-7666

R. Terrance Rader
Kristin L. Murphy
Charles A. Bieneman
RADER, FISHMAN & GRAUER, PLLC
35933 Woodward Avenue, Suite 140
Bloomfield Hills, Michigan 48304
Telephone: (248) 594-0600
Facsimile: (248) 594-0610

*Attorneys for Plaintiff*

# EXHIBIT C

FILED
THIRD DISTRICT COURT

2008 FEB 21  PM 3: 24

SALT LAKE COUNTY

BY _____
              DEPUTY CLERK

Bryan G. Pratt (Bar No. 09924)
RADER, FISHMAN & GRAUER, PLLC
10653 South River Parkway, Suite 150
South Jordan, UT  84095
Tel.: (801) 572-0185
Fax: (801) 572-7666

R. Terrance Rader
Kristin L. Murphy
Charles A. Bieneman
RADER, FISHMAN & GRAUER, PLLC
35933 Woodward Avenue, Suite 140
Bloomfield Hills, Michigan 48304
Tel.: (248) 594-0600
Fax: (248) 594-0610

*Attorneys for Plaintiff*

## IN THE THIRD JUDICIAL DISTRICT COURT OF
## SALT LAKE COUNTY

### STATE OF UTAH

| | |
|---|---|
| 1-800 CONTACTS, INC.,<br>a Delaware corporation,<br><br>        Plaintiff,<br>v.<br><br>DRUGSTORE.COM<br>a Delaware corporation,<br>and<br>VISION DIRECT, INC.,<br>a Texas corporation,<br><br>        Defendants. | Case No.  070918271<br><br>Hon. Robert Faust<br><br><br><br>**NOTICE & STIPULATION OF<br>DISMISSAL WITHOUT PREJUDICE<br>PURSUANT TO UTAH RULE 41(a)(1)** |

1

Plaintiff, 1-800 Contacts, Inc., and Defendants, Drugstore.com and Vision Direct, Inc., by and through their respective counsel of record, hereby stipulate as follows:

That Plaintiff's claims against Defendants Drugstore.com and Vision Direct, Inc. are to be dismissed without prejudice in accordance with Utah Rule 41(a)(1), with all parties to bear their own costs and attorney fees.

Respectfully submitted,

Date: February 20, 2008

By: _____
Bryan G. Pratt (9924)
RADER, FISHMAN & GRAUER, PLLC
10653 South River Parkway, Suite150
South Jordan, UT  84095
Tel.:  (801) 572-0185
Fax:  (801) 572-7666

R. Terrance Rader
Kristin L. Murphy
Charles A. Bieneman
RADER, FISHMAN & GRAUER, PLLC
35933 Woodward Avenue, Suite 140
Bloomfield Hills, Michigan 48304
Tel.: (248) 594-0600
Fax: (248) 594-0610

*Attorneys for Plaintiff*

Dated: February 20, 2008

By: _____
Mark M. Bettilyon (4798)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
Salt Lake City, Utah 84111

*Attorneys for Defendants*

2

**ORDER**

IT IS HEREBY ORDERED THAT this action shall be, and hereby is, dismissed without prejudice, with all parties to bear their own costs and attorney fees.


**SO ORDERED:**

this _____ day of _____, 2008.        _____

Hon. Robert Faust

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **NOTICE &**

**STIPULATION OF DISMISSAL WITHOUT PREJUDICE PURSUANT TO UTAH**

**RULE 41(a)(1)** was served via U.S. Mail, postage prepaid, on this 21 day of February, 2008,

to the following:

Bryan G. Pratt
RADER, FISHMAN & GRAUER, PLLC
10653 South River Parkway, Suite 150
South Jordan, UT 84095

R. Terrance Rader
Kristin L. Murphy
Charles A. Bieneman
RADER, FISHMAN & GRAUER, PLLC
35933 Woodward Avenue, Suite 140
Bloomfield Hills, MI 48304

967636

# EXHIBIT D



Bryan G. Pratt (Bar No. 09942)
RADER, FISHMAN & GRAUER, PLLC
10653 South River Parkway, Suite 150
South Jordan, UT 84095
Tel.: (801) 572-0185
Fax: (801) 572-7666

R. Terrance Rader
Kristin L. Murphy
Charles A. Bieneman
RADER, FISHMAN & GRAUER, PLLC
35933 Woodward Avenue, Suite 140
Bloomfield Hills, MI 48304
Tel.: (248) 594-0600
Fax: (248) 594-0610

*Attorneys for Plaintiff*

**FILED DISTRICT COURT**
**Third Judicial District**

MAR 17 2008

SALT LAKE COUNTY
By _____
Deputy Clerk

---

IN THE THIRD JUDICIAL DISTRICT COURT
SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| 1-800 CONTACTS, INC., a Delaware corporation<br><br>Plaintiff,<br><br>v.<br><br>DRUGSTORE.COM, a Delaware corporation, and VISION DIRECT, INC., a Texas corporation,<br><br>Defendants. | **ORDER OF DISMISSAL WITHOUT PREJUDICE PURSUANT TO UTAH RULE 41(a)(1)**<br><br>Civil No. 070918271<br><br>Judge Robert Faust |

IT IS HEREBY ORDERED THAT this action shall be, and hereby is, dismissed without

prejudice, with all parties to bear their own costs and attorney fees.

**SO ORDERED:**

this ___17___ day of _Mcorch_, 2008.

Hon. Robert Faust

2

# EXHIBIT E

FILED
U.S. DISTRICT COURT

2008 FEB 26  P 4: 18

DISTRICT OF UTAH

BY:_____
    DEPUTY CLERK

David J. Steele
Gary Dukarich
CHRISTIE, PARKER & HALE, LLP
3501 Jamboree Road, Suite 6000-North Tower
Newport Beach, CA 92660
Telephone: (949) 476-0757
Facsimile: (949) 476-8640
david.steele@cph.com
gary.dukarich@cph.com
(*pro hac vice* admission being sought)

Howard A. Kroll
CHRISTIE, PARKER & HALE, LLP
350 W. Colorado Boulevard, Suite 500
Pasadena, CA 91105
Telephone: (626) 795-9900
Facsimile: (626) 577-8800
howard.kroll@cph.com
(*pro hac vice* admission being sought)

Paxton R. Guymon (#8188)
Craig H. Howe (#7552)
Lauren Y. Parry (#11420)
MILLER GUYMON, P.C.
165 Regent Street
Salt Lake City, UT 84111
Telephone: (801) 363-5600
Facsimile: (801) 363-5601
guymon@millerguymon.com
howe@millerguymon.com
parry@millerguymon.com

Attorneys for Plaintiff
1-800 Contacts, Inc.

