UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

1-800 CONTACTS, INC.,

    Plaintiff/Counterclaim Defendant,

v.

VISION DIRECT, INC.,

    Defendant/Counterclaim-Plaintiff.

Case No.: 08-cv-01949 (GBD)

ECF Case

**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR DISMISSAL OF DEFENDANT'S COUNTERCLAIMS PURSUANT TO FED. R. CIV. P. 12(B)(6)**

## TABLE OF CONTENTS

**PAGE(S)**

I. INTRODUCTION .................................................................................................... 1

II. THE FORUM SELECTION CLAUSE IS NOT AS BROAD AS VISION DIRECT CONTENDS. ............................................................................................ 1

III. THE FORUM SELECTION CLAUSE DOES NOT APPLY TO THE UTAH ACTION BECAUSE DETERMINATION OF THOSE CLAIMS DO NOT REQUIRE REFERENCE TO THE SETTLEMENT AGREEMENT ................ 3

IV. VISION DIRECT'S ANALYSIS UNDER THE FIRST CIRCUIT'S "OPERATIVE FACTS TEST" IS MISGUIDED. ................................................. 5

V. PLAINTIFF'S PRIOR CONDUCT IS ENTIRELY CONSISTENT WITH THE POSITIONS TAKEN IN ITS MOVING AND REPLY PAPERS. ....................... 7

VI. CONCLUSION ......................................................................................................... 9

# TABLE OF AUTHORITIES

**CASES**            **PAGE(S)**

*Bell Atlantic Corp. v. Twombly,*
   2007 U.S. LEXIS 5901, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ................................. 9

*Cheever v. Academy Chicago Ltd.,*
   685 F. Supp. 914 (S.D.N.Y. 1988) ............................................................................. 3, 4

*Dan-Dee Int'l, Ltd. v. Kmart Corp.,* No. 99 Civ. 11689,
   2000 U.S. Dist. LEXIS 13411 ....................................................................................... 4

*Corcovado Music Corp. v. Hollis Music, Inc.,*
   981 F.2d at 682 (2nd Cir. 1993) ..................................................................................... 4

*Direct Mail Prod. Services v. MBNA Corp.,*
   No. 99 Civ. 10550, 2000 U.S. Dist. LEXIS 12945 (S.D.N.Y. Sept. 6, 2000) ............. 3, 4

*Gulf Oil Corp. v. Gilbert,*
   330 U.S. 501, 67 S. Ct. 839, 91 L. Ed. 1055 (1947) ...................................................... 8

*Kenneth Light,*
   U.S. Dist. LEXIS 5855 ............................................................................................... 3, 4

*Kenneth Light v. Richard Taylor,*
   2007 U.S. Dist. LEXIS 5855 (S.D.N.Y. 2007) .............................................................. 3

*Marks v. New York University,*
   61 F. Supp. 2d 81 (S.D.N.Y. 1999) ................................................................................ 5

*Phillips v. Audio Active, Ltd.,*
   494 F.3d 378 (2d Cir. 2007) ........................................................................................... 5

*Reder Enterprises, Inc. v. Loomis, Fargo & Co.,*
   490 F. Supp. 2d 111 (D. Mass. 2007) ............................................................................ 2

*In re Ricoh Corp.,*
   870 F.2d at 573 ............................................................................................................... 8

*Team Tires Plus. Ltd. v. Tires Plus, Inc.,*
   394 F.3d 831 (10th Cir. 2005) .................................................................................... 6, 7

*Utah Lighthouse Ministry, Inc. v. Discovery Computing, Inc.,*
   506 F. Supp. 2d 889 (D. Utah 2007) .............................................................................. 6

**STATUTES**

28 U.S.C. § 1332 ....................................................................................................................... 7

## RULES

Fed. R. Civ. P. 12(b)(6)..................................................................................................1, 9

## TREATISE

H. Fink, D. Weckstein & J. Wicker, Moore's Federal Practice ¶ 0.145[5] (1988) ..........................8

I.  **INTRODUCTION**

Defendant Vision Direct, Inc.'s ("Vision Direct") Counterclaim for Breach of Contract against Plaintiff 1-800 Contacts, Inc. ("Plaintiff"), as well as its Opposition to Plaintiff's Motion for Dismissal of Defendant's Counterclaims (the "Opposition"), are each premised on an overbroad and improper interpretation of the forum selection clause in the Settlement Agreement. Vision Direct wrongly asserts that the forum selection clause should be interpreted to encompass claims that arise from federal and state trademark and unfair competition laws as well as Utah State law even though the trier of fact, in resolving those claims, need not refer to any provision of the Settlement Agreement.