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| 1-800 CONTACTS, INC., a Delaware corporation, <br><br> Plaintiff, <br><br> vs. <br><br> DRUGSTORE.COM, INC., a Delaware corporation, and | Case: 2:08cv00157 <br> Assigned To : Campbell, Tena <br> Assign. Date : 2/26/2008 <br> Description: 1800 Contacts v. Drugstore.com <br><br> **COMPLAINT AND JURY DEMAND** |

| VISION DIRECT INC.,<br>a Texas corporation,<br><br>         Defendants. | |

Plaintiff 1-800 Contacts, Inc. ("1-800 Contacts" or "Plaintiff") for its Complaint against

Defendants Vision Direct, Inc. ("Vision Direct") and Drugstore.com, Inc. ("Drugstore.com"),

alleges as follows:

### NATURE OF ACTION

1.      This is a civil action for direct and contributory trademark infringement and false

designation of origin under 15 U.S.C. Sections 1114(1) & 1125(a) and Utah common law; unfair

competition under Utah Code Ann. Section 13-5a-103 and Utah common law; direct and

contributory dilution under 15 U.S.C. Section 1125(c) and Utah Code Ann. Section 70-3a-403;

deceptive trade practices under Utah Code Ann. Section 13-11a-4; intentional interference with

economic relations under Utah common law; and unjust enrichment under Utah common law.

This Action seeks actual, enhanced and punitive damages, accounting, restitution and

disgorgement, corrective advertising, and injunctive relief, stemming from Defendants' abuse of

Plaintiff's federally registered and common law trademarks and service marks, Defendants'

diversion of customers away from commerce with Plaintiff, and Drugstore.com's inducement of

Vision Direct to breach contractual obligations Vision Direct owed and owes to Plaintiff.

### THE PARTIES

2.      Plaintiff 1-800 Contacts, Inc. is a Delaware corporation with a principal place of

business at 66 East Wadsworth Park Drive, Draper, Utah 84020.

3.    Plaintiff is informed and believes, and thereon alleges that Defendant Drugstore.com, Inc is a Delaware corporation with a principal place of business at 411 108th Ave NE, Suite 1400, Bellevue, Washington 98004.

4.    Plaintiff is informed and believes, and thereon alleges that Defendant Vision Direct, Inc. is a Texas corporation with a principal place of business at 411 108th Avenue NE, Suite 1400, Bellevue, Washington 98004.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction pursuant to 15 U.S.C. Section 1121(a) and 28 U.S.C. Sections 1331 and 1338(a) & (b), due to the particular federal questions presented by this case. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. Section 1367 because these claims are so related to the federal claims brought herein as to form part of the same case or controversy.

6.    This Court may assert personal jurisdiction over Defendants consonant with Due Process by virtue of the long arm statute of the State of Utah, Utah Code Ann. Sections 78-27-22 through 78-27-28.

7.    Venue is proper in this District and this Division under 28 U.S.C. Section 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated in this District and this Division, in that Plaintiff 1-800 Contacts has its principal place of business in this District and Division and is being harmed in this District and Division, and Defendants' wrongful acts are occurring in this District and Division as well as elsewhere.

## PLAINTIFF'S TRADEMARKS AND BUSINESS

8.      Plaintiff 1-800 Contacts has been and is now engaged in the business of selling and distributing contact lenses and eye care products via the Internet, mail, telephone and fax.

9.      Plaintiff is recognized as the leading distributor of contact lenses, with sales growing from $3.6 million in 1996 to $169 million in 2001 to in excess of $200 million in 2007.

10.     Plaintiff is the owner of United States service mark registration No. 2,675,866 for the word mark 1800CONTACTS, for use with "mail order and telephone order services in the field of contact lenses and related products, and electronic retailing services via computer featuring contact lenses and related products." This registration is valid and existing on the Principal Register of the United States Patent and Trademark Office ("USPTO"), and has become incontestable. A true and correct copy of the USPTO record of this registration is attached hereto as Exhibit A.

11.     Plaintiff is the owner of United States service mark registration No. 1,462,371 for the word mark LENS EXPRESS, for use with "retail store and mail order services in the field of contact lenses." This registration is valid and existing on the Principal Register of the United States Patent and Trademark Office ("USPTO"), and has become incontestable. A true and correct copy of the USPTO record of this registration is attached hereto as Exhibit B.

12.     Plaintiff is the owner of United States service mark registration No. 2,731,114 for the mark 1800 CONTACTS and design (collectively with the mark in the two immediately foregoing paragraphs, the "Registered Marks"), for use with "mail order and telephone order services in the field of contact lenses and related products, and electronic retailing services via

4

computer featuring contact lenses and related products." This registration is valid and existing on the Principal Register of the USPTO. A true and correct copy of the USPTO record of this registration is attached hereto as Exhibit C.

13.    Plaintiff has continuously promoted and advertised one or more of the Registered Marks in interstate commerce in the United States and throughout the world since at least as early as July 1995. Plaintiff has spent significant sums in such promotion and advertising since that time. In 2007 alone, Plaintiff spent in excess of twenty million dollars on marketing.

14.    In 2007, there were in excess of $200 million worth of retail transactions under the Registered Marks and Plaintiff's other trademarks and service marks.

15.    Through Plaintiff's actions, and because of widespread and favorable public acceptance and recognition, the Registered Marks and Plaintiff's other trademarks and service marks have become uniquely associated with, and hence identify, Plaintiff. The Registered Marks and Plaintiff's other trademarks and service marks are assets of significant value as a symbol of Plaintiff, its services, and its business goodwill.

16.    The Registered Marks are inherently distinctive and have acquired secondary meaning.

17.    The Registered Marks are famous marks.

18.    As part of its business, Plaintiff has established and operates a website at *www.1800contacts.com* for purposes of advertising and selling contact lenses and related products. Plaintiff prominently displays the Registered Marks on its website.

19.    Plaintiff derives a substantial portion of its sales from Internet sales. As a result of extensive website design and marketing efforts, millions of customers have developed strong

5

relationships with Plaintiff and return to the *www.1800contacts.com* website repeatedly to purchase their contact lenses and related products.

## DEFENDANTS' BUSINESS

20.    Defendant Drugstore.com, by itself or through one or more of its subsidiaries, has been and is now engaged in the business of selling and distributing contact lenses and eye care products, among other products, via the Internet, mail, telephone and fax, including in this District, and is a competitor of Plaintiff.

21.    Defendant Vision Direct, by itself or through one or more of its affiliates, has been and is now engaged in the business of selling and distributing contact lenses and eye care products via the Internet, mail, telephone and fax, including in this District, and is a competitor of Plaintiff.

22.    Vision Direct was acquired by Drugstore.com in December 2003, and is now a wholly owned subsidiary of Drugstore.com, either directly or through intermediate corporate entities.