Vision Direct's interpretation of the forum selection clause goes far beyond the parties' negotiated agreement and settled case law regarding the application of forum selection clauses to non-contract claims. Interestingly, the Opposition is remarkably silent on what provision of the Settlement Agreement would be examined in order to determine whether Vision Direct violated trademark and unfair competition laws. Instead, Vision Direct focuses on the "operative facts test" even though the Second Circuit does not apply such a test to determine whether a forum selection clause applies.

Vision Direct's Opposition, as well as its counterclaims, has no basis in law or fact and should be rejected and dismissed by the Court.

II.  **THE FORUM SELECTION CLAUSE IS NOT AS BROAD AS VISION DIRECT CONTENDS.**

Vision Direct spends a good portion of the Opposition defending against a position Plaintiff never advocates. Contrary to Vision Direct's assertions, Plaintiff never asserts in its moving papers that the forum selection clause should be interpreted to exclude any and all non-contract claims. [Opposition, p. 6.] Instead, Plaintiff asserts that the forum selection clause is

1

limited by its plain language. That is, the District Court in New York should have jurisdiction only over claims arising "in connection with" the Settlement Agreement. Plaintiff does not dispute the validity of the forum selection clause; however, the forum selection clause must be enforced only as it is written.

Vision Direct cannot now, after the agreement has been negotiated and executed, broaden the language to include any litigation between the parties even where the Settlement Agreement is irrelevant to the claims (as is the case in the Utah Action). If it could, Vision Direct would delete the phrase "in connection with this Agreement" from the forum selection clause and transform that clause into requiring the Southern District of New York be the forum for all disputes, of *any* nature, between Plaintiff and Vision Direct. If the parties had desired such an outcome, they could have drafted a broader clause without that phrase. They did not do so.

Regardless, Vision Direct's attempt to broaden the language of the forum selection clause misses the point.[1] In order for claims to be subject to the forum selection clause, as the plain language states and as the law dictates, the claims brought in the litigation must be *connected with* the Settlement Agreement.

As shown below, the Utah claims arise from federal and state trademark and unfair competition laws and Utah tort laws and Plaintiff is seeking remedies under those laws. The Utah Action does not allege any contract-related cause of action nor does it seek contractual remedies. The Settlement Agreement does not affect the obligations imposed by the federal and

---

[1] For example, Vision Direct focuses on cases finding that the phrase "in connection with" encompass claims beyond "simple breach of contract." [Opposition, p. 7.] This is not in dispute. It should be noted, however, that Vision Direct also cites a Massachusetts District Court case for the false proposition that forum selection clauses such as "the one at issue here" are "intentionally broad" and "generous in scope.'" [Opposition, p. 7.] However, in that case, the forum selection clause did not use the phrase "in connection with" but instead used "any dispute arising out of this Agreement" See, *Reder Enters., Inc. v. Loomis, Fargo & Co.*, 490 F. Supp. 2d 111, 115 (D. Mass. 2007). Regardless, Plaintiff does not dispute that some non-contract claims could be subject to the forum selection clause, just not those brought in the Utah Action.

2

state laws at issue in the Utah Action and reference to the Settlement Agreement will not be needed to adjudicate the Utah claims. Regardless of Vision Direct's attempts to broaden the interpretation of the forum selection clause, it does not change the simple fact that the Utah Action is not *connected with* the Settlement Agreement.

### III. THE FORUM SELECTION CLAUSE DOES NOT APPLY TO THE UTAH ACTION BECAUSE DETERMINATION OF THOSE CLAIMS DO NOT REQUIRE REFERENCE TO THE SETTLEMENT AGREEMENT

To determine whether the claims are subject to a forum selection clause, this court looks to whether the claims arise from the contract. *Kenneth Light v. Richard Taylor*, 2007 U.S. Dist. LEXIS 5855, *16 (S.D.N.Y. 2007). Here, the Utah claims do not arise from the contract because the claims in the Utah Action do not depend on any rights and duties which will be analyzed by reference to the contract. *Direct Mail Prod. Servs. v. MBNA Corp.*, No. 99 Civ. 10550, 2000 U.S. Dist. LEXIS 12945, at *17 (S.D.N.Y. Sept. 6, 2000). Instead, the Utah claims arise from, and depend on, rights and duties enumerated in federal and state trademark and unfair competition laws and Utah tort law. *Cheever v. Acad. Chicago Ltd.*, 685 F. Supp. at 917 (S.D.N.Y. 1988) (refusing to enforce a forum selection clause where the rights asserted arose from copyright law and not from the contract).