## INTERNET SEARCHING AND KEYWORD ADVERTISING

23.    An Internet user desiring to find information on the Internet, including information on potential vendors of products that the user may desire, may use the services of one or more Internet "search engine" providers, such as Google, MSN, or Yahoo. Upon the user entering into a search engine provider's webpage certain words or phrases, known as "search terms," representing the information that the user desires to search for, the search engine offered by any of these providers will return a list of "links" to other websites corresponding to the

words or phrases entered. This list of websites returned on the basis of similarity or correspondence to the search terms are commonly referred to as the "organic search results."

24.    Beyond the organic search results, however, many Internet search engine providers also simultaneously present to the user paid advertisements which are also keyed to the search terms the user entered. The Google search engine, for instance, returns these paid advertisements in a section of the webpage entitled "Sponsored Links," located above or to the right of the organic search results.

25.    When purchasing advertisements with a search engine provider, an advertiser generally identifies one or more "keywords," which are words or phrases that, if entered by a user as a search term, will cause that advertiser's paid advertisement to be returned to that user. For example, either of the parties here might specify that one of its advertisements should be presented to a user if the user has entered as a search term the phrase, "contact lens."

26.    An advertiser can specify its trademark as a search engine advertising keyword. Unfortunately, many search engine providers allow a *competitor's* trademark to be specified as a keyword, thus presenting a company's advertisement to a user who may have been seeking a competitor's product.

27.    When purchasing advertisements with a search engine provider, an advertiser may also specify so-called "negative keywords," which are words or phrases that, if entered by a user as a search term, will cause that advertiser's advertisement *not* to be presented to that user.

28.    Defendants have purchased and currently purchase advertisements with various Internet search engine providers, and when purchasing such advertisements have specified and specify keywords and, at least for some period of time, have also specified negative keywords.

7

## **THE PRIOR ACTION AND THE SETTLEMENT AGREEMENT**

29.     On October 9, 2002, 1-800 Contacts filed an action (the "Prior Action") in the Federal District Court for the Southern District of New York, Case No. 02 CV 8043, naming two defendants, including Vision Direct. The Prior Action included causes of action against Vision Direct for federal trademark infringement, unfair competition under the Lanham Act, common law unfair competition, false designation of origin, dilution under the Lanham Act, dilution under New York state law, cybersquatting in violation of the Lanham Act, copyright infringement, contributory copyright infringement, and tortious interference with prospective economic advantage, with allegations that Vision Direct participated in a scheme to profit from and damage 1-800 Contact's trademarks and copyrights through bad faith use of Internet domain names and Internet advertising.

30.     On June 24, 2004, 1-800 Contacts and Vision Direct entered into a settlement agreement (the "Settlement Agreement") that led to dismissal of the Prior Action with prejudice on July 22, 2004. A true and correct copy of the Settlement Agreement is attached hereto as Exhibit D. Although Vision Direct had by that time been acquired by Drugstore.com, Drugstore.com was not a party to the Settlement Agreement.

31.     In entering into the Settlement Agreement, Vision Direct agreed to refrain from committing any of certain acts defined as "Prohibited Acts" by the Settlement Agreement. Section 4 of the Settlement Agreement includes as Prohibited Acts:

> d.      causing a Party's website or Internet advertisement to appear in response to any Internet search for the other Party's brand name, trademarks or URLs;
>
> e.      causing a Party's brand name, or link to the Party's Restricted Websites to appear as a listing in the search results page of an Internet

search engine, when a user specifically searches for the other Party's brand name, trademarks, or URLs;

* * *

i.      using the other Party's trademark or brand name to redirect users from the other Party's Restricted Websites . . . .

## <u>VIOLATION OF THE SETTLEMENT AGREEMENT</u>

32.    While the Settlement Agreement allows its parties to specify as Internet search engine keywords generic words such as "contacts," it expressly prohibits Vision Direct from causing advertisements for Vision Direct to appear when an Internet search user searches for Plaintiff's brand names or trademarks, such as the phrases constituting the Registered Marks, 1800CONTACTS and 1800 CONTACTS, or Plaintiff's trade name of 1-800 CONTACTS.

33.    Plaintiff is informed and believes, and thereon alleges that at some time following Drugstore.com's acquisition of Vision Direct, Drugstore.com took over all direct operational control and activities of Vision Direct, including the placement of Internet search engine advertising and the specification of keywords and negative keywords.

34.    For a period of time following execution of the Settlement Agreement, paid advertisements for Vision Direct did not appear in Internet search engine results when phrases constituting the Registered Marks were entered as search terms. Plaintiff is informed and believes, and thereon alleges that during this period Defendant Drugstore.com and/or Vision Direct achieved this outcome by specifying negative keywords when purchasing Internet search engine advertising, and were thus able to comply with the prohibitions of the Settlement Agreement.

35.    Without cause or justification, and in spite of the previous course of conduct, Defendants began, no later than July 27, 2007, to cause paid advertisements for Vision Direct to

9

appear in Internet search engine results when phrases constituting the Registered Marks were entered as search terms. Plaintiff is informed and believes, and thereon alleges that Defendants caused this outcome by ceasing to specify negative keywords when purchasing Internet search engine advertising.

36.     On July 27, 2007, Plaintiff sent to Defendants a written notice of the breach of the Settlement Agreement and demand to cure; however, Defendants failed to cure the breach or to prevent paid advertisements for Vision Direct from appearing in Internet search engine results when phrases constituting the Registered Marks were entered as search terms. On October 12, 2007, Plaintiff's attorneys sent another notice of breach and demand to cure to Defendants. A true and correct copy of Plaintiff's October 12, 2007 written demand, which attaches Plaintiff's prior July 27, 2007 written demand, is attached hereto as Exhibit E. Defendants have in response affirmatively and explicitly refused to cure the breach or to prevent paid advertisements for Vision Direct from appearing in Internet search engine results when phrases constituting the Registered Marks are entered as search terms.

37.     Defendants have placed and are placing with search engine providers paid advertisements for Vision Direct that appear in Internet search engine results when phrases constituting the Registered Marks are entered as search terms, in violation of Vision Direct's obligations under the Settlement Agreement. Exhibit F attached hereto comprises true and correct printouts of the results of searches performed on the Google search engine on February 23, 2008, using the Registered Marks or variants thereof as search terms, which, as indicated by the portions circled in red, each returned a paid advertisement for Vision Direct, indicating a breach of the Settlement Agreement.

38.     Vision Direct's breach of the Settlement Agreement was influenced, induced, procured, caused, performed, and effected, in whole or in part, by Drugstore.com.