In the recent case of *Kenneth Light v. Richard Taylor* in this district, the court found that a forum selection clause applying to "litigation ... concerning ... this Agreement" did not encompass independent copyright claims. *Kenneth Light,* U.S. Dist. LEXIS 5855 at *17. Even though the Court found the forum selection clause broad enough to include non-contract claims, it nonetheless found that the copyright claims did not arise under the agreement since the copyright complaint did not allege violations of the agreement nor did it seek damage for any violation of it. *Id.*

3

The *Kenneth Light* court cited the same case law in this district as Plaintiff did in its moving papers -- not surprising since it is precedential case law in this district. *Id. See, Corcovado Music Corp. v. Hollis Music, Inc.*, 981 F.2d at 682 (2nd Cir. 1993) (refusing to enforce a forum selection clause on the ground that the plaintiff had sued for copyright infringement and had not alleged breach of contract)[2]; *Cheever v. Acad. Chicago Ltd.*, 685 F. Supp. 914, 917 (S.D.N.Y. 1988) (refusing to enforce a forum selection clause where the rights asserted arose from copyright law and not from the contract)[3]; *Dan-Dee Int'l, Ltd. v. Kmart Corp.*, No. 99 Civ. 11689, 2000 U.S. Dist. LEXIS 13411, *14 (holding that a forum selection clause did not encompass a copyright action where the plaintiff sought monetary and injunctive relief under federal statutes, as opposed to damages for breach of contract).[4]

Put another way, in evaluating whether a forum selection clause applies to claims brought, courts also look to "whether the plaintiff's claims depend on rights and duties that must

---

[2] Vision Direct distinguishes *Corcovado Music Corp.* by stating "there is no indication that the language of the forum selection clause ... was as broad as the language chosen by the Parties in this case...." [Opposition, p. 8, FN 5.] However, regardless of whether the court recites the forum selection clause, it finds that because the action "arises under" the Copyright Act, and the complainant "asserts no rights whatsoever arising out of the those contracts," the contracts did not form any part of plaintiff's case and the forum selection clause did not apply. *Corcovado Music Corp. v. Hollis Music, Inc.*, 981 F.2d at 682.

[3] Vision Direct distinguishes *Cheever* by stating that the plaintiffs in that case "expressly rejected the contract containing the forum selection clause as the source of any rights with respect to the underlying claims." [Opposition, p. 12.] Instead of distinguishing *Cheever* from the instant case, Vision Direct states Plaintiff's position. Here, Plaintiff does not cite to the Agreement as the source of any rights asserted in the Utah Action. Further, the *Cheever* court clearly states that "torts related to the agreement" would be controlled by the forum selection clause "if the tort claims arise out of, or because of, the ... agreement." *Cheever*, 685 F. Supp. at 917. Here, the Utah claims do not arise out of, or because of, the Agreement.

[4] Vision Direct distinguishes *Dan-Dee Int'l Ltd.* by implying that because the forum selection clause was in a 2 year old purchase order involving different goods, that the clause did not apply. [Opposition, p. 12.] However, the Court did not make that distinction and instead, analyzing the clause, found Plaintiff's copyright claims were not subject to it because it was a copyright action and Plaintiff was not "attempting to assert contractual rights arising from [the] agreement with defendant." [*Dan-Dee Int'l Ltd.*, 2000 U.S. Dist. LEXIS 13411, at *14.] Moreover, that forum selection clause was very broad, governing "any litigation which relates to any order or which otherwise arises directly or indirectly out of or in connection with said business relationship..." and the court still found the copyright claims were not subject to it.

be analyzed by reference to the contractual relationship." *Direct Mail Prod. Servs. v. MBNA Corp.*, No. 99 Civ. 10550, 2000 U.S. Dist. LEXIS 12945, at *17 (S.D.N.Y. Sept. 6, 2000).

To resolve the Utah claims, the trier of fact need not, and will not, refer to any provision of the Settlement Agreement to determine right and duties of the parties. It is notable that Vision Direct did not cite to any provision of the Settlement Agreement that would be relied upon (or examined) in a determination of the Utah Action.[5] Since only the federal and state laws, and applicable case law, will govern the Utah Action, the claims are not controlled by the forum selection clause. *See e.g., Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 390-92 (2d Cir. 2007) (statutory copyright claim did not depend on contract provisions, and so fell outside forum selection clause).