## HARM TO PLAINTIFF

39.     Plaintiff has not released or excused Vision Direct from Vision Direct's obligations to Plaintiff under the Settlement Agreement.

40.     Plaintiff has not given Defendants license or permission to use the Registered Marks or any other of Plaintiff's trademarks or service marks to promote Defendants' business or to divert customers from Plaintiff.

41.     Defendants knew or should have known of Plaintiff's rights in the Registered Marks and Plaintiff's other trademarks and service marks.

42.     The use by Defendants of Plaintiff's famous Registered Marks to drive customer traffic away from Plaintiff's website and to the Vision Direct website reduces the ability of Plaintiff's famous Registered Marks to distinguish Plaintiff's services and identify Plaintiff as the source of those services.

43.     The use by Defendants of Plaintiff's Registered Marks to drive customer traffic away from Plaintiff's website and to the Vision Direct website is likely to confuse and deceive Plaintiff's current customers, potential customers, and the general public as to the origin and sponsorship of Defendants' services and/or Plaintiff's services, and trades upon the business goodwill and substantial customer recognition in Plaintiff's favor associated with the Registered Marks.

44.     Confusion regarding Defendants' implied affiliation with Plaintiff has damaged and will continue to damage Plaintiff's reputation and customer relationships.

11

45.    Defendants' actions steal customers from Plaintiff, erode the effectiveness of Plaintiff's Internet sales and marketing operations, and disrupt Plaintiff's business. If left unchecked, Defendants' actions may imperil the economic validity of Plaintiff's business.

46.    Plaintiff is informed and believes, and thereon alleges that Defendants acted willfully and maliciously and with the intent fraudulently to infringe upon Plaintiff's Registered Marks and to damage Plaintiff, with knowing and reckless indifference toward and disregard of Plaintiff's rights.

47.    Defendants' actions have caused damage and irreparable injury to Plaintiff, and further damage and irreparable injury will result if Defendants are allowed to continue to violate Plaintiff's rights.

48.    Plaintiff has no adequate remedy at law against Defendants' actions in violation of Plaintiff's rights.

## FIRST CLAIM FOR RELIEF
### (against all Defendants)
### Direct Infringement of Federally Registered Service Marks

49.    Plaintiff hereby repeats and realleges paragraphs 1 through 48 hereinabove as though fully set forth herein.

50.    Plaintiff is the registrant on the USPTO Principal Register of the Registered Marks.

51.    Plaintiff's Registered Marks are valid and inherently distinctive, and are further presumed to be valid, distinctive, and the property of Plaintiff due to their registration on the USPTO Principal Register.

12

52.    Defendants have used in commerce a reproduction, counterfeit, copy. or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

53.    Defendants' use described immediately above was without the consent of the registrant.

54.    Plaintiff is informed and believes, and thereon alleges that Defendants' above-described acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

55.    Plaintiff is informed and believes, and thereon alleges that Defendants did and continue to intentionally use such reproduction, counterfeit, copy, or colorable imitation of a registered mark with complete and conscious disregard of Plaintiff's rights and with the intent to trade on the business goodwill Plaintiff has created.

56.    Defendants' above-described acts constitute infringement of a registered service mark under 15 U.S.C. Section 1114(1), in that Defendants have used a reproduction, counterfeit, copy, or colorable imitation of a registered mark, in this District and elsewhere, alone or in combination with other words and other items, in connection with their services which are likely to cause confusion or mistake or to deceive the public that those services are authorized, sponsored by, or affiliated with Plaintiff, and such services have entered into commerce which may be regulated by Congress.

57.    Plaintiff and its business goodwill have been damaged and are likely to be damaged in the future by Defendants' service mark infringement, by reason of the likelihood that current and prospective consumers of Plaintiff's services will be confused as to the source, sponsorship, or affiliation of Plaintiff's services and/or Defendants' services.

58.    Defendants have unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

59.    By reason of Defendants' acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Defendants' conduct is permanently enjoined.

60.    This is an exceptional case within the meaning of 15 U.S.C. Section 1117(a).

### SECOND CLAIM FOR RELIEF

#### (against Drugstore.com)

#### Contributory Infringement of Federally Registered Service Marks

61.    Plaintiff hereby repeats and realleges paragraphs 1 through 60 hereinabove as though fully set forth herein.

62.    Plaintiff is the registrant on the USPTO Principal Register of the Registered Marks.

63.    Plaintiff's Registered Marks are valid and inherently distinctive, and are further presumed to be valid, distinctive, and the property of Plaintiff due to their registration on the Principal Register of the USPTO.

64.    Drugstore.com has intentionally induced Vision Direct to use in commerce a reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the

14

sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

65.     The use described immediately above was without the consent of the registrant.

66.     Plaintiff is informed and believes, and thereon alleges that Drugstore.com's above-described acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

67.     Plaintiff is informed and believes, and thereon alleges that Drugstore.com did and continues to intentionally and with complete and conscious disregard of Plaintiff's rights and with the intent to trade on the business goodwill Plaintiff has created, induce Vision Direct to infringe Plaintiff's Registered Marks.

68.     Drugstore.com's above-described acts constitute contributory infringement of a registered service mark under 15 U.S.C. Section 1114(1), in that Drugstore.com has intentionally induced the use by another of a reproduction, counterfeit, copy, or colorable imitation of a registered mark, in this District and elsewhere, alone or in combination with other words and other items, in connection with such other's services which are likely to cause confusion or mistake or to deceive the public that such other's services are authorized, sponsored by, or affiliated with Plaintiff, and such services have entered into commerce which may be regulated by Congress.

69.     Plaintiff and its business goodwill have been damaged and are likely to be damaged in the future by Drugstore.com's contributory service mark infringement, by reason of the likelihood that current and prospective consumers of Plaintiff's services will be confused as to the source, sponsorship, or affiliation of Plaintiff's services and/or Defendants' services.

15

70.     Drugstore.com has unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

71.     By reason of Drugstore.com's acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Drugstore.com's conduct is permanently enjoined.

72.     This is an exceptional case within the meaning of 15 U.S.C. Section 1117(a).

### THIRD CLAIM FOR RELIEF
### (against all Defendants)
### Federal Direct Infringement of All Trademarks and Service Marks

73.     Plaintiff hereby repeats and realleges paragraphs 1 through 72 hereinabove as though fully set forth herein.

74.     Plaintiff owns valid common law and federally registered trademarks and service marks entitled to protection under the Lanham Act.

75.     Defendants in connection with goods and services have used in commerce words, terms, names, symbols, or devices, in this District and elsewhere, alone or in combination with other words and other items, that are likely to cause confusion, cause mistake, and deceive that the goods, services, or commercial activities of Defendants originate from, are sponsored by, or are approved by Plaintiff.