## IV. VISION DIRECT'S ANALYSIS UNDER THE FIRST CIRCUIT'S "OPERATIVE FACTS TEST" IS MISGUIDED.

Vision Direct, for an unknown reason, applies the "operative facts test" from the First Circuit (adopted by the Eighth Circuit) as "a separate but equally applicable test" for determining whether a forum selection clause applies to claims. Vision Direct is misguided. The "operative facts test" is not how this Circuit determines if a forum selection clause applies to non-contract claims (as discussed in the proceeding section).

However, even applying Vision Direct's "operative facts" test, its application here yields the same result: the Plaintiff's statutory and tort claims are not covered by the forum selection clause. The elements of a breach of contract claim under New York law are simply: (1) the existence of a contract; (2) due performance of the contract by the plaintiff; (3) breach of

---

[5] The Settlement Agreement, does not modify, clarify or exemplify Vision Direct's duty to comply with its obligations under federal statutes, Utah statutes and Utah common law despite Vision Direct's contention that "plain language of the Settlement Agreement ... sets forth specific conduct that is permitted and prohibited with respect to Internet advertising and in which neither party admits liability under the trademark laws." [Opposition, p. 12, FN 9.]

contract by the defendant; and, (4) damages resulting from the breach. *See, e.g., Marks v. New York Univ.*, 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999). Specifically, determination of such a claim will likely turn simply on whether Defendant Vision Direct "caus[ed its] brand name, or link to [its] Website to appear as a listing in the search results page of an Internet search engine, when a user specifically searches for [1-800 Contacts'] brand name, trademarks, or URLS," in contravention of Section 4(A)(e) of the Settlement Agreement.

By contrast, however, a trademark claim is a significantly more complex claim that, *inter alia*, looks to market factors and the competitive situation between the parties and gauges both the strength of the asserted mark and the likelihood of a customer's confusion. In order to establish trademark infringement, for example, Plaintiff must show that: (1) Defendants made a commercial use of a mark or item; (2) Plaintiff has a legally protectable mark; and (3) Defendants' use is likely to cause confusion with Plaintiff's mark. *See Utah Lighthouse Ministry, Inc. v. Discovery Computing, Inc.*, 506 F. Supp. 2d 889, 895-902 (D. Utah 2007). Likelihood of confusion, in turn, is gauged by a six-factor test: (a) the degree of similarity between the marks; (b) the intent of the alleged infringer in adopting its mark; (c) evidence of actual confusion; (d) the relation in use and the manner of marketing between the goods or services marketed by the competing parties; (e) the degree of care likely to be exercised by purchaser; and (f) the strength or weakness of the marks. *Id.* at 901 (citing *Team Tires Plus. Ltd. v. Tires Plus, Inc.*, 394 F.3d 831, 833 (10th Cir. 2005)).

The operative facts underlying the statutory and tort claims in the Utah Action are significantly different from those underlying a breach of contract claim derived from the Settlement Agreement as in this Action. This is reflected, for example, in the massive pleading differences between the complaints in the two actions. Vision Direct points to some similarities

between the two complaints in the telling of the background story, but ignores the bulk of operative factual allegations uniquely found in the Utah Action's Complaint in its sixteen claims for relief. *See*, Exh. B to Declaration of Danielle Criona filed in support of Plaintiff's Motion for Dismissal of Defendant's Counterclaims. These allegations assert the trademark, market, and competitive facts that underlie the complex causes of action in a complaint running to 184 paragraphs. *Id.* The history between the parties is mostly the same; but, that does not mean the same operative facts will be used to prove the distinct claims raised in this Action versus those raised in the Utah Action.

Just as the resolution of Plaintiff's claims in the Action does not require reference to the Settlement Agreement, so, under Vision Direct's formulation of the standard, the operative facts of Plaintiff's statutory and tort claims in the Utah Action are significantly different from the operative facts of Plaintiff's breach of contract claim in this Action.

Accordingly, whether the court applies the Vision Direct's "operative facts" test or looks to prior case law and evaluates whether the claim arises from the contract and whether the rights and duties associated with the claim come from the contract, the outcome is the same: Plaintiff's claims in the Utah Action do not arise "in connection with" the Settlement Agreement. As such, the forum selection clause of the Settlement Agreement does not apply to the Utah claims and Plaintiff's Motion to Dismiss Defendant's Counterclaims should be granted.