76.     Plaintiff is informed and believes, and thereon alleges that Defendants continue intentionally to make such use of such words, terms, names, symbols, or devices with complete and conscious disregard of Plaintiff's rights and with the intent to trade on the business goodwill Plaintiff has created.

16

77.    Defendants' above-described acts constitute infringement of Plaintiff's trademarks and service marks under 15 U.S.C. Section 1125(a), in that Defendants have used words, terms, names, symbols, or devices in connection with Defendants' goods and services which are likely to cause confusion or mistake or to deceive the public that such goods and services are authorized, sponsored by, or affiliated with Plaintiff, and such goods and services have entered into commerce which may be regulated by Congress.

78.    Plaintiff and its business goodwill have been damaged and are likely to be damaged in the future by Defendants' trademark and service mark infringement, by reason of the likelihood that current and prospective consumers of Plaintiff's goods and services will be confused as to the source, sponsorship, or affiliation of Plaintiff's goods and services and/or Defendants' goods and services.

79.    Defendants have unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

80.    By reason of Defendants' acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Defendants' conduct is permanently enjoined.

81.    This is an exceptional case within the meaning of 15 U.S.C. Section 1117(a).

## FOURTH CLAIM FOR RELIEF

### (against Drugstore.com)

### Federal Contributory Infringement of All Trademarks and Service Marks

82.    Plaintiff hereby repeats and realleges paragraphs 1 through 81 hereinabove as though fully set forth herein.

83.    Plaintiff owns valid common law and federally registered trademarks and service marks entitled to protection under the Lanham Act.

84.    Vision Direct in connection with goods and services has used in commerce words, terms, names, symbols, or devices, in this District and elsewhere, alone or in combination with other words and other items, that are likely to cause confusion, cause mistake, and deceive that the goods, services, or commercial activities of Vision Direct originate from, are sponsored by, or are approved by Plaintiff.

85.    Plaintiff is informed and believes, and thereon alleges that Drugstore.com continues intentionally and with complete and conscious disregard of Plaintiff's rights and with the intent to trade on the business goodwill Plaintiff has created, to cause Vision Direct to make such use of such words, terms, names, symbols, or devices, therefore intentionally inducing Vision Direct to infringe Plaintiff's trademarks and service marks.

86.    Drugstore.com's above-described acts constitute contributory infringement of Plaintiff's trademarks and service marks under 15 U.S.C. Section 1125(a), in that Drugstore.com has intentionally induced the use by another of words, terms, names, symbols, or devices in connection with Defendants' goods and services which are likely to cause confusion or mistake or to deceive the public that such goods and services are authorized, sponsored by, or affiliated

with Plaintiff, and such goods and services have entered into commerce which may be regulated by Congress.

87.     Plaintiff and its business goodwill have been damaged and are likely to be damaged in the future by Drugstore.com's contributory trademark and service mark infringement, by reason of the likelihood that current and prospective consumers of Plaintiff's goods and services will be confused as to the source, sponsorship, or affiliation of Plaintiff's goods and services and/or Defendants' goods and services.

88.     Drugstore.com has unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

89.     By reason of Drustore.com's acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Drugstore.com's conduct is permanently enjoined.

90.     This is an exceptional case within the meaning of 15 U.S.C. Section 1117(a).

## FIFTH CLAIM FOR RELIEF
### (against all Defendants)
### Federal Direct False Designation of Origin

91.     Plaintiff hereby repeats and realleges paragraphs 1 through 90 hereinabove as though fully set forth herein.

92.     Plaintiff owns valid common law and federally registered trademarks and service marks entitled to protection under the Lanham Act.

93.     Defendants in connection with goods and services have used in commerce false designations of origin, in this District and elsewhere, that are likely to cause confusion, cause

mistake, and deceive as to the origin of Plaintiff's goods, services, or commercial activities and/or Defendants' goods, services, or commercial activities.

94.    Plaintiff is informed and believes, and thereon alleges that Defendants continue intentionally to use such false designations of origin with complete and conscious disregard of Plaintiff's rights and with the intent to trade on the business goodwill Plaintiff has created.

95.    Defendants' above-described acts constitute false designation of origin under 15 U.S.C. Section 1125(a), in that Defendants have used such false designations of origin in connection with Defendants' goods, services, or commercial activities which are likely to cause confusion or mistake or to deceive the public that such goods, services, or commercial activities are authorized, sponsored by, or affiliated with Plaintiff, and such goods, services, or commercial activities have entered into commerce which may be regulated by Congress.

96.    Plaintiff and its business goodwill have been damaged and are likely to be damaged in the future by Defendants' false designation of origin, by reason of the likelihood that current and prospective consumers of Plaintiff's goods and services will be confused as to the source, sponsorship, or affiliation of Plaintiff's goods, services, or commercial activities and/or Defendants' goods, services, or commercial activities.

97.    Defendants have unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

98.    By reason of Defendants' acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Defendants' conduct is permanently enjoined.

99.    This is an exceptional case within the meaning of 15 U.S.C. Section 1117(a).

## SIXTH CLAIM FOR RELIEF

### (against Drugstore.com)

### Federal Contributory False Designation of Origin

100.   Plaintiff hereby repeats and realleges paragraphs 1 through 99 hereinabove as though fully set forth herein.

101.   Plaintiff owns valid common law and federally registered trademarks and service marks entitled to protection under the Lanham Act.

102.   Drugstore.com has caused others in connection with goods and services to use in commerce false designations of origin, in this District and elsewhere, that are likely to cause confusion, cause mistake, and deceive as to the origin of Plaintiff's goods, services, or commercial activities, and/or Defendants' goods, services, or commercial activities.

103.   Plaintiff is informed and believes, and thereon alleges that Drugstore.com continues intentionally and with complete and conscious disregard of Plaintiff's rights and with the intent to trade on the business goodwill Plaintiff has created, to cause others to use such false designations of origin.

104.   Drugstore.com's above-described acts constitute contributory false designation of origin under 15 U.S.C. Section 1125(a), in that Drugstore.com has intentionally caused others to use false designations of origin in connection with Defendants' goods, services, or commercial activities which are likely to cause confusion or mistake or to deceive the public that such goods, services, or commercial activities are authorized, sponsored by, or affiliated with Plaintiff, and such goods, services, or commercial activities have entered into commerce which may be regulated by Congress.

21

105.    Plaintiff and its business goodwill have been damaged and are likely to be damaged in the future by Drugstore.com's contributory false designation of origin, by reason of the likelihood that current and prospective consumers of Plaintiff's goods, services, or commercial activities will be confused as to the source, sponsorship, or affiliation of Plaintiff's goods, services, or commercial activities and/or Defendants' goods, services, or commercial activities.