V. **PLAINTIFF'S PRIOR CONDUCT IS ENTIRELY CONSISTENT WITH THE POSITIONS TAKEN IN ITS MOVING AND REPLY PAPERS.**

Plaintiff originally filed a state court action against Vision Direct and its parent, Drugstore.com, Inc. for breach of the Settlement Agreement. Although the forum selection clause required the case to be filed in New York District Court, that court would have lacked

diversity jurisdiction over the case because Plaintiff and Drugstore.com, Inc. are both Delaware corporations. 28 U.S.C. § 1332.

In the face of objections by Vision Direct, Plaintiff voluntarily dismissed the Utah State Action instead of fighting the jurisdiction issue. Plaintiff subsequently re-filed a breach of contract action in this New York District Court per the forum selection clause, but only against defendant Vision Direct. Plaintiff's initial venue of Utah however, was the proper forum for the breach of contract dispute between Plaintiff, Vision Direct and Drugstore.com, Inc.

Upon further consideration of the applicable laws and the infringing conduct by both Vision Direct and Drugstore.com, Inc., Plaintiff sought additional relief. Since Vision Direct and Drugstore.com were, *inter alia*, infringing Plaintiff's trademarks and violating Utah tort laws, Plaintiff brought suit in the District of Utah because the violations were matters not covered by the contract.

Vision Direct wrongly attempts to disparage Plaintiff for choosing a forum it had every right to choose for the claims pending in the Utah Action. [Opposition, p. 12-13.] "The federal courts traditionally have accorded a plaintiff's choice of forum considerable deference." *In re Ricoh Corp.*, 870 F.2d at 573 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S. Ct. 839, 91 L. Ed. 1055 (1947); 1 J. MOORE, J. LUCAS, H. FINK, D. WECKSTEIN & J. WICKER, MOORE'S FEDERAL PRACTICE ¶ 0.145[5] (1988)).

Moreover, Plaintiff's conduct is entirely consistent with its belief that the forum selection clause of the Settlement Agreement does not apply to the claims brought in the Utah Action and that the Utah Action has been properly brought in that district.

## VI. CONCLUSION

A claim should be dismissed under Federal Rule of Civil Procedure 12(b)(6) unless it demonstrates the plausibility of the claimant's entitlement to relief. *See, Bell Atl. Corp. v. Twombly*, 2007 U.S. LEXIS 5901, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007).

Vision Direct's first Counterclaim for breach of contract, on which the second Counterclaim for an off-set of damages relies,[6] alleges that Plaintiff breached the forum selection clause of the Settlement Agreement by "filing and prosecution of the Utah Federal Action." Plaintiff does not dispute that it filed the Utah Action against the Utah Defendants. As a matter of law, however, the Utah Action does not breach the forum selection clause of the Settlement Agreement because the statutory and tort claims do not arise "in connection with" the Settlement Agreement as required by that clause. Since Vision Direct cannot state a claim upon which relief can be granted, the Court should grant Plaintiff's motion and dismiss Vision Direct's Counterclaims under Rule 12(b)(6).

DATED: July 11, 2008

Respectfully submitted,

CHRISTIE, PARKER & HALE, LLP

By   /s/David J. Steele
David J. Steele (Admitted *pro hac vice*)
Email: djslit@cph.com
Howard A. Kroll (Admitted *pro hac vice*)
Email: howard.kroll@cph.com
Gary Dukarich (Admitted *pro hac vice*)
Email: gsd@cph.com
3501 Jamboree Road, Suite 6000-North Tower
Newport Beach, CA  92660
Telephone: (949) 476-0757
Facsimile:  (949) 476-8640

---

[6] It is telling that the second Counterclaim incorporates by reference all the previous paragraphs of the Counterclaim. (Counterclaim, ¶21). Furthermore, it is unclear whether the second Counterclaim is even a claim in its own right. It relies entirely on a finding of liability on the first Counterclaim and appears to be merely a prayer for relief should liability on the first Counterclaim be found.

Robert J. Luddy (RJL-6970)
Email: rluddy@windelsmarx.com
Delton L. Vandever (DLV-8062)
Email: dvandever@windelsmarx.com
WINDELS MARX LANE & MITTENDORF, LLP
156 West 56th Street
New York, NY 10019
Telephone: (212) 237-1000
Facsimile: (212) 262-1215

*Attorneys for Plaintiff/Counterclaim-Defendant
1-800 Contacts, Inc.*

LLB IRV1114736.7-*-07/11/08 11:07 AM