106.    Drugstore.com has unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

107.    By reason of Drugstore.com's acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Drugstore.com's conduct is permanently enjoined.

108.    This is an exceptional case within the meaning of 15 U.S.C. Section 1117(a).

## SEVENTH CLAIM FOR RELIEF
### (against all Defendants)
### Common Law Trademark and Service Mark Infringement

109.    Plaintiff hereby repeats and realleges paragraphs 1 through 108 hereinabove as though fully set forth herein.

110.    Plaintiff has used certain marks in connection with the sale, distribution, offering for sale, or advertising of goods or services (the "Common Law Marks").

111.    The Common Law Marks are inherently distinctive and have acquired secondary meaning.

112.    The above-described acts of Defendants constitute trademark and service mark infringement under the common law of the State of Utah, in that Defendants have used in

22

connection with their goods and services trademarks and service marks which are likely to cause confusion or mistake or to deceive the public that their goods and services are authorized, sponsored by, or affiliated with Plaintiff.

113.    Plaintiff and its business goodwill have been damaged and are likely to be damaged in the future by Defendants' common law trademark and service mark infringement, by reason of the likelihood that current and prospective consumers of Plaintiff's goods and services will be confused as to the source, sponsorship, or affiliation of Plaintiff's goods and services and/or Defendants' goods and services.

114.    Defendants have unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

115.    By reason of Defendants' acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Defendants' conduct is permanently enjoined.

116.    Plaintiff is informed and believes, and thereon alleges that Defendants acted willfully and maliciously and with the intent fraudulently to infringe upon Plaintiff's Common Law Marks and to damage Plaintiff, with knowing and reckless indifference toward and disregard of Plaintiff's rights.

### EIGHTH CLAIM FOR RELIEF

#### (against all Defendants)

#### State Statutory Unfair Competition

117.    Plaintiff hereby repeats and realleges paragraphs 1 through 116 hereinabove as though fully set forth herein.

118.    The above-described acts of Defendants constitute unfair competition under Utah Code Ann. Section 13-5a-103, in that Defendants have engaged in an intentional business act or practice that is unlawful, unfair, or fraudulent, leads to a material diminution in the value of intellectual property, and constitutes infringement of a trademark/service mark and a trade name.

119.    Plaintiff and its business goodwill have been damaged and are likely to be damaged in the future by Defendants' actions by reason of the likelihood that current and prospective consumers of Plaintiff's goods and services will be confused as to the source, sponsorship, or affiliation of Plaintiff's goods and services and/or Defendants' goods and services.

120.    Defendants have unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

121.    By reason of Defendants' acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Defendants' conduct is permanently enjoined.

122.    Plaintiff is informed and believes, and thereon alleges that Defendants acted willfully and maliciously and with the intent fraudulently to damage Plaintiff and Plaintiff's trademarks and service marks, with knowing and reckless indifference toward and disregard of Plaintiff's rights.

### NINTH CLAIM FOR RELIEF
#### (against all Defendants)
#### Common Law Unfair Competition

123.    Plaintiff hereby repeats and realleges paragraphs 1 through 122 hereinabove as though fully set forth herein.

24

124.    The above-described acts of Defendants constitute unfair competition under the common law of the State of Utah, in that Defendants by their acts have unfairly competed and are unfairly competing with Plaintiff.

125.    Plaintiff and its business goodwill have been damaged and are likely to be damaged in the future by Defendants' actions by reason of the likelihood that current and prospective consumers of Plaintiff's goods and services will be confused as to the source, sponsorship, or affiliation of Plaintiff's goods and services and/or Defendants' goods and services.

126.    Defendants have unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

127.    By reason of Defendants' acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Defendants' conduct is permanently enjoined.

128.    Plaintiff is informed and believes, and thereon alleges that Defendants acted willfully and maliciously and with the intent fraudulently to unfairly compete with and damage Plaintiff, with knowing and reckless indifference toward and disregard of Plaintiff's rights.

## TENTH CLAIM FOR RELIEF
### (against all Defendants)
### Federal Direct Trademark and Service Mark Dilution

129.    Plaintiff hereby repeats and realleges paragraphs 1 through 128 hereinabove as though fully set forth herein.

130.    Plaintiff owns valid common law and federally registered trademarks and service marks entitled to protection under the Lanham Act.

131.    The common law and federally registered trademarks and service marks owned by Plaintiff are famous within the meaning of 15 U.S.C. Section 1125(c), as they are widely recognized by the general consuming public of the United States as a designation of source of Plaintiff's goods and services.

132.    The common law and federally registered service marks owned by Plaintiff are inherently distinctive or have acquired distinctiveness.

133.    The above-described acts of Defendants constitute dilution under 15 U.S.C. Section 1125(c), in that, after Plaintiff's trademarks and service marks became famous, Defendants began use of marks or trade names that are likely to blur and impair the distinctiveness of Plaintiff's famous marks, thus reducing the ability of those marks to distinguish Plaintiff's goods and services and identify Plaintiff as the source of those goods and services.

134.    Plaintiff and its business goodwill have been damaged and are likely to be damaged in the future by Defendants' actions by reason of the likelihood that Plaintiff's famous marks are likely to be rendered less able to distinguish Plaintiff's goods and services to current and prospective consumers of Plaintiff's goods and services and identify Plaintiff as the source of those goods and services.

135.    Defendants have unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

136.    By reason of Defendants' acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Defendants' conduct is permanently enjoined.

137.    Plaintiff is informed and believes, and thereon alleges that Defendants continue intentionally to blur and dilute Plaintiff's famous trademarks and service marks with complete and conscious disregard of Plaintiff's rights and with the intent to trade on the business goodwill Plaintiff has created.

138.    This is an exceptional case within the meaning of 15 U.S.C. Section 1117(a).

### ELEVENTH CLAIM FOR RELIEF

#### (against Drugstore.com)

#### Federal Contributory Trademark and Service Mark Dilution

139.    Plaintiff hereby repeats and realleges paragraphs 1 through 138 hereinabove as though fully set forth herein.

140.    Plaintiff owns valid common law and federally registered trademarks and service marks entitled to protection under the Lanham Act.

141.    The common law and federally registered trademarks and service marks owned by Plaintiff are famous within the meaning of 15 U.S.C. Section 1125(c), as they are widely recognized by the general consuming public of the United States as a designation of source of Plaintiff's goods and services.

142.    The common law and federally registered trademarks and service marks owned by Plaintiff are inherently distinctive or have acquired distinctiveness.

143.    The above-described acts of Drugstore.com constitute contributory dilution under 15 U.S.C. Section 1125(c), in that, after Plaintiff's trademarks and service marks became famous, Drugstore.com induced others to begin use of marks or trade names that are likely to blur and impair the distinctiveness of Plaintiff's famous marks, thus reducing the ability of those

27

marks to distinguish Plaintiff's goods and services and identify Plaintiff as the source of those goods and services.

144.    Plaintiff and its business goodwill have been damaged and are likely to be damaged in the future by Drugstore.com's actions by reason of the likelihood that Plaintiff's famous marks are likely to be rendered less able to distinguish Plaintiff's goods and services to current and prospective consumers of Plaintiff's goods and services and identify Plaintiff as the source of those goods and services.

145.    Drugstore.com has unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

146.    By reason of Drugstore.com's acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Drugstore.com's conduct is permanently enjoined.

147.    Plaintiff is informed and believes, and thereon alleges that Drugstore.com continues intentionally to cause others to blur and dilute Plaintiff's famous trademarks and service marks with complete and conscious disregard of Plaintiff's rights and with the intent to trade on the business goodwill Plaintiff has created.

148.    This is an exceptional case within the meaning of 15 U.S.C. Section 1117(a).

## TWELFTH CLAIM FOR RELIEF
### (against all Defendants)
### State Statutory Trademark Dilution

149.    Plaintiff hereby repeats and realleges paragraphs 1 through 148 hereinabove as though fully set forth herein.

150.    Plaintiff owns valid common law and federally registered service marks entitled to protection under Utah Code Ann. Section 70-3a-403.

151.    The common law and federally registered service marks owned by Plaintiff are famous in the State of Utah within the meaning of Utah Code Ann. Section 70-3a-403.

152.    The above-described acts of Defendants constitute dilution under Utah Code Ann. Section 70-3a-403, in that, after Plaintiff's trademarks and service marks became famous in the State of Utah, Defendants began commercial use of such marks in a way that causes dilution of the distinctive quality of such marks, thus reducing the ability of those marks to distinguish Plaintiff's goods and services and identify Plaintiff as the source of those goods and services.

153.    Plaintiff and its business goodwill have been damaged and are likely to be damaged in the future by Defendants' actions, by reason of the likelihood that Plaintiff's famous marks will be rendered less able to distinguish Plaintiff's services to purchasers and prospective consumers of Plaintiff's services and identify Plaintiff as the source of those services.

154.    Defendants have unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

155.    By reason of Defendants' acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Defendants' conduct is permanently enjoined.

156.    Plaintiff is informed and believes, and thereon alleges that Defendants in their actions willfully intended to trade on Plaintiff's reputation and to cause dilution of Plaintiff's famous marks, acting maliciously and with intent fraudulently to damage Plaintiff and Plaintiff's

29

trademarks and service marks, and with knowing and reckless indifference toward and disregard of Plaintiff's rights.

### THIRTEENTH CLAIM FOR RELIEF

#### (against All Defendants)

#### State Statutory Deceptive Trade Practices

157.    Plaintiff hereby repeats and realleges paragraphs 1 through 156 hereinabove as though fully set forth herein.

158.    The above-described acts of Defendants constitute deceptive trade practices under Utah Code Ann. Section 13-11a-4, in that, in the course of Defendants' business, vocation, or occupation, Defendants have passed off and are passing off goods or services as those of another, have caused and are causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services, have caused and are causing likelihood of confusion or of misunderstanding as to affiliation, connection, association with, or certification by another, and have engaged and are engaging in other conduct which similarly creates a likelihood of confusion or of misunderstanding.

159.    Plaintiff notified Defendants and demanded Defendants cease their unlawful conduct; by virtue of such notice, Defendants were given implicit notice of their violation of Title 13, Chapter 11a of the Utah Code, and were implicitly provided an opportunity to promulgate a correction notice by the same media as the violating advertisement. However, Defendants did not promulgate a correction notice within ten days of receipt of such notice.

160.    Defendant have unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

30

161.    By reason of Defendants' acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Defendants' conduct is permanently enjoined.

162.    Plaintiff is informed and believes, and thereon alleges that Defendants acted willfully and maliciously and with the intent fraudulently to engage in deceptive trade practices and to damage Plaintiff, with knowing and reckless indifference toward and disregard of Plaintiff's rights.

### FOURTEENTH CLAIM FOR RELIEF

#### (against Drugstore.com)

#### Intentional Interference with Economic Relations

#### (as to Vision Direct's breach of the Settlement Agreement)

163.    Plaintiff hereby repeats and realleges paragraphs 1 through 162 hereinabove as though fully set forth herein.

164.    Through the above-described acts of Drugstore.com causing Vision Direct to breach the Settlement Agreement between Vision Direct and Plaintiff, Drugstore.com has intentionally interfered with Plaintiff's existing economic relations.

165.    Drugstore.com interfered with Plaintiff's existing economic relations for an improper purpose, in that Drugstore.com's predominant purpose was to injure Plaintiff, and Drugstore.com interfered by improper means, in that inducing breach of contract is contrary to the common law of the State of Utah and violates established standards of commerce.

166.    Drugstore.com's interference has caused injury to Plaintiff and Plaintiff's business goodwill, and is likely to cause injury to Plaintiff and Plaintiff's business goodwill in the future, by improperly destroying contractual protections against: (a) the likelihood of

31

confusing and deceiving Plaintiff's current and potential customers and the general public as to the origin and sponsorship of Plaintiff's goods and services and/or Vision Direct's goods and services; (b) reduction of the ability of Plaintiff's famous Registered Marks to distinguish Plaintiff's goods and services and identify Plaintiff as the source of those goods and services; (c) trading upon the business goodwill and substantial customer recognition associated with Plaintiff's trademarks and service marks; and (d) reduction of Plaintiff's website-based commerce and sales.

167.    Drugstore.com has unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

168.    By reason of Drugstore.com's acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Drugstore.com's conduct is permanently enjoined.

169.    Plaintiff is informed and believes, and thereon alleges that Drugstore.com's interference was and is willful and malicious, with intent fraudulently to infringe upon and damage Plaintiff's trademarks and service marks and to damage Plaintiff, and with knowing and reckless indifference toward and disregard of Plaintiff's rights.

## FIFTEENTH CLAIM FOR RELIEF
### (against all Defendants)
### Intentional Interference with Economic Relations
### (as to customers diverted from Plaintiff's website)

170.    Plaintiff hereby repeats and realleges paragraphs 1 through 169 hereinabove as though fully set forth herein.

171.    Many of Plaintiff's customers regularly and repeatedly purchase contact lenses and related products through Plaintiff's website. It is likely that such customers and others will desire to visit or continue to visit Plaintiff's website and there purchase Plaintiff's goods and consume Plaintiff's services in the future.

172.    Many visitors to Plaintiff's website engage in commerce with Plaintiff once they reach the website, and absent Defendants' actions driving Plaintiff's current and potential customers away from Plaintiff's website and toward Vision Direct's website, it is likely that Plaintiff would have realized and would realize in the future additional website-based and other sales from these existing and new customers.

173.    Defendants knew or should have known of the existence of Plaintiff's reasonable expectation of future transactions with these returning and future customers.

174.    Through the above-described acts of Defendants driving customers away from Plaintiff's website and to the Vision Direct website instead, Defendants intentionally interfered with Plaintiff's potential economic relations with such returning and future customers.

175.    Defendants interfered with Plaintiff's potential economic relations for an improper purpose, in that Defendants' predominant purpose was to injure Plaintiff, and Defendants interfered by improper means, in that Plaintiff's current and potential customers were driven away from Plaintiff's website through trademark infringement, false designation of origin, dilution, and acts deemed by Utah statutes to be unfair competition and deceptive trade practices, all of which violates state and federal law and established standards of commerce.

176.    Defendants' interference has caused injury to Plaintiff and Plaintiff's business goodwill, and is likely to cause injury to Plaintiff and Plaintiff's business goodwill in the future,

by creating the likelihood of confusing and deceiving Plaintiff's current and potential customers and the general public as to the origin and sponsorship of Plaintiff's goods and services and/or Defendants' goods and services; by reducing the ability of Plaintiff's famous Registered Marks to distinguish Plaintiff's goods and services and identify Plaintiff as the source of those goods and services; by trading upon the business goodwill and substantial customer recognition associated with Plaintiff's trademarks and service marks; and by reducing Plaintiff's website-based commerce and sales.

177.    Defendants have unfairly profited from the acts alleged herein and will be unjustly enriched in the future unless and until such conduct is permanently enjoined.

178.    By reason of Defendants' acts alleged herein, Plaintiff has suffered and will suffer irreparable harm in the future, for which Plaintiff has no adequate remedy at law, unless and until Defendants' conduct is permanently enjoined.

179.    Plaintiff is informed and believes, and thereon alleges that Defendants' interference was and is willful and malicious, with intent fraudulently to infringe upon and damage Plaintiff's trademarks and service marks and to damage Plaintiff, and with knowing and reckless indifference toward and disregard of Plaintiff's rights.

## SIXTEENTH CLAIM FOR RELIEF
### (against all Defendants)
### Unjust Enrichment

180.    Plaintiff hereby repeats and realleges paragraphs 1 through 179 hereinabove as though fully set forth herein.

181.    Defendants have unfairly profited from, and have been unjustly enriched by, their acts as alleged herein.

182.    At all relevant times, Defendants have been aware of the unfair profit, benefits, and unjust enrichment arising from their acts as alleged herein.

183.    Under the circumstances of this Action, it is inequitable for Defendants to retain such profits and benefits.

184.    As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and its business goodwill have suffered, and will continue to suffer, damages as alleged more fully above.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

1.    For a preliminary and permanent injunction prohibiting Defendants, their officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with them, from engaging in any of the following:

(a)    placing or maintaining with any search engine provider any advertisement that appears in Internet search engine results when any words or phrases identical or substantially similar to any of Plaintiff's trademarks, service marks, or trade name are entered as search terms, or causing any other entity to do so;

(b)    infringing any of Plaintiff's federally registered or common law trademarks or service marks, or causing any other entity to do so;

(c)    diluting, blurring, or tarnishing any of Plaintiff's famous trademarks or service marks, or causing any other entity to do so;

(d)     making any false designations of origin, descriptions, representations or suggestions that Plaintiff is the source, sponsor, or in any way affiliated with Defendants or their websites, products or services, or causing any other entity to do so;

(e)     engaging in any unfair or deceptive advertising or trade practice with respect or Plaintiff, or causing any other entity to do so; or

(f)     otherwise unfairly competing with Plaintiff in any manner whatsoever, or causing any other entity to do so.

2.     For a preliminary and permanent injunction prohibiting Drugstore.com, its officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with them, from inducing Vision Direct to breach the Settlement Agreement, or causing any other entity to so induce.

3.     For an order directing Defendants to file with this Court and serve on Plaintiff within thirty (30) days after service of the injunction, a report in writing and under oath describing in detail the manner and form in which Defendants have complied with the orders of this Court.

4.     For an order directing an accounting to determine all gains, profits, savings, and advantages obtained by Defendants as a result of their wrongful acts.

5.     For restitution to Plaintiff of all gains, profits, savings, and advantages obtained by Defendants as a result of their wrongful acts.

6.     For an award of all actual damages sustained by Plaintiff and all profits realized by Defendants as a result of their wrongful acts, and that such damages and/or profits be trebled and/or enhanced to the maximum amount provided by law.

36

7.    For an award of an amount sufficient to conduct a corrective advertising campaign to dispel the effects of Defendants' wrongful conduct and confusing and misleading advertising.

8.    For punitive damages under Utah statutes and common law in an amount sufficient to deter other and future similar conduct by Defendants and others.

9.    For prejudgment interest.

10.    For all of Plaintiff's costs of this Action, including attorneys' fees.

11.    For such other or further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff 1-800 Contacts, pursuant to Federal Rule of Civil Procedure 38, hereby demands a trial by jury of all issues so triable.

DATED:  February 26, 2008.

Respectfully submitted,

MILLER GUYMON, P.C.

Paxton R. Guymon
Craig H. Howe
Lauren Y. Parry

CHRISTIE, PARKER & HALE, LLP
David J. Steele
Howard A. Kroll
Gary Dukarich
(*pro hac vice* admission being sought)

Attorneys for Plaintiff 1-800 Contacts, Inc.

37

**JS 44** (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

FILED
U.S. DISTRICT COURT

2008 FEB 26  P 4:18

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

## I. (a) PLAINTIFFS
1-800 CONTACTS, INC.

**DEFENDANTS**
DRUGSTORE.COM, INC. and VISION DIRECT, INC.

(b) County of Residence of First Listed Plaintiff  Salt Lake
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  King
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Paxton R. Guymon, Miller Guymon, P.C., 165 Regent Street, Salt Lake City,Utah 84111, (801)363-5600

Attorneys (If Known)
Wilson, Sonsini, Goodrich & Rosati, 1700 K Street, 5th Floor, Washington,D.C. 200006-3817

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☒ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **LABOR** | ☐ 490 Cable/Sat TV |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. § 1117
Brief description of cause:
Trademark Infringement and Dilution

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ ACCORDING TO PROOF
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____    DOCKET NUMBER _____

DATE  2/26/08

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____

Case: 2:08cv00157
Assigned To : Campbell, Tena
Assign. Date : 2/26/2008
Description: 1800 Contacts v. Drugstore.com